# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, EX REL.,
RAÚL TORREZ, ATTORNEY GENERAL,

                Plaintiff,

      - v. -                             Civil Action No. _____

META PLATFORMS, INC.; INSTAGRAM, LLC;
META PAYMENTS, INC.; META PLATFORMS
TECHNOLOGIES, LLC; and MARK
ZUCKERBERG,

                Defendants.

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC (collectively, "Meta"), by counsel, have removed the above-captioned action from the First Judicial District Court, County of Santa Fe, State of New Mexico, to the United States District Court for the District of New Mexico. As grounds for removal, Meta states as follows:

## I. NATURE OF REMOVED ACTION

1. On December 5, 2023, the Attorney General of New Mexico (the "NMAG" or "Plaintiff") filed a complaint on behalf of the State against Meta in the First Judicial District Court, County of Santa Fe, of the State of New Mexico, titled *State of New Mexico, ex rel., Raúl Torrez, Attorney General v. Meta Platforms, Inc., et al.* The court assigned the case No. D-101-CV-2023-02838.

2. The Complaint asserts claims against Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., Meta Platforms Technologies, LLC, and Mark Zuckerberg.

3. Plaintiff served Meta with the Complaint on December 6, 2023.

4. The only named defendant other than Meta, Mark Zuckerberg, has not yet been served with a summons or the Complaint.

5. Plaintiff alleges that Meta "[f]ailed to disclose that Meta knew it had, and continued to establish, user accounts for children under 13 years of age, failed to screen those accounts from inappropriate and unlawful activity and conduct, and collected and used data from those children." Compl. ¶ 462.j.

6. The Complaint asserts four counts. Counts I, II and III, which assert violations of the New Mexico Unfair Practices Act, NMSA 1978, §§ 57-12-1 to -26, are asserted against all defendants. Count IV, for public nuisance, is asserted only against Meta. Plaintiff seeks injunctive

relief, civil penalties, disgorgement of profits and data, and fees, costs and interest. *See* Compl., Prayer For Relief, at pp. 222-23.

7.  Although Plaintiff disavows stating a federal question, *see, e.g.*, Compl. ¶¶ 20, 480, Plaintiff pleads, *inter alia*, that a federal law, the Children's Online Privacy Protection Act ("COPPA"), 15 U.S.C. §§ 6501, *et seq.*, "requires companies to notify and obtain consent from parents before collecting, using, or disclosing information from children under 13-years old" and that "Meta's practices in violation of COPPA constitute unfair practices under New Mexico law." Compl. ¶¶ 255 n. 87, 480.

8.  Because the pillars of the COPPA regime—including the Federal Trade Commission's ("FTC") "COPPA Rule, 16 C.F.R. §§ 312.1, *et seq.*, [which] requires parental notification and consent before obtaining personal information from children"—arise solely from federal law, Plaintiff has pled a claim that inherently requires resolution of a question of federal law. *See* Compl. ¶¶ 336, 480. Plaintiff in fact specifically asserts that its Complaint necessarily requires resolution of a question of federal law, because Plaintiff alleges "that Meta's practices in violation of COPPA constitute unfair practices under New Mexico law." Compl. ¶¶ 480. That allegation cannot be resolved without determining whether Meta's practices are a "violation of COPPA."

9.  Meta has not responded to the Complaint in state court. Absent any extension, Meta's response to the Complaint is due in this Court on December 27, 2023. Fed. R. Civ. P. 81(c)(2)(A).

10. In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and all process, pleadings, and orders served upon Meta in the state court action are attached as **Exhibit 2**.

## II. TIMELINESS OF REMOVAL

11. Meta was served with the Complaint on December 6, 2023.

12. In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (30-day removal period begins to run upon service of summons and complaint).

### III. PROPRIETY OF REMOVAL TO THIS COURT

13. Pursuant to 28 U.S.C. § 1441(a), this action is properly removed to this Court because it is "the district court of the United States for the district and division embracing the place" where the action was previously pending, in the First Judicial District Court, County of Santa Fe, State of New Mexico.

### IV. BASIS OF REMOVAL

14. Removal is proper pursuant to 28 U.S.C. §§ 1331 and 1441, because Plaintiff's claims present a federal question under the federal Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501, *et seq.*

**A.  Plaintiff's Claims Facially Arise Under Federal Law.**

15. The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

16. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 830 (2002).

17. "A case 'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1,

3

27–28 (1983)); *see also Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (holding that federal jurisdiction exists when a federal question is presented "on the face of the plaintiff's properly pleaded complaint").

18. "[T]he party who brings the suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).

19. In this case, Plaintiff relies on federal law because resolution of its state law claim necessarily and inherently requires resolution of a question of federal law.

20. Specifically, Plaintiff pleads that Meta violated federal law with, *inter alia*, the following allegations:

    a. Plaintiff alleges that Meta "[f]ailed to disclose that Meta knew it had, and continued to establish, user accounts for children under 13 years of age . . . and collected and used data from those children." Compl. ¶ 462.j;

    b. Plaintiff alleges that "[a]lthough Meta's system will automatically reject accounts for any person with an identified age under 13-years old, Meta does not employ any age verification system at signup and underage children may obtain a Facebook account if they lie about their age." *Id.* at ¶ 43;

    c. Plaintiff invokes COPPA's requirements that companies "notify and obtain consent from parents before collecting, using, or disclosing information from children under 13-years old," Compl. ¶ 255 n. 87, and does not refer

|   |   |
|---|---|
|   | to any equivalent parental notice and consent requirements arising under New Mexico law;[1] |
| d. | Plaintiff cites federal FTC regulations governing COPPA—specifically, the FTC's COPPA Rule, 16 C.F.R. §§ 312.1, *et seq.*—in support of its allegation that "Meta's platforms lack sufficient parental controls and notifications" because that Rule "requires parental notification and consent before obtaining personal information from children" and "makes clear that this provision applies when the entity, like Meta, has actual knowledge that its services are used by individuals under the age of 13." Compl. ¶ 336; |
| e. | Plaintiff alleges that Meta "ignores its knowledge" that individuals under the age of 13 use its platforms, "does not require parental consent from users, thus preventing parents from taking action if their underage child is using, misusing, or overusing Meta's platforms," and "employs no age verification upon signup other than a user's manual input of their date of birth, and Meta is aware that underage users often use false dates of birth in order to gain access to their systems," all of which constitute allegations that Meta breached duties created by COPPA. *Id.*; |
| f. | Plaintiff asserts that "[b]ecause Meta lacks and historically lacked effective age verification, Meta has obtained data from children under 13-years old in violation of public policy, because Meta failed to provide notice and seek |

---

[1] Because Plaintiff never identifies any provision of New Mexico law or regulation that contains a requirement analogous to COPPA's parental notice and consent provisions, Plaintiff's references to the New Mexico UPA are surplusage in the context of any such alleged duties.

5

        consent from parents before it collected or used personal information from children." *Id.* at ¶ 480;

    g.    Plaintiff asserts that Meta's actions fail to protect "children under the age of 13 from online abuse and the collection of their personal information," contrary to "underlying public policy nationally and in New Mexico." *Id.* at ¶ 480; and

    h.    Plaintiff alleges that Meta's "practices ***in violation of COPPA*** constitute unfair practices under New Mexico law" (specifically, the New Mexico Unfair Practices Act). *Id.* (emphasis added).

    i.    Therefore, Plaintiff's own allegations necessarily and inherently require resolution of a question of federal law—namely, whether Meta's practices are a "violation of COPPA."

21.    Plaintiff does not identify independent New Mexico state law authority for the alleged requirement that online platforms "provide notice and seek consent from parents before [] collect[ing] or us[ing] personal information from children," *id.* ¶ 480, "when the entity . . . has actual knowledge that its services are used by individuals under the age of 13," *id.* ¶ 336. Nor could the State assert any state law requirement that was different from COPPA's requirements, since that federal Act on its face bars "State or local government[s]" from regulating commercial activities in a way "that is inconsistent" with COPPA, instead giving States the right "as parens patriae" to enforce COPPA directly by "bring[ing] a civil action on behalf of the residents of the State in a district court of the United States," 15 U.S.C. §§ 6502(d), 6504(a)(1).

22.    Plaintiff's Count II is therefore a claim that, on its face, is based on Meta's alleged violations of federal law and duties that arise only under COPPA and its implementing regulations—*i.e.*, that Meta allegedly violated the Unfair Practices Act by "fail[ing] to provide

6

notice and seek consent from parents before it collected or used personal information from children . . . in violation of COPPA." *Id.* ¶ 480.

23. In summary, Plaintiff facially pleads claims based on alleged violations of federal law—namely, COPPA and its associated regulations.

24. Plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by ***exclusive*** reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added). But here, Plaintiff's second count is expressly premised on violations of federal law by alleging that Meta's "practices in violation of COPPA constitute unfair practices under New Mexico law," Compl. ¶ 480, and thus pleads a federal question, *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (holding that a "suit arises under the law that creates the cause of action").

25. Accordingly, a substantial question of federal law is presented "on the face of [Plaintiff's] properly pleaded complaint." *Caterpillar, Inc.*, 482 U.S. at 392; *see Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005) (removal "is appropriate if the face of the complaint raises a federal question" (citations omitted)).

26. Because the Court has original jurisdiction over any one of Plaintiff's claims stating a federal question, it has supplemental jurisdiction over Plaintiff's remaining counts, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).[2]

---

[2] Meta need not establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

### B. Plaintiff's Claims All Depend on a Substantial Question of Federal Law.

27. Even when state law creates a cause of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow*, 478 U.S. at 808–09; *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

28. "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks omitted); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

29. As set forth below, this case meets all four requirements. Plaintiff's underlying theory of liability, particularly in Count II, is premised expressly on Meta's alleged violations of federal law or alleged duties arising out of federal law, specifically COPPA. *See* Compl. ¶ 480 (Meta's "practices in violation of COPPA constitute unfair practices under New Mexico law"). Federal law is therefore a necessary, disputed, and substantial element of at least Plaintiff's Count II, and the Complaint thus presents a substantial federal question.[3]

---

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn*, 568 U.S.

30. Plaintiff's theories of liability against Meta, as pled in the Complaint, are predicated on allegations that Meta breached alleged duties created by COPPA to implement effective procedures to notify and obtain consent from parents prior to collecting information from children under the age of 13. *See, e.g.*, Compl. ¶¶ 336, 480 (alleging "Meta's platforms lack sufficient parental controls and notifications"); *id.* (stating that "Meta possesses . . . knowledge" that "its services are used by individuals under the age of 13"); *id.* (alleging that "instead of complying with this attribute of COPPA, Meta ignores its knowledge and does not require any parental consent from users, thus preventing parents from taking action if their underage child is using, misusing, or overusing Meta's platforms"); *id.* (alleging that "Meta employs no age verification upon signup other than a user's manual input of their date of birth, and Meta is aware that underage users often use false dates of birth in order to gain access to their systems"); *id.* ¶ 480 (alleging that "Meta lacks and historically lacked effective age verification, [so] Meta has obtained data from children under 13-years old in violation of public policy"); *id.* (alleging that "Meta failed to provide notice and seek consent from parents before it collected or used personal information from children.").

31. The source of the asserted legal duty to provide notice and seek consent from parents before collecting or using personal information from children under the age of 13 is COPPA, 15 U.S.C. §§ 6501, *et seq.*, and its implementing regulations. *See* 16 C.F.R. §§ 312.1, *et seq.*; *see also, e.g.*, Compl. ¶ 336 (citing 16 C.F.R. §§ 312.1, *et seq.* as basis for alleged requirement of "parental notification and consent before obtaining personal information from children."). And a federal agency, the Federal Trade Commission, promulgates these regulations pursuant to section

---

at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

9

6502(b)(1) of COPPA as well as COPPA guidance that helps inform businesses' approach to compliance. *New Mexico ex rel. Balderas v. Google, LLC*, 489 F. Supp. 3d 1254, 1258 (D.N.M. 2020); *see also New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 516 F. Supp. 3d 1293, 1297 (D.N.M. 2021).

32. The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

33. <u>First</u>, Plaintiff's state law claims "necessarily raise" a federal question because they depend upon the construction of federal laws and regulations underlying those claims. *See Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006) (identifying federal question as necessarily raised when a state law trespass claim depended on interpreting the scope of a federal easement); *see also Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 897 (10th Cir. 2017) ("[Plaintiff's] attempts to privately enforce the CSA in this manner raise, at minimum, 'substantial question[s] of federal law' on the merits that were sufficient for the district court to have exercised jurisdiction over the preemption claims in their entirety under § 1331." (first alteration added)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("an action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

34. As pled, Plaintiff's Count II claims against Meta require Plaintiff to establish that Meta failed to comply with obligations under federal law resulting in Meta improperly obtaining data from individuals under the age of 13, who used Meta's apps in New Mexico, without notifying or seeking consent from those individuals' parents. Therefore, the Complaint necessarily raises a

federal issue—namely, whether Meta violated COPPA. Plaintiff specifically alleges that its claim depends on resolution of a question of federal law, because it claims that "Meta's practices in violation of COPPA constitute unfair practices under New Mexico law." *Id.* ¶ 480. That claim inherently cannot be resolved without a determination whether Meta acted "in violation of COPPA" and thus necessarily presents a federal question that establishes federal jurisdiction in this Court.

35. <u>Second</u>, this federal issue is "actually disputed" because the parties disagree as to whether Meta violated duties under COPPA, and which arise only under COPPA. Indeed, as to Count II, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

36. <u>Third</u>, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260, 262 (quotation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

37. Plaintiff's theories of Meta's liability necessarily require that a court determine the scope of Meta's obligations under federal law, because the regulation of data collection by online service providers from individuals under the age of 13 is first and foremost a federal law requirement. *See* Compl. ¶ 255 n. 87 ("COPPA . . . requires companies to notify and obtain consent from parents before collecting, using, or disclosing information from children under 13-years

old"); *id.* ¶ 336 (Alleging that "the FTC's COPPA Rule . . . requires parental notification and consent before obtaining personal information from children. *The Rule* makes clear that this provision applies when the entity, like Meta, has actual knowledge that its services are used by individuals under the age of 13.") (emphasis added). Indeed, Congress designed COPPA to regulate the manner in which "an operator of a website or online service directed to children . . . collect[s] personal information from a child," and vested exclusive authority in the FTC to promulgate regulations to enforce the legislative scheme. 15 U.S.C. §§ 6502(a)-(b). The "COPPA Rule" that the FTC accordingly promulgated, along with the FTC's subsequent regulations, constitute a comprehensive federal regulatory scheme. *See Google*, 489 F.Supp.3d at 1258.

38. Plaintiff's theories of Meta's liability thus "involve aspects of the complex federal regulatory scheme applicable to" collection of children's data by an online service. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (holding that a federal question was substantial under *Grable* when it implicated the "complex federal regulatory scheme applicable to cable television rates"). These theories are "sufficiently significant to the development of a uniform body of [online data collection] regulation to satisfy the requirement of importance to 'the federal system as a whole.'" *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). COPPA itself points to the importance and the reach of its centralized federal regulatory scheme by barring "State or local government[s]" from regulating commercial activities in a way "that is inconsistent" with COPPA, while also giving States the right "as parens patriae" to enforce COPPA by "bring[ing] a civil action on behalf of the residents of the State in a district court of the United States." 15 U.S.C. §§ 6502(d), 6504(a)(1). Furthermore, "minimizing uncertainty over" reporting obligations under COPPA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC*

*Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (holding that the plaintiff's state law claim "raises a substantial federal question—the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction").

39. Removal is particularly appropriate here because the State's action is but one of more than 400 actions nationwide including a complaint filed by 33 states that allege harms from the use of communication apps like those operated by Meta. Those cases have been consolidated and are pending in an MDL in the Northern District of California. *See* **Exhibit 3** (Transfer Order, *In re Social Media Adolescent Addiction/Personal Injury Product Liability Litigation*, MDL No. 3047 (Oct. 6, 2022), Dkt. # 1). The complaint filed by 33 states in the MDL asserts federal COPPA claims that are largely indistinguishable from those advanced in the instant Complaint. *See The People of the State of California, et al. v. Meta Platforms, Inc., et al.*, No. 4:23-cv-05448 (N.D. Cal.), Dkt. No. 394 at ¶¶ 105-142. In addition, other MDL plaintiffs—adolescents alleging personal injuries because of their use of Meta's services—have amended their MDL complaint to expressly "adopt by reference" 163 paragraphs from the New Mexico Attorney General's Complaint. *In re: Social Media Adolescent Addition/Personal Injury Prods. Liability Litig.*, 4:22-md-03047 (N.D. Cal.), Dkt. No. 494 at ¶ 391B. The instant Complaint pleads both that the alleged harms to mental health caused by social media (as described in the U.S. Surgeon General's recent advisory) "occur nationwide" and that "protection of children under the age of 13 from . . . the collection of their personal information is a well-established objective underlying public policy nationally." *See* Compl. ¶¶ 400, 480. In short, the instant Complaint raises issues that are significantly intertwined with the cases already pending in the MDL. Justice and the interests of efficiency are best served by presenting these theories and claims to a single judge in the MDL.

40. <u>Fourth</u>, and finally, the federal issue can be resolved in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Indeed, to

preserve that balance, this case must be litigated in federal court. COPPA provides federal courts with the exclusive authority to hear cases brought by States to enforce COPPA. *See* 15 U.S.C § 6504(a)(1). In addition, the scope of Meta's obligations under COPPA—which is the sole source of duty that Plaintiff alleges in its Count II—is a federal question. Allowing these federal questions to proceed in state court runs the risk that Meta will be subject to two conflicting interpretations of COPPA: one by federal courts, and a second, as construed by a state court. These potentially varying interpretations would frustrate "the development of a uniform body of [online data collection] regulation to satisfy the requirement of importance to the federal system as a whole." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). Accordingly, federal jurisdiction in this case is entirely "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

41. In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. *See also, e.g.*, *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315–18 (2d Cir. 2016) (holding that state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (holding that state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal

system as a whole"); *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (holding that state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (holding that state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck v. Mt. Hood Cable Regul. Comm'n*, 2017 WL 1752954, at *5 (D. Or. May 2, 2017) (holding that state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

### IV. OTHER REMOVAL ISSUES

42. Under 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served must join or consent to removal.

43. The defendants that have been properly served in this action are Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC.

44. All properly served defendants consent to removal, as indicated by their signing below.

45. Pursuant to 28 U.S.C. § 1446(d), Meta will promptly file a copy of this Notice of Removal with the clerk of the state court where suit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff's counsel.

46. Meta files this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff, including as to personal jurisdiction. Meta disputes the allegations in Plaintiff's Complaint.

47. Meta reserves the right to amend or supplement this Notice.

**WHEREFORE**, Meta removes this action, pending in the First Judicial District Court, County of Santa Fe, State of New Mexico, as Civil Action No. D-101-CV-2023-02838, to this Court.

December 18, 2023

Respectfully submitted,

By: /s/ *John C. Anderson*
John C. Anderson
Olga M. Serafimova
HOLLAND & HART LLP
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth (*Pro Hac Vice* Forthcoming)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
nshafroth@cov.com

Timothy C. Hester (*Pro Hac Vice* Forthcoming)
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
thester@cov.com

Matthew Cullen (*Pro Hac Vice* Forthcoming)
COVINGTON & BURLING LLP
1999 Avenue Of The Stars
Los Angeles, CA 90067-4643
Telephone: +1 (424) 332-4800
mcullen@cov.com

*Attorneys for Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC*

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on December 18, 2023, a copy of the foregoing was filed through the court's CM/ECF system, causing it to be served by electronic mail upon the following:

James W. Grayson
Chief Deputy Attorney General
Raul Torrez, Attorney General of New Mexico
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Phone: (505) 218-0850
Email: jgrayson@nmag.gov

Serena R. Wheaton
Assistant Attorney General
New Mexico Attorney General's Office
Consumer & Environmental Protection Division
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Phone: (505) 490-4846
Email: swheaton@nmag.gov

Linda Singer
David I. Ackerman
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Email: lsinger@motleyrice.com
Email: dackerman@motleyrice.com

                                            */s/ John C. Anderson*
                                            John C. Anderson