**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| STATE OF NEW MEXICO, EX REL. RAÚL TORREZ, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>- v. -<br><br>META PLATFORMS, INC.; INSTAGRAM, LLC; META PAYMENTS, INC.; META PLATFORMS TECHNOLOGIES, LLC; and MARK ZUCKERBERG,<br><br>Defendants. | **PLAINTIFF STATE OF NEW MEXICO'S MOTION TO REMAND**<br><br>Civil Action No. 1:23-cv-01115-DLM-KK<br><br>*Removed from First Judicial District Court, County of Santa Fe, New Mexico, Case No. D-101-CV-2023-02838* |

**PLAINTIFF STATE OF NEW MEXICO'S MOTION TO REMAND**

Plaintiff, the State of New Mexico, now moves to remand this action to the First Judicial District Court for the County of Santa Fe.

This action brought by the State of New Mexico, on behalf of New Mexicans and under New Mexico law, belongs in New Mexico state court. Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC (together, "Meta"), removed this action to this Court by claiming federal question jurisdiction under 28 U.S.C. §§ 1331. The Complaint avers only state-law claims that do not require resolution of a federal question.

However, Meta's real goal is not to establish federal jurisdiction. As demonstrated by its willingness to flout well-established law, Meta seeks one thing: to shunt the State's important government enforcement action into federal multidistrict litigation and thereby delay prosecution of its case. Meta should not be permitted to contort the federal removal process or waste the federal

1

judiciary's time simply because it is afraid of promptly facing a New Mexico jury in a New Mexico court. This Court should reject Meta's baseless removal and remand this action to state court.

## BACKGROUND

On December 5, 2023, the State filed suit in the First Judicial District Court for the County of Santa Fe against Meta and Mark Zuckerberg, seeking nuisance abatement, civil penalties, declaratory relief, injunctive relief, and disgorgement of profits.

The Complaint alleges that "Meta and its CEO tell the public that Meta's social media platforms are safe and good for kids" while "Meta knowingly exposes children to the twin dangers of sexual exploitation and mental health harm." Compl. ¶ 1. Meta ensures children will use its platforms by failing to maintain proper age verification. *Id.* ¶ 2. Then it barrages children with "harmful and inappropriate material" and unsolicited contact from unknown adults, allowing its platforms "to become a marketplace for predators in search of children upon whom to prey." *Id.* At the same time, Meta "maximize[s] teen engagement on its platforms" by "adopting algorithms and platform designs that are addictive to young users," knowingly fostering "addiction, anxiety, depression, self-harm and suicide among teens and preteens" in the name of profit. *Id.* ¶ 3.

In its introductory overview, the Complaint does not refer by name or implication to federal law a single time. Instead, the Complaint clearly identifies Meta's conduct as violating "New Mexico law." *Id.* ¶ 6; *accord id.* ¶ 1. The Complaint then makes its exclusive reliance on state law plain:

> The State brings this action exclusively under the law of the State of New Mexico. No federal claims are being asserted, and to the extent that any claim or factual assertion set forth herein may be construed to have stated any claim for relief arising under federal law, such claim is expressly disavowed by the State. The State's citation to federal statutes is only to underscore public policy and standards that inform the State's claims that Defendants' conduct is deceptive, unfair, and

unconscionable and constitutes a public nuisance under New Mexico law and are not alleged as independent claims or causes of action.

*Id.* ¶ 20.

Adhering to its firm and consistent reliance on state law to the exclusion of federal law, the Complaint asserts causes of actions for violations of New Mexico's Unfair Practices Act ("UPA") and for public nuisance, all arising from state law. *Id*. ¶¶ 450–521. The Complaint does not aver causes of action arising from the federal Children's Online Privacy Protection Act ("COPPA") or any other federal law, and in fact expressly disclaims any cause of action under federal law. Compl. ¶¶ 20, 480.

On December 18, 2023, Meta removed the State's action to this Court, claiming federal question jurisdiction under 28 U.S.C. §§ 1331. Pursuant to Local Rule 7.1(a), the State has confirmed that Meta opposes this Motion.

## LEGAL STANDARD

It is axiomatic that the federal courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "It is to be presumed that a cause lies outside this limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citation omitted), and "[a]ll doubts are to be resolved against removal." *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).

These jurisdictional constraints "carry additional weight" when states bring claims in state courts. *Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 586 (E.D. Pa. 2007). As the Supreme Court has explained, "considerations of comity make us reluctant to snatch cases which

a State has brought from the course of that state, unless some clear rule demands it." *Franchise Tax Bd. of Cal. v. Contr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 21 n.22 (1983).

Congress has provided that the federal "district courts shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In the case of removal to federal court, the removing party bears the burden of establishing jurisdiction. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). The general rule of federal question jurisdiction is the "well-pleaded complaint rule," which states that a "case arises under federal law if its well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1235 (10th Cir. 2003) (cleaned up). Neither is true here, and thus remand is warranted.

## ARGUMENT

### I. The State's Claims Do Not "Arise Under" Federal Law.

#### A. Federal Law Does Not Create the State's Causes of Action.

Meta claims that the State "facially pleads claims based on alleged violations of federal law." Notice of Removal ¶ 23. This is patently false. The State brought four causes of action, each of which finds its basis only in state law. Three arise from violations of New Mexico's Unfair Practices Act ("UPA"), NMSA § 57-12-1 *et seq.*, and the fourth is a public nuisance cause of action, arising from state statutory (NMSA § 30-8-81) and common law. Compl. ¶¶ 450–521. These are state law claims. Defendants cannot plausibly claim that they facially arise under federal law. *See New Mexico ex rel. Balderas v. Purdue Pharma, L.P.*, 323 F. Supp. 3d 1242, 1250

4

(D.N.M. 2018) (rejecting defendant's argument that a complaint "facially pleads a cause of action under [federal law]" because "[p]laintiff's [c]omplaint does not allege a federal cause of action").

Because the State does not plead federal-law claims, Meta instead attempts to manufacture a federal basis for them. Meta cites a handful of paragraphs from the Complaint —all of which fall far short of its burden to show that federal law creates the State's causes of action. Two of these five paragraphs *fail to mention COPPA, or any other provision of federal law, at all*. *See* Compl. ¶¶ 43, 462.j. Paragraph 43 is nothing more than a factual allegation and does not reference or allude to federal law. Paragraph 462.j is one of eleven allegations of deceptive and misleading business practices through a failure to disclose "harmful effects, content, and activities." COPPA regulates notice of the collection, use, and disclosure of information, not its harmful effects. These paragraphs thus cannot serve as a basis for Meta's claim that the State pleads federal-law cases of action.

The third of Meta's cited paragraphs mentions COPPA *only for the purpose of disclaiming a COPPA cause of action*:

> Because Meta lacks and historically lacked effective age verification, Meta has obtained data from children under 13-years old in violation of public policy, because Meta failed to provide notice and seek consent from parents before it collected or used personal information from children. This constitutes an unfair practice under the UPA because the protection of children under the age of online abuse and the collection of their personal information is a well-established objective underlying public policy nationally and in New Mexico. *To avoid any doubt, the State does not assert a claim pursuant to its authority to enforce the Children's Online Privacy Protection Act ("COPPA"), but asserts instead that Meta's practices in violation of COPPA constitute unfair practices under New Mexico law*.

Compl. ¶ 480 (emphasis added). Indeed, this paragraph appears within a cause of action for unfair trade practices based on a violation of **New Mexico** public policy, and this allegation thus stands

5

apart from any federal question. Far from proving that the State brought causes of action arising under federal law, this paragraph demonstrates the exact opposite. The State could have brought a separate COPPA cause of action. *See, e.g.*, Complaint for Injunctive and Other Relief, *Arizona et al. v. Meta Platforms, Inc., et al.*, No. 2:23-CV-5448, at ¶¶ 868–873 (N.D. Cal. Nov. 22, 2023), Dkt. No. 73-2 (bringing federal COPPA claim in federal court on behalf of 33 state attorneys general). The State, as master of its Complaint, chose not to, and Meta cannot redraft the complaint through a removal notice.

Of the two remaining paragraphs that Meta says show the State brings federal causes of action, one is a factual allegation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).[1] Compl. ¶ 255. A ▮▮▮▮▮▮▮▮▮▮ while powerful—does not alter the State's state law causes of action to "arise under" federal law.

Finally, Meta points to a single paragraph—among the State's more than 400 paragraphs of factual allegations—in which the State notes that the Federal Trade Commission's (FTC's) COPPA rule requires parental notification and consent before obtaining personal information from children. Compl. ¶ 336. The Complaint, however, used the COPPA rule as an example to support its larger point that "Meta's platforms lack sufficient parental controls and notifications" to protect

---

[1] The State sought Meta's approval to disclose the relevant statement of a Meta employee from the State's complaint. Though Meta misleadingly cites the quotation as a basis for removal, it refused to allow the State to unredact the reference.

children. In the same paragraph, the State explains that Meta does not seek parental consent from users, "thus preventing parents from taking action if their underage child is using, misusing, or overusing Meta's platforms," compounding the risks and harms to young children. The State does not, in this paragraph or anywhere else in the Complaint, plead a claim under COPPA, and its allegation does not support federal question jurisdiction for two independent reasons.

*First*, any violation of COPPA is also a violation of New Mexico state law.  Federal law deems violations of COPPA to be "unfair or deceptive acts" under the FTC's definition of that term, 15 U.S.C. § 6502(c), and New Mexico's UPA provides that interpretation of its terms, including the term "unfair or deceptive acts," "to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts." NMSA 1978 § 57-12-4 (1967).  In other words, a violation of COPPA is an unfair and deceptive act according to the FTC and therefore also according to the New Mexico UPA.  Thus, even reference to federal-law COPPA standards is rooted in state law, which obviates federal question jurisdiction.  *See New Mexico, ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1231–33 (D.N.M. 2015) (rejecting federal question jurisdiction in a state enforcement action regarding nursing home conditions because "New Mexico, in an exercise of its sovereign authority, has enacted statutes and regulations governing the standard of care provided at nursing homes that generally parallel federal law.  Consequently, [p]laintiff can prove that Defendants fell short of the standards set by applicable law by referring solely to New Mexico substantive law").[2]  And to Meta's argument

---

[2] Crucially, importing a federal-law standard into state law does not create a basis for substantial question jurisdiction under the *Grable* test either. *See Preferred Care, Inc.*, 158 F. Supp. 3d at 1233–34 ("[C]ourts frequently decline to find substantial question jurisdiction predicated solely on an imported federal standard of care. . . .  This Court will not extend federal subject matter jurisdiction in the face of such clear precedent to the contrary."); *see also Navistar Intern. Corp.*

that federal courts have exclusive jurisdiction of COPPA claims, *see* Notice of Removal ¶ 20, Meta ignores that not only is the State not asserting a claim under COPPA, but COPPA itself acknowledges that states may engage in enforcement actions that impose liability for activity regulated by COPPA so long as those actions are not inconsistent with the federal law.  *See* 15 U.S.C. §6502(d).  In other words, COPPA does not preempt state enforcement, and the State's action here is certainly consistent with, and in furtherance of, COPPA's requirements.

*Second*, none of the State's claims necessarily depends on whether Meta violated COPPA.  As noted above, the State's sole allegation of a violation of state public policy by virtue of violating COPPA appears among hundreds of other factual allegations.  Even in the Complaint's allegations supporting Count II (which Meta claims "is based on Meta's alleged violations of federal law and duties that arise only under COPPA and its implementing regulations," Notice of Removal ¶ 22), the State alleges numerous other instances of Meta's conduct that constitute "unfair or deceptive" or "unconscionable" trade practices within the meaning of the UPA or, separately, give rise to a public nuisance.  *See, e.g.*, Compl. ¶¶ 477 ("Defendants' repeated failure to act upon, inhibit, or otherwise restrict access to illicit and/or illegal content constituting human trafficking and/or distribution or solicitation of CSAM [Child Sexual Abuse Material], and (ii) Defendants' failure to design the platforms to restrict such content"); 478 ("Defendants' design of their platforms to re-distribute and amplify CSAM and to facilitate connecting and monetizing networks of predators

---

*v. Deloitte & Touche LLP*, 837 F. Supp. 2d 926, 930 (N.D. Ill. 2011) (invocation of "federal standards does not, by itself, give rise to Grable jurisdiction"); *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 585–86 (E.D. Pa. 2007) ("The mere presence of a federal standard embedded in a state law cause of action is not sufficient to warrant federal subject matter jurisdiction"); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012) ("State courts frequently handle state-law consumer protection suits that refer to or are predicated on standards set forth in federal statutes.").

soliciting or distributing or seeking to distribute CSAM and/or engage in human trafficking"); 483 ("developing an illegal market for inherently unlawful activity involved in obtaining and selling CSAM and the commercial sexual exploitation of children").  That the State can prove its public nuisance and UPA claims through any one of these unfair, deceptive, or unconscionable practices, rather than through a violation of COPPA, means that, under controlling precedent, its claims do not "arise under" federal law and federal question jurisdiction will not lie.[3]  *See Tichenor v. N.M. Title Loans, Inc.*, No. 15-CV-810, 2016 WL 10538830, at *5 (D.N.M. May 2, 2016) (citing *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1009–10 (10th Cir. 2008) ("Where a claim is supported by alternative theories, federal courts do not have jurisdiction unless federal law is essential to each theory."); *New Mexico ex rel. Balderas v. ITT Educ. Servs., Inc.*, No. 14-CV-0321, 2015 WL 13662784, at *2 (D.N.M. June 30, 2013) (rejecting federal question jurisdiction because "[t]o the extent [p]laintiff's complaint implicates [federal law], it is only as factual allegations that, in part, could give rise to violations of the New Mexico UPA.  Indeed, disposition of this lawsuit can be achieved without having to determine whether there was a violation of [federal law]").

Last, Meta tries to interject an argument that the State cannot "assert any state law requirement . . . different from COPPA's requirements, since that federal Act on its face bars 'State or local government[s]' from regulating commercial activities in a way 'that is inconsistent' with COPPA. . . ." Notice of Removal ¶ 21 (quoting 15 U.S.C. §§ 6502(d)).  But this argument does not arise from within the four corners of the State's complaint; it is instead a purported

---

[3] For the same reason, it is also patently false that "COPPA . . . is the sole source of duty that Plaintiff alleges in its Count II."  Notice of Removal ¶ 40.  The requirements of the UPA themselves impose duties on Meta not to engage in "unfair or deceptive" or "unconscionable" trade practices, each of which the State alleges with respect to Meta.

defense rooted in federal law. *Gallup Med Flight, LLC v. Builders Trust of N.M.*, 240 F. Supp. 3d 1161, 1204 (D.N.M. 2017) ("The defendant may not try to sneak a federal question through the back door by raising a federal defense, for 'it is now settled law that a case may not be removed to federal court on the basis of a federal defense'") (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)). Thus, this argument cannot serve as a basis for removal.

### B. The State's Claims Do Not Present a Substantial Federal-Law Question that May Confer Federal Jurisdiction.

Because Plaintiff's causes of action clearly do not "arise under" federal law, Meta attempts to shoehorn this case into the category of substantial question jurisdiction, an "'exceedingly narrow' and relatively arcane 'branch of federal question jurisdiction' . . . that has been applied only to a 'special and small category of cases.'" *Tichenor v. N.M. Title Loans, Inc.*, No. 15-CV-810, 2016 WL 10538830, at *3 (D.N.M. May 2, 2016) (quoting *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012)).

This "special and small category" is controlled by the *Grable* test, which requires a federal law question that is: "(1) necessarily raised, (2) actually disputed, (3) substantial, ***and*** (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)) (emphasis added).

Meta's attempted removal falls at the first hurdle: Meta cannot show that a federal law issue is "necessarily raised" by the State's state-law causes of action. This is because, as explained above, the State's claims do not require proof of a federal law violation and instead can be proven through other means. *See supra* at 6–7. A plaintiff's "allegations do not necessarily raise any genuinely disputed issue of federal law" if the plaintiff "may recover . . . by relying entirely on

10

state law." *Preferred Care, Inc.*, 158 F. Supp. 3d at 1233.  A "possibility that a federal issue might arise . . . is not enough." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1211 (10th Cir. 2012).  Because Meta's removal fails the first step of *Grable*, substantial question jurisdiction will not lie, and the action must be remanded.

But even if Meta's removal could survive this first prong, it also fails the other three.  Meta cannot show that the State's Complaint implicates a federal-law issue that is "actually disputed" or "substantial."  Even assuming that the State's claims required proof of a COPPA violation—which they do not—Meta does not identify any dispute about the meaning or construction of COPPA that requires clarification or resolution by a federal court.  (Indeed, Meta's own quotation in the redacted Complaint showed no uncertainty that Meta's conduct would violate the law.)  Meta instead vaguely asserts that the State's claim requires a "determination whether Meta acted in violation of COPPA."  Notice of Removal ¶ 34.  But whether Meta's specific conduct in this action violates COPPA's requirements would be a "fact-bound and situation-specific" inquiry—not one that presents a "nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006).  Such an inquiry does not give rise to a substantial question of federal law. *Id.*; *see also Gonzales v. Ever-Ready Oil, Inc.*, 636 F. Supp. 2d 1187, 1193 (D.N.M. 2008) (rejecting federal question removal because "[e]ven if federal law ***exclusively*** defines the standard of care . . . resolution of [p]laintiff's claims will turn on the application of that law to fact" (emphasis added)).

Finally, Meta's removal fails the fourth prong of the *Grable* test, because a federal court cannot hear this action without "disrupting the federal-state balance approved by Congress."

11

*Gunn*, 568 U.S. at 258.  In "an enforcement suit by a state attorney general," "principles of comity militate against permitting removal of this case to a federal forum." *New Mexico, ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1232 (D.N.M. 2015); *see also Franchise Tax Bd.*, 463 U.S. at 21, n.22 ("Considerations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it").  This is especially true when the State seeks to protect its own citizens from unfair practices by enforcing state laws and when the federal law plays such a miniscule role in an otherwise state-law action.  Extending federal question jurisdiction to a case where a single allegation of a violation of state law by virtue of violating COPPA is at best tangentially related to the matter "would risk trampling on the sovereign dignity of the State and inappropriately transforming what is essentially a [state] matter into a federal case." *McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011).

## II.     Meta's Removal is a Frivolous Delay Tactic.

Courts may award attorney's fees under 28 U.S.C. § 1447(c) where the removing party lacks an objectively reasonable basis for seeking removal.  *Porter v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1261, 1253 (10th Cir. 2010). The State is primarily interested in alerting this Court to the questionable basis and apparent motivation of removal here, not in obtaining fees.

Meta's removal is objectively *un*reasonable because its foundation comprises legal arguments that Meta knows federal courts have roundly rejected, including that a defense could give rise to federal question jurisdiction and that a UPA claim does not "arise under" federal law. *See Franchise Tax Bd.*, 463 U.S. at 14 ("[S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense"); *New Mexico, ex rel. Balderas v.*

*Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1234 (D.N.M. 2015) ("Even a cursory reading of the [UPA] statute makes patent that [it does] not implicate *Grable*.").

Meta ignores these basic and well-settled tenets of law. It stretches *Grable*'s "exceedingly narrow" holding beyond all reason. It also distorts and mischaracterizes the nature of the State's claims. The lack of support for Meta's arguments reveals Meta's true intent: its removal is designed not to succeed, but to delay.

Indeed, a half-dozen state attorneys general filed cases against Meta in October, none of which were removed. Massachusetts' complaint includes, for instance, allegations that Meta "knows its lax registration and age-gating efforts enable" "hundreds of thousands of Under-13 users" to access Instagram, that Meta does not meaningfully inhibit or prevent under-13 use, and that Meta collects, leverages, and analyzes data for more than 33 million U.S. teen users—thereby describing conduct prohibited by COPPA. Complaint & Jury Demand, *Massachusetts v. Meta Platforms, Inc. et al.*, No. 2384CV02397-BLS1, at ¶¶ 308-344, 6 (Mass. Super. Ct. Nov. 6, 2023). Just like New Mexico here, Massachusetts used Meta's conduct regarding under-13 users as a predicate for unfair and deceptive conduct under its own state unfair practices law. *See id.* ¶ 402. Yet Meta did not remove Massachusetts's action, nor any of the others. COPPA is not a magic word whose mere utterance in New Mexico's complaint transformed it, Cinderella-like, into a federal case.

Indeed, the real difference seems to lie in the balance of the State's complaint. None of the other state attorneys general complaints include the detailed allegations of Meta's misrepresentations regarding and its facilitation of widespread child sexual exploitation and trafficking on Meta's platforms—the subject of roughly 90 pages and 250 paragraphs in the State

13

of New Mexico's complaint (and one of the independent grounds for the State's public nuisance and UPA claims). Meta, which has agreed to unredact allegations reflecting information from documents produced subject to confidentiality agreements or statutory confidentiality in other attorneys general cases in two to four weeks, has represented it needs up to six weeks to review the State's allegations (many of which include previously unredacted information). Meta also refused to agree to preserve evidence related to the State's investigation, which prompted the State to file a preservation motion pending in state court at the time of removal, as were detailed discovery requests served the day after the State's complaint was filed.

When coupled with the lack of a legal basis for its selectively-filed motion, Meta's engineered tactics seem designed to delay the litigation and avoid its obligations under New Mexico law and procedure. On *the same day* that Meta removed the State's action, and before service was complete, it filed a "Notice of Potential Tag-Along Action" before the Judicial Panel on Multidistrict Litigation, singling out this action for inclusion in a federal multidistrict litigation (MDL). *In re: Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, MDL No. 3047 (J.P.M.L. Dec. 18, 2023), Dkt. No. 321. The effect of wrongful removal to a federal MDL is often months or even years of delay. *See, e.g.*, *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 389, 413 (S.D.N.Y. 2014) (remanding 19 states' consumer protection actions to state court after more than a year's delay in MDL). Meta knows that burying the State's action in an MDL—which already has hundreds of cases to manage—may stall the State's important enforcement action, which seeks to stop the disturbing harms that the State alleges Meta inflicts on children in New Mexico every day. The delay in the State's enforcement is not just a byproduct of Meta's removal; it is Meta's aim.

As an immediate result of Meta's frivolous removal, the State incurred the cost and expense of bringing this Motion to Remand. Moreover, because Meta noticed this action as a potential addition to the Social Media MDL, the State also must bring a Motion to Expedite Hearing of the State's Motion to Remand in this Court, as well as a Notice of Opposition to Conditional Transfer Order and Motion to Vacate Conditional Transfer Order in the MDL. Beyond the fees and costs incurred by fighting removal, Meta's conduct also poses the risk of significant delay to the State's important government enforcement action.

Meta cannot be permitted to ignore the well-established law of this Court to maneuver the State's action—over which there is no federal jurisdiction—into federal multidistrict litigation for the purpose of undue delay. This case, filed under the laws of New Mexico, should be litigated in the courts of New Mexico on its merits, as the State's complaint and an unambiguous body of case law require; the people of New Mexico deserve nothing less.

## CONCLUSION

For the foregoing reasons, the State requests that this Court remand this action to the First Judicial District Court, Santa Fe, New Mexico, and for such other relief the Court deems warranted.

RESPECTFULLY SUBMITTED this 21st day of December, 2023.

> RAÚL TORREZ
> **ATTORNEY GENERAL OF NEW MEXICO**
>
> */s/ James W. Grayson*
> **JAMES W. GRAYSON**
> **CHIEF DEPUTY ATTORNEY GENERAL**
> New Mexico Attorney General's Office
> P.O. Drawer 1508
> Santa Fe, NM 87504-1508
> Phone: (505) 218-0850

Email: jgrayson@nmag.gov

*/s/ Serena R. Wheaton*
**SERENA R. WHEATON**
**ASSISTANT ATTORNEY GENERAL**
New Mexico Attorney General's Office
Consumer & Environmental Protection Division
201 Third St. N.W., Suite 300
Albuquerque, NM 87102
Phone: (505) 490-4846
Email: swheaton@nmag.gov

**LINDA SINGER**
**DAVID I. ACKERMAN**
**MOTLEY RICE LLC**
401 9th St. N.W., Suite 630
Washington, D.C. 20004
Phone: (202) 232-5504
Email: lsinger@motleyrice.com
Email: dackerman@motleyrice.com
(*Pro Hac Vice* Petitions Forthcoming)

**CERTIFICATE OF SERVICE**

I certify that on December 21, 2023, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John C. Anderson
Olga M. Serafimova
Holland & Hart LLP
110 North Guadalupe, Suite 1
Santa Fe, NM 87501
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth
Covington & Burling LLP
Salesforth Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
nshafroth@cov.com

Timothy C. Hester
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20002-4956
thester@cov.com

/s/ Serena R. Wheaton
Serena R. Wheaton