# EXHIBIT 1



STATE OF INDIANA   )
                      ) SS:
COUNTY OF ALLEN  )

STATE OF INDIANA,         )
      Plaintiff,             )
                         )
vs.                             )
                         )
TIKTOK, INC., BYTEDANCE, )
INC., TIKTOK PTE. LTD., and )
BYTEDANCE, LTD.,       )
      Defendants.        )

ALLEN SUPERIOR COURT

CAUSE NO. 02D03-2212-PL-401

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS**

On October 25, 2023, Plaintiff State of Indiana (the "State") appeared by attorneys Scott Barnhart and Brian Barnes. Defendants TikTok, Inc., ByteDance, Inc., TikTok Pte. Ltd., and ByteDance, Ltd. (hereinafter collectively "TikTok") appeared by attorneys Daniel Pulliam, Emily Ullman, Megan Crowley, and Alexander Berengaut. The Court conducted a hearing on Defendants' Motion to Dismiss. The Court took the Motion to Dismiss under advisement. The Court, having considered all matters designated by the parties, all legal memoranda filed herein, and the arguments of counsel, now enters the following Order:

## BACKGROUND

The State initially filed this case on December 7, 2022, alleging that Defendants TikTok, Inc. and ByteDance, Ltd. misled Indiana consumers about the risk that the Chinese government may access and exploit their data. On that same date, the State filed a companion lawsuit against the same Defendants alleging they had violated the Indiana Deceptive Consumer Sales Act ("DCSA") by misrepresenting on third-party app stores the age appropriateness and frequency and intensity of certain content available on the TikTok platform. On December 28, 2022, these matters were consolidated for purposes of case management, discovery, and mediation. Both cases were consolidated before the Honorable Craig J. Bobay.

Despite the consolidation, Defendants filed a Notice of Removal in this case to federal court on January 9, 2023. The Defendants sought no such removal in the companion case. On May 23, 2023, Judge Holly A. Brady from the United States District Court granted the State's Motion to Remand the case back to the Allen Superior Court noting that the sole claim of the State against the Defendants was a violation of Indiana Deceptive Consumer Sales Act which was essentially buried in the 51 page, 234-paragraph Complaint.

Following remand, the State filed for a Motion for Change of Judge against the Honorable Craig J. Bobay and before the ruling on the Motion for Change of Judge, the State also filed its First Amended Complaint, which the Court would note is now 56 pages. The Amended Complaint identified ByteDance, Inc. and TikTok Pte, Ltd as additional Defendants. The substance of the

allegations in the Amended Complaint remained essentially the same. The Order for Change of Judge was granted and this case was returned to the undersigned judge along with the companion case. Defendants then filed a Motion to Dismiss on the grounds that the Court lacks personal jurisdiction over the Defendants, as well as the Complaint should be dismissed because it fails to state a claim under the DCSA. The Defendants also asserted that the relief sought by the State would violate the U.S. Constitution and the matter should be dismissed or stayed under the doctrine of primary jurisdiction. The Court set a status conference with the parties and set a briefing schedule on the Motion to Dismiss.

## DESIGNATED MATERIAL FACTS

1. TikTok, Inc. is a for-profit entity incorporated in the state of Washington. TikTok, Inc. operates a social media app known as "TikTok". TikTok, Inc. is headquartered at 5800 Bristol Parkway, Culver City, California.

2. TikTok Pte. Ltd. is a related corporate entity that nominally makes TikTok available on the Apple app store, Google Play Store, and the Microsoft Store.

3. ByteDance, Inc. is a for-profit entity incorporated in the state of Delaware and headquartered at 250 Bryant Street, Mountainview, California 94041.

4. Defendant Bytedance Ltd. is a multinational internet technology holding company and is the parent company of TikTok, Inc., TikTok Pte. Ltd., and ByteDance, Inc. Bytedance Ltd. is headquartered in Room 503 5F, Building 2, 43 North Third Ring West Road, Beijing, 10086 China and is registered in the Cayman Islands.

5. The TikTok app is a social media platform that centers on short videos created and uploaded by users and often set to music. The TikTok app is available to download on smartphones and tablets and most TikTok users interact with the platform through the application. The app is available for download on the Apple App Store, the Google Play Store, or the Microsoft Store. TikTok was the most downloaded app globally in 2022.

6. According to TikTok's Privacy Policy ("Privacy Policy"), when consumers use the TikTok platform, TikTok automatically collects their IP address, geolocation-related data, unique device identifiers, browsing and search history, and Cookies.

7. TikTok also collects other information about users' phones, including the user agents, mobile carriers, time zone settings, identifiers for advertising purposes, device models, device systems, network types, device IDs, screen resolution and operating systems, app and file names and types, keystroke patterns or rhythms, battery state, audio settings, and connected audio devices.

8. TikTok tells consumers that their data is protected by comprehensive company protocols and practices, including rigid access controls managed by a U.S.-based security team. TikTok states it has never given the Chinese Government access to that data, and that it never would. Moreover, TikTok states none of the user data from U.S. consumers is subject to Chinese law.

9. Current versions of the Privacy Policy state that TikTok may share data it collects with its parent company, ByteDance, or other affiliates, or certain entities, within its corporate group. Some of these entities are subject to Chinese law.

10. The TikTok app has more than 1 billion users globally, and approximately 100 million users in the United States, including users in Indiana.

11. TikTok makes its app available for download globally, including in Indiana. Many Hoosiers have downloaded TikTok and in Indiana the app was activated by a device using an Indiana IP address over 6 million times between January 1, 2021, and December 31, 2022.

12. TikTok earns significant income by serving the American market, including the Indiana market.

13. TikTok is an entertainment platform that allows users to create, share, and view videos. There are different ways in which a TikTok user can access the video content on the app. TikTok makes videos available to users through a "For You" feed. This feed provides a personalized

experience for each TikTok user. Additionally, users may also view videos by searching for videos using keywords or hashtags and by following other users to view them through a "Following" feed. The videos posted to TikTok are also accessed by searching for topics on the "Discover" page or from other people sharing links to the specific videos.

14. As commonly found with most free apps, TikTok presents advertisements on the app, based on the users' presence in any given location. By way of example, if a TikTok user's location indicates they are in Indiana, the TikTok user may see an ad on the app from an advertiser wanting to reach consumers in a certain Indiana market, such as Fort Wayne or Indianapolis.

15. Between January 1, 2021, and January 8, 2023, 8,009,338,251 videos were uploaded to TikTok in the United States. During the same time period, there were more than 21 trillion views of videos uploaded on the app in the United States.

16. Apple, Inc. ("Apple") operates a digital distribution platform, commonly known as the "App Store" through which app developers can make their apps, such as TikTok, available for download. Google and Microsoft also provide platforms for app developers to distribute their apps.

17. The TikTok app has been available for download, for free, in the App Store since 2018.

18. There is not an Indiana-specific version of TikTok. The app is distributed on a nationwide basis and, therefore, the version of the app available for download on any platform in Indiana is the same version throughout the United States.

19. The State alleges that the Defendants violated the DCSA in four ways: (1) by failing to disclose that individuals and entities in China can access TikTok U.S. user data; (2) by representing that TikTok U.S. user data is not subject to Chinese law; (3) by downplaying the influence or control exercised over TikTok, Inc. by its ultimate parent company ByteDance, Ltd.; and (4) by failing to disclose that the TikTok platform uses an in-app browser and the "data collection capabilities and practices" of that browser.

## STANDARD OF REVIEW

Defendants have moved to dismiss the State's Amended Complaint for lack of personal jurisdiction pursuant to Indiana Trial 12(B)(2), and for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6).

The existence of personal jurisdiction over a Defendant is a constitutional requirement for entering a valid judgment which is mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014). Indiana's "long-arm" rule for exercising personal jurisdiction over out-of-state defendants permits the exercise of personal jurisdiction in any manner

consistent with the Due Process Clause. *Id.* (citing *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006)). In determining whether the exercise of personal jurisdiction would violate the Due Process Clause, "a person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brockman v. Kravic*, 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945). A defendant's contacts must "consist of some action by which the Defendant purposely avails itself to the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* (citing *Hanson v. Denckla*, 357 U.S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). "Only the purposeful acts of the defendant, not the acts of the plaintiff or any third-parties, satisfies this requirement." *Id.*

Courts must first "look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being haled into court there." *Id.* "Contacts are any acts physically performed in the forum state or acts performed outside the forum state that have an effect within the forum." *Id.* "When evaluating a defendant's contacts with a forum state, courts should assess: (1) whether the plaintiff's claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agents with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contact; and (5) whether the defendant expected or encouraged contacts with the state." *Id.* at 1257.

To survive a motion to dismiss under Rule 12(B)(6), the allegations in the complaint must establish a "set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys & Girls Clubs*, 845 N.E.2d 130, 134 (Ind. 2006) (citation omitted). A motion to dismiss is proper only when it is apparent that the complaint states a set of facts and circumstances, which if true, would not support the relief requested. See *Witham v. Steffan*, 131 N.E.3d 774, 776 (Ind. Ct. App. 2019).

## PERSONAL JURISDICTION

The State acknowledges it is not pursuing an argument that the Court could exercise general jurisdiction over the Defendants in this case.

Specific jurisdiction exists when a lawsuit arises from, or is closely related to, a defendant's minimum contacts with or substantial connection to the forum state. *LinkAmerica*, 857 N.E.2d 9 at 967 (citing *Helicopteros Nacionales Day Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984), *on remand Hall v. Helicopteros Nacionales Day Columbia, S.A.*, 677 S.W.2d 19 (Tex. 1984). Specific jurisdiction is very different from general jurisdiction. Unlike general jurisdiction, where any contact a defendant intentionally directs at the state factors into the analysis, "[i]n order for a state court to exercise specific jurisdiction, the suit must aris[e] out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "In other words there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation.' For this reason, 'specific

jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

Contacts unrelated to the allegations against the non-resident defendant are immaterial in determining whether there is specific jurisdiction. *Id.* at 1781 ("when there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state.") (citing *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011).

Specific jurisdiction is found when "the suit-related conduct is related to or arises out of the defendant's conduct within or directed to Indiana." *Aquatherm GmbH v. Renaissance Assocs. I LP*, 140 N.E.3d 349, 358–59 (Ind. Ct. App. 2020). What matters for this analysis are the "contacts that the defendant [itself] creates with the forum state, not the defendant's contacts with persons who reside there." *Ysursa v. Frontier Pro. Baseball, Inc.*, 151 N.E.3d 275, 280 (Ind. Ct. App. 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

Here, the Amended Complaint does not allege facts sufficient to establish this Court's jurisdiction over Defendants. The Amended Complaint does not allege that Defendants made any of their allegedly deceptive statements or omissions in Indiana, nor does it allege that those statements or omissions were specifically directed at Indiana users. The statements and alleged omissions are found in multiple sources, all of which can be characterized as directed to the U.S. market as a whole. Some of these places include letters and testimony to legislators, interviews with news outlets, and statements on TikTok's website.

While the Amended Complaint alleges that the TikTok platform is available to Hoosiers through third-party app stores, this is insufficient to establish specific jurisdiction because the State does not allege that TikTok specifically targeted Indiana. *See Wolf's Marine*, 3 N.E.3d at 17 ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.") (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)).

Moreover, it is well-established that the unilateral act of a third party—such as a Hoosier downloading and using TikTok, or a third-party app store offering TikTok in Indiana—cannot establish specific jurisdiction. *See, e.g.*, *Walden*, 571 U.S. at 285–86. As the Seventh Circuit has observed, if having an interactive website were enough in situations like this one, there is no limiting principle and a plaintiff could sue everywhere. *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014).

The State also alleges that TikTok provides Indiana users with Indiana-focused content and advertisements on the TikTok platform. This conduct is also insufficient to establish jurisdiction over Defendants. In *Johnson v. TheHuffingtonPost.com, Inc.*, the Fifth Circuit rejected the plaintiff's argument that geographically-targeted advertisements were sufficient to support specific jurisdiction over a defendant in a libel case. 21 F.4th 314, 321 (5th Cir. 2021). As the court explained, the defendant's sale of advertisements neither "produced nor relate[d] to" the plaintiff's libel claim, and thus there was no "suit-related tie[]" to support personal jurisdiction. *Id.*

at 320–21. The same is true here: Indiana-focused content and advertisements have nothing to do with the State's claims, which address nationally-directed statements. The State has not pled that this allegedly inappropriate content is targeted to Indiana residents in any manner different than it is to users in other states.

Similarly, the allegation that TikTok Inc. filed an Indiana income tax return, is insufficient to support specific jurisdiction. The fact that TikTok Inc. derives some income from activities in Indiana does not mean that the State's lawsuit—founded on particular purported statements and omissions that are not targeted at Indiana users—arises from or relates to those activities. And if filing a tax return were enough to establish specific jurisdiction over a corporation, then conducting any business in a state could establish jurisdiction over the entity for all suits, which would violate the Indiana Supreme Court's command that a "defendant's *suit-related conduct* must create a *substantial connection* with the forum State" for specific jurisdiction to exist. *See Boyer*, 42 N.E.3d at 511 (citation omitted) (first emphasis added).

Finally, the Court finds that the State's specific allegations against ByteDance Ltd. and ByteDance Inc. are insufficient to support personal jurisdiction as to those entities. The State alleges only that ByteDance Inc. is a "parent entity that earns revenue in the United States from TikTok's operations" and that ByteDance Ltd. "own[s]" the other Defendant entities. That a company is the parent of another company, without more, does not subject it to specific jurisdiction. *See LinkAmerica*, 857 N.E.2d at 968 ("We start with the presumption that a parent and a subsidiary are independent

entities and a subsidiary's contacts with the forum are not attributed to the parent corporation for jurisdictional purposes."); *Abelesz v. OTP Bank*, 692 F.3d 638, 658 (7th Cir. 2012) (applying the "general rule" that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent") (citations omitted).

Accordingly, the Court concludes that it lacks specific jurisdiction over Defendants and TikTok's Motion to Dismiss under Trial Rule 12(B)(2) shall be granted.

## INDIANA DECEPTIVE CONSUMER SALES ACT

While the Court has determined that it lacks personal jurisdiction over TikTok, the Court will still address, albeit more briefly, whether the State has stated a claim for relief under the Indiana Deceptive Consumer Sales Act. The Court finds that the State has failed to state a claim for relief under the DCSA and, therefore, there is an additional independent ground for dismissal of the State's Amended Complaint.

### 1. Downloading The Free TikTok App Is Not A Consumer Transaction Under The DCSA.

TikTok has argued that the term "consumer transaction" as used in the DCSA is limited to exchanges for money, and does not encompass downloads of free apps like TikTok. Specifically, the DCSA states: "a supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a). The

DCSA also defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service, or an intangible." *Id.* § 24-5-0.5-2(1). The DCSA has historically been used for consumer transactions involving exchanges for money. *See e.g. Lawson v. Hale*, 902 N.E.2d 267, 269-71 (Ind. Ct. App. 2009).

The State argues that the DCSA applies to TikTok because both "sales" and "other dispositions" can occur for consideration other than money, and TikTok users provide their personal data as consideration for access to the platform. But "[u]nder Indiana law a 'sale' has a well-defined meaning and is the passing of title from a seller to a buyer for money." *Washington Nat'l Corp. v. Sears, Roebuck & Co.,* 474 N.E.2d 116, 120 (Ind. Ct. App. 1985).

Moreover, the State does not dispute that "other disposition" should be interpreted consistently with the preceding terms. Rather, it argues that terms like "lease," "assignment," or "award by chance" do not require an exchange of money. However, the State does not identify any authority for the proposition that "lease," "assignment," or "award by chance" should be construed as not involving an exchange of money, such that *ejusdem generis* would support the State's broad interpretation of the term "other disposition."

TikTok relies on *ejusdem generis* to support their argument that the phrase "or other disposition" as used in the DCSA definition of consumer transaction, would also involve the exchange of money or other valuable consideration. *Ejusdem generis* is an interpretive cannon of law, meaning "of the same kind." *O'Bryant v. Adams*, 123 N.E.3d 689, 693 (Ind. 2019). This Court finds

that the DCSA definition of consumer transaction does not include the downloading of a free app. No consumers in Indiana have exchanged money for their use of TikTok. As the downloading of a free app is not a consumer transaction, the DCSA does not apply to this case.

The State has also argued the DCSA should apply to TikTok because they profit from consumers who use the platform. The DCSA, however, is limited to regulation of consumer transactions and not all profit-generating activities the defendants may benefit from. For this reason too, the DCSA does not apply to TikTok because there is no consumer transaction involved.

As the downloading of the free TikTok app is not a consumer transaction, the State has failed to state a claim under the DCSA and TikTok is entitled to a dismissal of the State's Amended Complaint under Trial Rule 12(B)(6).

### 2. TikTok's Alleged Misstatements and Omissions Were Not In Connection With A Consumer Transaction.

The Amended Complaint also fails for the reason that it does not allege TikTok made any deceptive acts or omissions "in connection with a consumer transaction," as the statute requires.  Ind. Code § 24-5-0.5-3(a). Instead, TikTok's alleged misstatements and omissions regarding the risk of the Chinese Government accessing U.S. user data consist of (i) letters and testimony to legislators; (ii) interviews with news outlets; (iii) statements on TikTok's website; (iv) generalized allegations regarding TikTok Inc.'s purported public-relations strategy; and (v) court filings.

There are no allegations that Indiana users even heard these alleged misstatements, let alone relied on them when deciding to download and use the TikTok platform. In the absence of such allegations, the State has not asserted a claim under the DCSA and TikTok's Motion to Dismiss shall be granted. *See, e.g.*, *New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 457 F. Supp. 3d 1103, 1127 (D.N.M. 2020) (reaching similar conclusion under New Mexico consumer protection statute); *Salehi v. Wells Fargo Bank, N.A.*, 2012 WL 2119333, at *6 (E.D. Va. June 11, 2012) (similar under Virginia law).

### 3. The State Has Not Alleged TikTok Committed An Incurable Deceptive Act.

Because the Amended Complaint alleges that TikTok committed incurable deceptive acts, it must satisfy Indiana Trial Rule 9(B). *McKinney v. State*, 693 N.E.2d 65, 71 (Ind. 1998). Under Rule 9(B), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be specifically averred." Thus, to satisfy Rule 9(B), the Amended Complaint must state the time, the place, the substance of the false representations, the facts misrepresented, and "the identity of what was procured by fraud." *Kapoor v. Dybwad*, 49 N.E.3d 108, 132 (Ind. Ct. App. 2015) (quoting *Cont'l Basketball Ass'n, Inc. v. Ellenstein Enters.*, 669 N.E.2d 134, 138 (Ind. 1996)).

The State does not dispute that Rule 9(B) applies. Instead, it argues that the Amended Complaint satisfies Rule 9(B) because it "specifically allege[s] 'what the representations were, who made them, [and] when [and] where they were made.'" But notably absent from the State's allegations is the "how" of the fraud—in other words, the "identity of what was procured by

fraud." *Cont'l Basketball Ass'n, Inc.*, 669 N.E.2d at 132; *see also Himan v. Thor Indus., Inc.*, 2022 WL 683650, at *14 (N.D. Ind. Mar. 8, 2022). In particular, the Amended Complaint does not assert that TikTok's alleged statements or omissions "led [consumers] to" download the TikTok platform, "which [they] would not have otherwise done if [they] had been fully informed." *Himan*, 2022 WL 683650, at *14. This is dispositive and requires dismissal of the Amended Complaint. *See McKinney*, 693 N.E.2d at 73 (noting that Rule 9(B) is not satisfied where the complaint contains "some of the required information, but not all").

Similarly, the Amended Complaint does not allege facts establishing that TikTok's alleged misrepresentations were material, or that TikTok acted with an "intent to defraud," as required to state a claim of incurable deceptive acts. *Id.* at 68; *see id.* at 73 n.15 ("[T]he State alleges that goods and services did not have the 'sponsorship' represented to the consumers, without explaining what this means or what its practical effect might be."); *Cottage Sav. v. C.I.R.*, 499 U.S. 554, 570 (1991) (Blackmun, J., concurring in part and dissenting in part) ("A material difference is one that has the capacity to influence a decision.").

Accordingly, the Court concludes that the Amended Complaint does not satisfy Rule 9(B) and must be dismissed.

**4. TikTok's Alleged Statements Are Not Deceptive As A Matter Of Law.**

Even if the DCSA applied to free platforms like the TikTok platform, the State alleged that TikTok made deceptive acts or omissions "in connection with a consumer transaction," Ind. Code § 24-5-0.5-3(a), and the Amended Complaint satisfied Rule 9(B), the Court would dismiss the Amended Complaint under Rule 12(B)(6) because it does not allege that TikTok engaged in any conduct that violates the statute.

The Amended Complaint alleges TikTok violated the DCSA in four ways: (1) by failing to disclose that individuals and entities in China can access TikTok U.S. user data; (2) by representing that TikTok U.S. user data is not subject to Chinese law; (3) by downplaying the influence and control exercised over TikTok Inc. by its ultimate parent company, ByteDance Ltd.; and (4) by failing to disclose that the TikTok platform uses an in-app browser and the "data collection capabilities and practices" of that browser. These allegations do not state a cognizable claim under the DCSA.

First, the State's allegations establish that TikTok disclosed to TikTok users the ways in which their data may be accessed and with whom it may be shared. TikTok users in the United States are subject to TikTok's Privacy Policy, which is available on TikTok Inc.'s website. The Privacy Policy states that the TikTok platform "is supported by certain entities within our corporate group, which are given limited remote access to Information We Collect," and that "entities with whom TikTok may share [user] data . . . may be located outside of the United States." Relying on the Privacy Policy, the Amended

Complaint alleges that "current and recent versions of TikTok's privacy policy state that it may share data it collects with its parent company ByteDance or other affiliates, or certain entities, within its corporate group, many of whom are subject to Chinese law." Additionally, the Amended Complaint alleges that in 2020 a former executive stated: "TikTok relies on China-based ByteDance personnel for certain engineering functions that require them to access encrypted TikTok user data." Similarly, the Amended Complaint alleges that in "a June 2022 letter to multiple U.S. senators, TikTok acknowledged that '[e]mployees outside the U.S., including China-based employees, can have access to TikTok U.S. user data subject to a series of robust cybersecurity controls . . . .'"

In light of these alleged disclosures, TikTok cannot be held liable under the DCSA for not "alert[ing] Indiana consumers to the ability of TikTok to share their data with individuals or entities located in China, or for individuals or entities located in China to access that data." *See also Morgan Asset Holding Corp.*, 736 N.E.2d at 1271 ("[A] court should not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading.") (citation omitted); *McQueen v. Yamaha Motor Corp., U.S.A.*, 488 F. Supp. 3d 848, 859 (D. Minn. 2020) (dismissing DCSA claim because complaint alleged that defendant disclosed relevant facts).

Although the State faults the Privacy Policy for not specifically referencing "China," this allegation does not give rise to a claim under the DCSA. As one court explained, the DCSA "isn't a blanket prohibition on non-disclosure of information; the non-disclosure must be unfair in some sense." *Sims v. New Penn Fin. LLC*, 2016 WL 6610835, at *5 (N.D. Ind. Nov. 8, 2016). And

here, the Amended Complaint's allegations do not establish any such "unfairness" or any "intent to deceive," *see McKinney*, 693 N.E.2d at 68, particularly in light of the disclosures alleged in the Complaint, *see Sims*, 2016 WL 6610835, at *5 (dismissing DCSA claim and explaining that defendant's "failure to mention one requirement of approval" for a loan "cannot reasonably be viewed as unfair, abusive, or deceptive").

Second, TikTok's alleged statements concerning the applicability of Chinese law to U.S. user data are not actionable.  There is no dispute that (1) the allegations in the Amended Complaint are subject to a two-year statute of limitations, Ind. Code § 24-5-0.5-5(b); and (2) the two alleged statements at issue—i.e., a 2019 TikTok Inc. press release stating that "[n]one of our data is subject to Chinese law," and a 2020 interview in which a former TikTok executive stated that the Chinese Government "does not have jurisdiction over the platform," were made more than two years before the State filed suit.   The State argues, however, that because Defendants' alleged misstatements are "of a continuous nature" the statute of limitations does not apply.   But the DCSA statute of limitations is evaluated on an act-by-act basis, even where the same deceptive conduct is alleged across multiple transactions. *See State v. Classic Pool & Patio, Inc.*, 777 N.E.2d 1162, 1166 (Ind. Ct. App. 2002).  Accordingly, these two statements are time-barred.

Even if these alleged statements were not time-barred, however, they would not be actionable because they are statements of law, which are "seldom actionable . . . especially on matters for which the legal question is unsettled or unresolved." *Rainbow Realty Grp., Inc. v. Carter*, 131 N.E.3d 168, 1778 (Ind. 2019); *see also 1st Source Bank v. Vill. of Stevensville*, 2012 WL

2308647, at *3 (N.D. Ind. June 18, 2012) (noting that whether a certain jurisdiction's law applies is a "legal conclusion"). Regardless, as discussed above, the alleged misstatements are not deceptive as a matter of law because the State alleges that TikTok disclosed that "it may share data it collects with its parent company ByteDance or other affiliates, or certain entities, within its corporate group, many of whom are subject to Chinese law."

Third, the allegations that TikTok downplays the "influence and control" that "ByteDance has over TikTok" are not actionable. The Amended Complaint does not allege that TikTok's statements about TikTok Inc.'s relationship with ByteDance are false. Instead, the State argues that TikTok does not disclose "the full extent of ByteDance's control over TikTok" and thereby paints "a picture for Indiana consumers that TikTok is an independent company and that the risk of consumers' data being accessed and exploited by the Chinese Government or the Chinese Communist Party is minimal to nonexistent."

These allegations do not state a claim under the DCSA. The "extent of ByteDance's control over TikTok" is not a fact capable of being proven true or false, and is "too general" and subjective to support a claim under the statute. *See Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 741 (N.D. Ind. 2018); *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332–33 (Ind. 2013); *accord Zylstra v. DRV, LLC*, 8 F.4th 597, 610 (7th Cir. 2021) ("[S]tatements of 'unverifiable opinion' ... are not actionable."). In any event, the Amended Complaint alleges that TikTok Inc. disclosed that ByteDance Ltd. is TikTok's ultimate parent company that ByteDance Ltd. "plays a role in

the hiring of key personnel at TikTok" and that "[h]igh-level ByteDance employees have served in dual roles for ByteDance and for TikTok Inc., at least as recently as 2021." In light of these allegations, the Court concludes that TikTok's alleged failure to disclose the "extent of ByteDance's control over TikTok" is not deceptive as a matter of law and does not evince an "intent to deceive," as the statute requires. *See Sims*, 2016 WL 6610835, at *5; *McKinney*, 693 N.E.2d at 68.

Fourth, TikTok's alleged failure to disclose the use of an in-app browser does not violate the DCSA. As TikTok points out, the State does not allege that TikTok used the browser to collect undisclosed information from Indiana users; instead, the State concedes that "TikTok tells users" what information the platform collects. *See In re TikTok Inc.*, No. 1:20-cv-04699, ECF No. 261 at 50–51 & n.26 (N.D. Ill. Jul. 28, 2022) (noting that TikTok Inc.'s privacy policy "disclose[s] the ways in which Defendants collect, use, and share [user] data," including that "TikTok and its affiliates . . . automatically collect certain information" such as "internet or other network activity" and "browsing and search history"). Thus, TikTok's alleged failure to specifically disclose the use of the in-app browser is not "deceptive" as a matter of law. *See Sims*, 2016 WL 6610835, at *5.

For the reasons set forth above, the State has failed to assert a claim against TikTok under the DCSA and, therefore, TikTok is entitled to a dismissal of the Amended Complaint under Trial Rule 12(B)(6).

## CONCLUSION

The Court has found that it does not have personal jurisdiction over TikTok. Furthermore, the State has failed to state a claim under the DCSA. For the above and foregoing reasons, TikTok's Motion to Dismiss under Indiana Trial Rules 12(B)(2) and 12(B)(6) is **GRANTED** and Plaintiff's Amended Complaint against TikTok is hereby **DISMISSED**.

TikTok also raised federal constitutional issues in its Motion to Dismiss. As this Court has granted the Motion to Dismiss on the other asserted grounds, the Court finds it is not necessary to rule on the constitutional issues at this time.

November 29, 2023

JUDGE JENNIFER L. DEGROOTE