IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, EX REL., RAÚL TORREZ, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>- v. -<br><br>META PLATFORMS, INC.; INSTAGRAM, LLC; META PAYMENTS, INC.; META PLATFORMS TECHNOLOGIES, LLC; and MARK ZUCKERBERG,<br><br>Defendants. | No. 1:23-cv-01115 MIS-KK |

**DEFENDANTS' OPPOSITION TO MOTION FOR ORDER REQUIRING DEFENDANTS TO PRESERVE RELEVANT DOCUMENTS CONCERNING <u>META ACCOUNTS REFERENCED IN THE COMPLAINT</u>**

## I.     INTRODUCTION

The State's Motion for Order Requiring Defendants to Preserve Relevant Documents Concerning Meta Accounts Referenced in the Complaint ("Motion") depends entirely on the State's unfounded, and incorrect, fear that Meta will delete user accounts that are relevant to this case.[1] The State extrapolates from this inaccurate factual premise that the Court must enter a vague and unbounded order obligating Meta to preserve "all data associated with" certain user accounts placed at issue in the State's Complaint. This goes far beyond the requirements of federal law, which obligate Meta to take reasonable steps to preserve relevant information, applying principles of proportionality.

The State ignores both the standard for preservation and the well-established principle that the Court should "exercise restraint in using its inherent authority to issue preservation orders." *CenturyLink, Inc. v. Alpine Audio Now, LLC*, 2016 WL 192291, at *1 (D. Colo. Jan. 15, 2016) (internal quotation omitted). To justify its request for a preservation order, the State must show "that there is a significant concern that potentially relevant evidence will be destroyed causing harm to the opposing party." *Id.* The State's speculation fails to satisfy its burden of showing a "significant concern" that evidence may be destroyed, and the State has not demonstrated **any** potential harm that would result if a preservation order were not entered.

In addition to the State's failure to demonstrate its entitlement to the requested relief, the Motion also fails because Meta has complied with its duty to take reasonable and proportional steps to preserve information relevant to the accounts. The accounts that Meta identified and

---

[1] "Meta" refers herein to Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC.

disabled because they violated Meta's policies are preserved and will not be deleted. Meta has also preserved account captures for each of the relevant accounts it has identified, consistent with its process for preserving user account data at the request of law enforcement entities. And Meta has taken, and continues to take, reasonable steps to identify and preserve other data relevant to the Complaint. For these reasons, the State's Motion should be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The State brought this action in state court on December 5, 2023, asserting claims under the New Mexico Unfair Practices Act ("UPA") and for public nuisance, alleging that (1) Meta made misleading and deceptive statements or omissions regarding the safety of Meta's social media platforms; (2) Meta engaged in unfair and unconscionable trade practices by operating its platforms with knowledge of their harmful effect; and (3) Meta's operations of its platforms in New Mexico constitute a public nuisance. *See* Compl., ECF No. 1-2, ¶¶ 450–521.[2] Among other allegations, the Complaint describes a set of fictitious user accounts created on Meta's Instagram and Facebook services by investigators working for the State. *Id.* ¶¶ 95–166. The State alleges that its investigators created these accounts to impersonate fictional users and develop evidence of alleged misconduct occurring on Meta's services. *Id.* ¶ 91.

Meta accepted service of the State's Complaint on December 6, 2023,[3] and immediately began taking steps to preserve information relevant to the State's allegations. In connection with

---

[2] Meta removed the case to this Court on December 18, 2023. *See* ECF No. 1 (Notice of Removal).
[3] The Complaint also names Mark Zuckerberg in his personal capacity. Mr. Zuckerberg was not served until December 19, 2023.

that process, Meta personnel identified the Facebook and Instagram accounts that appeared to be the fictitious user accounts created by the State's investigators.

Meta's Community Standards for Facebook do not permit users to "[c]reate or use an account that deliberately misrepresents [one's] identity in order to mislead or deceive others."[4] Similarly, Meta's Terms of Use for Instagram state that users "may not impersonate someone or something [they] aren't."[5]  This authenticity policy notes, in material directed to law enforcement personnel, that "[o]perating fake accounts, pretending to be someone else, or otherwise misrepresenting your authentic identity is not allowed, and we will act on violating accounts."[6] Because the State's Complaint admitted that the investigators' accounts were created and used to deliberately misrepresent the investigators' identity, Meta disabled the accounts consistent with its policies.  Mot. at 2–3.

Among other steps, Meta also identified accounts that were alleged by the State to have engaged in misconduct on Meta's services, and that appeared to have violated Meta's policies. Meta took enforcement action against such violating accounts consistent with its policies—up to and including disabling them.

When an account on Meta's Instagram or Facebook services is disabled, it is not typically immediately and automatically deleted.  Decl. of Tyler Harmon, ¶ 2 (attached hereto as Exhibit A).  Instead, a disabled account is maintained in a temporary disabled state that is capable of being

---

[4] https://transparency.fb.com/policies/community-standards/account-integrity-and-authentic-identity.

[5] https://help.instagram.com/581066165581870/.

[6] https://about.meta.com/actions/safety/audiences/law/guidelines.

3

restored to the social graph. *Id.* ¶ 2. (The "social graph" is the association of the massive number of individual pieces of data that make up Meta's social media services.) Meta has applied a legal hold to each of the accounts identified as relevant during its review of the State's Complaint, including accounts it has disabled. Decl. of Ross Creighton, ¶ 2 (attached hereto as Exhibit B). Those legal holds prevent deletion of the disabled accounts. *Id.* Meta uses this process, where appropriate, to prevent deletion of accounts that it has disabled. *Id.*

In addition to placing legal holds on the disabled accounts, Meta has taken captures of all accounts identified during its review. *Id.* ¶ 3.[7] These account captures are processed using a dedicated system Meta has for capturing contents of a Facebook or Instagram account.[8] Harmon Decl. ¶ 3. Meta routinely performs account captures in response to requests from law enforcement and other governmental entities pending receipt of valid legal process (and will produce account records upon receipt of valid legal process). *Id.* ¶ 3. This designated system preserves reasonably accessible and necessary user account data that is available at the time of preservation, for the Facebook or Instagram account being preserved. *Id.* ¶ 3.[9] Meta has also preserved copies, where available, of the State's investigators' accounts that Meta identified and disabled during its review

---

[7] A small number of account preservation captures are still processing as of the date of filing. Creighton Decl. ¶ 3.

[8] *See* https://about.meta.com/actions/safety/audiences/law/guidelines. Meta receives hundreds of thousands of preservation requests from U.S. law enforcement entities each year. In the first six months of 2023 alone, Meta received such requests relating to over 143,000 accounts/users. https://transparency.fb.com/reports/government-data-requests/country/US/.

[9] Account captures do not include any content that Meta reports to the National Center for Missing and Exploited Children in accordance with its obligations under federal law (*see* 18 U.S.C. § 2258A) because Meta is not permitted to retain such content except for limited purposes that do not apply here. *See* 18 U.S.C. §§ 2251, 2252, 2252A.

using its "Download Your Information" tool,[10] which includes a copy of ***the exact same data*** to which the State would have access if the accounts were still active on the platform.  Creighton Decl. ¶ 4.  Further, in addition to the user data preservation efforts described here, Meta has more broadly taken reasonable and proportional steps to preserve data and information relevant to the State's Complaint, including structured data.[11]

On December 7, 2023, the State demanded that the accounts involved in the investigation be reinstated and that Meta preserve "all data" associated with the accounts, without any limits. Ex. A at 2–3.  Meta promptly confirmed—consistent with its legal obligations—that it was taking reasonable steps to identify and preserve data and information relevant to the State's claims.  *Id.* at 2.  Meta also noted that it required certain information from the State to ensure that it was able to identify the relevant accounts.  *Id.* at 2.  The State claimed in response that "all data is relevant," without articulating any basis for that position or attempting to tie it to the State's allegations.  *Id.* at 1.  The State also claimed that it was unable to provide the additional information Meta requested because its investigators no longer had access to their fictitious accounts.  *Id.*[12]

---

[10] https://www.facebook.com/privacy/guide/data_subject_rights.

[11] "Structured Data" is data stored in a structured format, such as databases or data sets with specific form and content rules as defined by each field of the database.  The Sedona Conference, *The Sedona Conference Glossary: eDiscovery & Digital Information Management, Fifth Edition*, 21 Sedona Conf. J. 263, 375 (2020).

[12] Meta notes that the State's response suggests that it has failed to take its own steps to ensure that relevant information is preserved.  In particular, Meta makes available to its users tools that allow them to download copies of information from their accounts.  *See* https://www.facebook.com/privacy/guide/data_subject_rights.  The State's response implies that it failed to save such downloads despite having its own preservation obligations.

The State filed its Motion the next business day. There, the State asserts—without citation—that Meta cannot "unilaterally" determine what evidence related to the accounts referenced in the Complaint is relevant, and demands that the Court order Meta to preserve "all data" associated with those accounts. Mot. at 1. The State also avers that it "believes" (without stating any basis for this belief) that Meta intends to delete relevant accounts. *Id.* at 4. The Motion makes clear that the State did not understand Meta's user-data-preservation efforts, or the actual effect of Meta's disabling of relevant user accounts. On December 14, Meta offered to meet and confer with the State regarding Meta's preservation efforts. Decl. of Nathan Shafroth, ¶ 2 (attached hereto as Exhibit C). The State only agreed to confer after Meta reiterated its offer on December 21. *Id.* ¶ 3. The parties conferred on December 26, and Meta explained the user-data-preservation efforts it had undertaken. *Id.* ¶ 4. Though the State suggested that the impetus for its Motion was its mistaken belief that Meta would be deleting user accounts, it refused to withdraw its Motion after being assured that belief was incorrect. *Id.* ¶ 5. The only basis the State offered for this refusal was its continued assertion—for which it offered no authority—that Meta was required to preserve "all data" associated with the disabled accounts. *Id.* ¶ 6.

### III.    ARGUMENT

#### A.    Legal Standard

The State's Motion nowhere addresses the legal standard it must satisfy for its Motion to be granted. "Before a preservation order is entered, the movant must show that there is a significant concern that potentially relevant evidence will be destroyed causing harm to the opposing party." *CenturyLink*, 2016 WL 192291, at *1; *see also Am. LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1071 (C.D. Cal. 2009) (denying motion for preservation order and noting that

6

courts' inherent power to issue preservation orders "must be exercised with restraint and discretion" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991))). The Court "must exercise restraint in using its inherent authority to issue preservation orders." *CenturyLink*, 2016 WL 192291, at *1 (internal quotation omitted).

Courts consider three factors in determining whether a preservation order is necessary: "'(1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of the evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved.'" *Id.* (quoting *Bright Solutions for Dyslexia, Inc. v. Doe*, 2015 WL 5159125, at *2 (N.D. Cal. Sept. 2, 2015)). The State makes no effort to meet these requirements for entry of a preservation order.

The State also fails to acknowledge the legal standard governing the parties' preservation obligations. The preservation obligation applies "when the party has notice that the evidence is ***relevant*** to litigation." *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294 (D.N.M. 2016) (emphasis added) (internal quotation omitted). The preservation of "relevant" evidence does not require that a party "upon recognizing the threat of litigation, preserve every shred of paper, every email or electronic document, and every backup tape." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 2017 WL 3535293, at *3 (D.N.M. Aug. 16, 2017), *report and recommendation adopted*, 2018 WL 1010284 (D.N.M. Feb. 21, 2018) (internal quotation omitted). Rather, parties must preserve "unique, relevant evidence that might be useful to an adversary." *Id.* (internal quotation omitted).

Even as to unique, relevant evidence, parties' preservation obligations are not unbounded. Rather, parties are required to take **reasonable** steps to preserve documents and electronically stored information, applying principles of proportionality. *Franklin v. Stephenson*, 2022 WL 6225303, at *8 (D.N.M. Feb. 16, 2022) ("Whether a party has honored its obligation to preserve evidence turns on reasonableness, which must be considered in the context of whether what was done—or not done—was proportional to that case and consistent with clearly established applicable standards." (quoting *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1164 (D. Colo. 2015))); *see also* Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 37(e).

Further, "the duty to preserve and produce documents rests on the party" in possession of the evidence. *Browder*, 187 F. Supp. 3d at 1295 (internal quotation omitted); *see also In re Gold King Mine Release in San Juan Cnty., Colorado, on Aug. 5, 2015*, 2022 WL 2230759, at *6 (D.N.M. June 21, 2022) (citing *Browder*, 187 F. Supp. 3d at 1295). The law grants parties discretion to conduct their own investigations and reach their own determinations about what evidence is relevant and thus must be preserved, and how to execute such preservation. *See* The Sedona Conference, *Sedona Principles: Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 52 (2018) (hereinafter "*Sedona Principles*") ("[R]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own [ESI]."); *see also*, *e.g.*, *Weinstein v. Katapult Grp., Inc.*, 2022 WL 4548798, at *2 (N.D. Cal. Sept. 29, 2022) (applying principle); *New Mexico Oncology*, 2017 WL 3535293, at *3 (finding litigation hold adequate where receiving employees given some discretion to determine relevance).

### B. The State Has Not Established a Significant Concern that Evidence Will Be Deleted Absent a Preservation Order.

The central premise of the State's Motion is that Meta has "threatened to delete the information from those accounts" referenced in the Complaint. Mot. at 1. But while "the State believes" that such a "threat[]" has been made, *id.* at 3–4, its belief is incorrect and unfounded. To the contrary, Meta has specifically confirmed to the State that it is taking reasonable and proportional steps to satisfy its preservation obligations, including taking preservation captures of relevant accounts and placing legal holds on those accounts. *See supra* Part II. Yet even after Meta explained its preservation efforts during a meet-and-confer conference with the State, the State continued to claim it required a preservation order based on its unfounded belief that Meta had made a purported "threat" to delete the disabled accounts. *See* Shafroth Decl. ¶ 5.

As described above, Meta's approach to preserving relevant and reasonably accessible data related to the relevant user accounts has two aspects. *First*, though Meta has disabled user accounts, it has not deleted them. Meta has placed legal holds on the accounts it has disabled, which prevents their deletion. Harmon Decl. ¶ 2; Creighton Decl. ¶ 2. *Second*, Meta has preserved captures of each of the relevant accounts. Creighton Decl. ¶ 3. Those account captures include all of the data that is routinely preserved in response to the hundreds of thousands of law enforcement preservation requests Meta receives each year. Harmon Decl. ¶ 3.

These efforts more than satisfy Meta's obligation to take reasonable and proportional steps to identify and preserve ***relevant*** information. *McGee v. Pacheco*, 2021 WL 2104831, at *5 (D. Colo. May 25, 2021). Contrary to the State's position that Meta cannot "unilaterally" act to meet its preservation obligations, courts recognize that the party possessing the information is in the best position to make preservation determinations and assess the burden and proportionality of

9

preservation efforts, taking account of its knowledge of its own systems. *Sedona Principles*, 19 Sedona Conf. J. at 52 ("[A] responding party is best situated to preserve, search, and produce its own ESI."); *Weinstein*, 2022 WL 4548798, at *2 (applying principle); *New Mexico Oncology*, 2017 WL 3535293, at *3 (rejecting plaintiff's argument that "employees subject to a litigation hold are forbidden from any discretion" because "an entity is not required to, upon recognizing the threat of litigation, preserve every shred of paper, e-mail or electronic document, and every backup tape").

The State's Motion offers no basis to supplant that general principle in this case.[13] When Meta's counsel inquired why the State believed the ordinary rule did not apply here, the State's only response was that Meta had purportedly threatened to delete the investigators' accounts. Shafroth Decl. ¶ 5. That concern, of course, was fully addressed by Meta's application of a legal hold to each account. *Supra* Part II. The State offered no explanation for how Meta's purported "threat" of deletion could support a heightened and boundless obligation to preserve "all data," even after Meta had confirmed to the State that no such deletion would actually occur. Shafroth Dec. ¶ 6. Nor has the State anywhere identified any *specific* content or data that it believes it has been deprived of as a result of Meta disabling accounts as described above.

---

[13] The State's vague concerns about relevance, Mot. at 5, are similarly unfounded. Like any party assessing its preservation obligations at the outset of litigation, Meta's preservation efforts are guided by the State's allegations in its Complaint. The suggestion that Meta must "produce[] documents in discovery," *id.*, before the parties can assess relevance makes no sense: preservation efforts necessarily begin before discovery commences, and that does not prevent parties from routinely satisfying their discovery obligations. Similarly, the State's contention that it does not know the universe of information Meta possesses is beside the point. Meta and its counsel are capable of understanding the State's allegations, investigating the existence of information relevant to those allegations, and determining how that information can best and most reasonably be preserved.

Given the substantial effort Meta has undertaken with respect to preserving the relevant user accounts, the State cannot show a "significant concern" that evidence will be deleted without a preservation order, and for that reason the State's Motion should be denied.

### C. The State Has Not Shown a Risk of Irreparable Harm Absent a Preservation Order and Meta Is More than Capable of Meeting Its Preservation Obligations.

The State's failure to demonstrate a significant concern that evidence might be destroyed is an adequate basis to deny the State's Motion. The Motion should also be denied because the State has not shown a risk it would be irreparably harmed unless the Court enters the requested order, and because Meta is fully capable of meeting its preservation obligations. *See CenturyLink*, 2016 WL 192291, at *1 ("Before a preservation order is entered, the movant must show that there is a significant concern that potentially relevant evidence will be destroyed causing harm to the opposing party.").

The State's Motion offers no facts supporting a claim of irreparable harm. While the State vaguely refers to a different (unidentified) company in separate litigation inadvertently deleting certain accounts, Mot. at 4, the State offers no basis to conclude that Meta's systems are likely to cause such an inadvertent deletion.

Further, beyond the State's inability to show any such irreparable harm, it would be unreasonable and unworkable to impose on Meta an obligation to preserve "all data" that is in any way "associated with" any of the accounts Meta has identified and disabled. Mot. at 6. As an initial matter, the State's demand is vague, ambiguous and overbroad, since the State makes no effort to define what it means for data to be "associated with" a user account. And courts routinely reject attempts to impose unbounded preservation obligations for digital data, in part due to the

11

"immense amount of data" connected to user accounts. *See, e.g.*, *Rodriguez v. Google LLC*, 2021 WL 8085492, at *2 (N.D. Cal. Dec. 1, 2021) ("[T]he Court won't require Google to start saving petabytes of data per day, indefinitely, without a more compelling showing of need."); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 372 (S.D.N.Y. 2006) ("[A] blanket preservation order may be prohibitively expensive and unduly burdensome for parties dependent on computer systems in their day-to-day operations.") (quoting *Manual for Complex Litigation*, *Fourth* § 11.442 at 73 (2004)). The State's Motion makes no effort to show that such an immense burden is justified in this case.

With respect to the final factor, Meta's extensive preservation efforts to date, *see supra* Part III.B, show that it is quite capable of meeting its obligations. Meta receives hundreds of thousands of account preservation requests each year from law enforcement entities alone. *Supra* Part II. Meta therefore has well-established processes for preserving account data in response to such requests, supplemented in this case by Meta's similarly well-established processes for identifying and preserving data in connection with civil litigation. *Id.* And Meta is represented in this matter by experienced counsel who routinely handle cases involving complex preservation issues. There is no need for Court intervention given these facts.

**IV.     CONCLUSION**

For the forgoing reasons, Meta respectfully requests that the Court deny the State's Motion.

January 4, 2024

                                     Respectfully submitted,

                                     By: */s/ John C. Anderson*
                                         John C. Anderson

Olga M. Serafimova
HOLLAND & HART LLP
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth (Pro Hac Vice)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
nshafroth@cov.com

Timothy C. Hester (Pro Hac Vice)
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC*