IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, EX REL., RAÚL TORREZ, ATTORNEY GENERAL,<br><br>                Plaintiff,<br><br>      - v. -<br><br>META PLATFORMS, INC.; INSTAGRAM, LLC; META PAYMENTS, INC.; META PLATFORMS TECHNOLOGIES, LLC; and MARK ZUCKERBERG,<br><br>                Defendants. | Civ. No. 1:23-cv-01115-MIS-KK |

**DEFENDANTS' OPPOSITION TO PLAINTIFF STATE OF NEW MEXICO'S MOTION TO REMAND**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.   The Court Has Federal Question Jurisdiction Over the Complaint. ........................................ 2

    A.   The State's Complaint Necessarily Raises a Federal Issue. .................................. 4

    B.   The Federal Issue in the Complaint Is Actually Disputed. .................................... 9

    C.   The Federal Issue Is Substantial. ........................................................................ 10

    D.   Permitting a Federal Court to Decide the Boundaries of Federal Law Maintains the Federal-State Balance. ................................................................................. 11

II.  The State's Request for Attorneys' Fees Is Baseless and Should Be Denied. ...................... 13

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Empire Healthchoice Assur., Inc. v. McVeigh*,
  547 U.S. 677 (2006) ......................................................................................................... 7

*Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
  375 F. Supp. 2d 170 (E.D.N.Y. 2005) ............................................................................ 12

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*,
  463 U.S. 1 (1983) ....................................................................................................... 2, 13

*Gilmore v. Weatherford*,
  694 F.3d 1160 (10th Cir. 2012) ............................................................................... passim

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ................................................................................................ passim

*Gully v. First Nat'l Bank*,
  299 U.S. 109 (1936) ......................................................................................................... 9

*Gunn v. Minton*,
  568 U.S. 251 (2013) ....................................................................................... 9, 10, 11, 12

*Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*,
  535 U.S. 826 (2002) ......................................................................................................... 2

*Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*,
  2015 WL 13448017 (S.D. Miss. Apr. 10, 2015) ............................................................ 12

*State ex. rel Jacobson v. Wells Fargo National Bank, N.A.*,
  824 F.3d 308 (2016) ......................................................................................................... 3

*Municipality of San Juan v. Corporacion Para El Fomento Economico de la Ciudad Capital*,
  415 F.3d 145 (1st Cir. 2005) ............................................................................................ 3

*NASDAQ OMX Group, Inc. v. UBS Securities, LLC*,
  770 F.3d 1010 (2d Cir. 2014) ....................................................................................... 3, 5

*New York v. Arm or Ally, LLC*,
  644 F. Supp. 3d 70 (S.D.N.Y. 2022) .............................................................................. 12

*New York v. Int'l Joint Comm'n*,
  559 F. Supp. 3d 146 (W.D.N.Y. 2021) ............................................................................ 4

*Nicodemus v. Union Pacific Corp.*,
   440 F.3d 1227 (10th 2006).................................................................................... *passim*

*In re Pharm. Indus. Ave. Wholesale Price Litig.*,
   457 F. Supp. 2d 77 (D. Mass. 2006) ................................................................................12

*PNC Bank, N.A. v. PPL Elec. Util. Corp.*,
   189 F. App'x 101 (3d Cir. 2006) .......................................................................................3

*Rosenman v. Facebook Inc.*,
   2021 WL 3829549 (N.D. Cal. Aug. 27, 2021) ..................................................................6

*In re: Social Media Adolescent Addition/Personal Injury Prods. Liability Litig.*,
   4:22-md-03047 (N.D. Cal.)..............................................................................................10

*State of Arizona, et al. v. Meta Platforms, Inc., et al.*,
   4:23-cv-5448 (N.D. Cal.), Dkt. No. 1 ..............................................................................10

*STC.UNM v. Quest Diagnostics Inc.*,
   2020 WL 4734899 (D.N.M. Aug. 14, 2020) .....................................................................8

**Statutes**

15 U.S.C. § 6504................................................................................................................ *passim*

28 U.S.C. §1331...........................................................................................................1, 2, 4

47 U.S.C. § 543(d) ..................................................................................................................8

New Mexico Unfair Practices Act ....................................................................................... *passim*

**Other Authorities**

16 C.F.R. §§ 312.1, *et seq.*...................................................................................................10

## INTRODUCTION

This Court has federal jurisdiction over this case pursuant to 28 U.S.C. §1331 because the State's Complaint, on its face, presents a federal question that must be resolved in the State's favor for it to secure the relief it seeks. Paragraph 480 of the Complaint specifically alleges that "Meta's practices in violation of COPPA"—the federal Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501, *et seq.*—"constitute unfair practices under New Mexico law." The State, by its own pleading, is seeking to prove that Meta's[1] practices were "in violation of COPPA," and therefore cannot prevail on this unfair practices claim—and on the monetary relief it seeks for those alleged violations of COPPA—without proving a violation of federal law. Because the State has "framed [its] state-law claim in such a fashion that [it] succeed[s] only if [it is] correct that [Meta] failed to meet federal requirements," this court has federal question jurisdiction. *Gilmore v. Weatherford*, 694 F.3d 1160, 1175 (10th Cir. 2012).

The State thus misses the point with its repeated argument that it advances "only state-law claims" or does not "assert a COPPA claim." While the State has styled its claim as one under the New Mexico Unfair Practices Act ("UPA"), it cannot succeed on that claim without the Court resolving the federal question of whether Meta acted "in violation of COPPA." And the fact that the State alleges *other* UPA claims not premised on violations of federal law does not defeat federal jurisdiction because "[i]f any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims." *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1235 n.8 (10th 2006).

---

[1] "Meta," as used herein, refers collectively to Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC, who are the filing parties of this Opposition brief.

Although the State feigns grievance over Meta's removal of this case, claims brought by States alleging violations of COPPA are subject to ***exclusive*** federal jurisdiction. *See* 15 U.S.C. § 6504(a)(1). Reflecting this point, 34 other State attorneys general that have asserted violations of COPPA by Meta have filed their complaints in federal court. New Mexico is the ***only*** State that has improperly sought to establish COPPA violations in state court.

For these reasons, addressed in more detail below, the State's Motion to Remand should be denied.

## ARGUMENT

**I.     The Court Has Federal Question Jurisdiction Over the Complaint.**

Federal jurisdiction in this case derives from "the common sense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). As the Supreme Court has recognized, even where "state law . . . creates . . . causes of action," a case "might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983).

Here, the State's complaint, on its face, pleads that Meta has engaged in "practices in violation of COPPA"—a federal law—and that this constitutes unfair practices under New Mexico law. Compl. ¶ 480. Accordingly, under the State's own allegations, it cannot prevail on this state law claim unless it proves "practices in violation of COPPA." *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) ("Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded-complaint rule.").

Courts widely recognize that such a state law claim "arises under federal law" because, as here, the "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Nicodemus*, 440 F.3d at 1232 (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994)). In *Nicodemus*, the Tenth Circuit held that a state law claim was subject to federal question jurisdiction because, "[t]o prove that [the defendant] acted unlawfully," the plaintiff—as is true for the State here—had to establish a violation of federal law, and "[t]he federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense." 440 F.3d at 1235. Similarly, in *Gilmore*, the Tenth Circuit held that a state law claim presented a substantial federal question and was subject to federal jurisdiction because "[a]lthough plaintiffs could lose their [state law] conversion claim without the court reaching the federal question, . . . they cannot win unless the court answers that question." 694 F.3d at 1176.

Decisions of other Circuits are to the same effect. For example, in *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014), the court held that a state law claim arose under federal law and established federal jurisdiction because—as the State does here—the plaintiff alleged a violation of a duty "derive[d] directly from federal law." *See also*, *e.g.*, *State ex. rel Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308, 317 (2016) (state law claim was subject to federal jurisdiction where it presented a substantial federal question under federal tax law); *Municipality of San Juan v. Corporacion Para El Fomento Economico de la Ciudad Capital*, 415 F.3d 145, 148 n.6 (1st Cir. 2005) (federal jurisdiction established where state law claim "turn[ed] entirely on" defendant's "adherence to . . . federal regulatory requirements"); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (holding that a state-law declaratory judgment claim "gives rise to federal-question jurisdiction" because it

3

necessarily "raises a substantial federal question—the interpretation" of an Internal Revenue Code provision).[2]

These decisions apply the Supreme Court's four-factor test for federal jurisdiction where, as here, a complaint presents a federal question within a state-law claim. These factors are whether: "[(1)] a state-law claim necessarily raise[s] a stated federal issue" that is "[(2)] actually disputed and [(3)] substantial, [(4)] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. Here, all four factors are present and establish federal jurisdiction pursuant to 28 U.S.C. § 1331.

### A.  The State's Complaint Necessarily Raises a Federal Issue.

"To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim." *Gilmore*, 694 F.3d at 1173 (quoting *Grable*, 545 U.S. at 315). The State is correct that the mere possibility a federal question may arise is insufficient to create federal jurisdiction. *See* Mot. 11. But that doctrinal point has no application here, where the State's UPA claims based on alleged "practices in violation of COPPA," Compl. ¶ 480, are alleged by the State to "constitute separate . . . violations of the UPA" subject to separate and distinct monetary penalties, *id.* at Prayer for Relief ¶¶ 2, 4. These separate

---

[2] The State overlooks this well-established case law when it emphasizes the Complaint's disclaimer that "[n]o federal claims are being asserted," Mot. at 2, that the Complaint "expressly disclaims any cause of action under federal law," Mot. at 3, and that it does not "plead a claim under COPPA," Mot. at 7. A state law cause of action can give rise to federal question jurisdiction even if a complaint does not plead a separate, freestanding federal claim, as the Tenth Circuit has made clear. *See Nicodemus*, 440 F.3d at 1235; *Gilmore*, 694 F.3d at 1176. Further, the State's boilerplate allegations "disclaiming" federal jurisdiction are not controlling where, as here, the State is alleging claims that necessarily require resolution of a federal question. *See New York v. Int'l Joint Comm'n*, 559 F. Supp. 3d 146, 154 (W.D.N.Y. 2021) ("[T]he State cannot now disclaim its express allegations that necessarily raise federal questions.").

alleged violations necessarily depend on proving that Meta violated a duty created by federal law. *See NASDAQ OMX Grp.*, 770 F.3d at 1020 ("we begin by considering the duty underlying each claim," because "[i]t is the violation of a duty that would trigger any" state-law liability).

Here, where the State alleges a UPA claim based on a "violation of COPPA," it necessarily and inherently raises a question of federal law as to **whether in fact COPPA was violated**.  The federal question is thus an essential element of the claim, as the State has pled it, and federal jurisdiction exists under controlling Tenth Circuit precedent.  *See Gilmore*, 694 F.3d at 1176 (plaintiffs "cannot win unless the court answers that [federal] question"); *Nicodemus*, 440 F.3d at 1232 (the "right to relief necessarily depends on resolution of a substantial question of federal law").

The State points to cases holding that a federal question is not presented if federal law standards have been incorporated into state law or if state law parallels comparable federal law standards. Mot. 7-8 & n.2.  But that is not the case here.  Unlike in those cases, the State does not identify any New Mexico law that sets forth the duty that Meta allegedly breached.  Instead, the State alleges that Meta's breach of a purported duty not to "obtain[] data from children under 13-years old" without first "provid[ing] notice and seek[ing] consent from parents" was "in violation of COPPA."  Compl. ¶ 480.  None of the New Mexico statutes referenced in the Complaint establishes this duty[3]—to the contrary, the State specifically and only pleads that Meta's alleged breach of this duty violates COPPA.  *Id*.  The State, by its own allegations, thus bases its claim on an alleged violation of federal law.

---

[3] *See, e.g.*, Compl. ¶ 479 (citing NMSA 1978, §§ 30-52-1 (2008) (prohibiting human trafficking), 30-6A-3(C) (2016) (prohibiting the distribution of CSAM), 30-37-3.2 (2007) (prohibiting "[c]hild solicitation by electronic communication device"), and 30-37-3.2 (2007) (prohibiting "soliciting a child under sixteen years of age, by means of an electronic communication device, to engage in sexual intercourse, sexual contact or in a sexual or obscene performance")).

5

Therefore, this is not a case like *New Mexico, ex rel. Balderas v. Preferred Care, Inc.*, where it was "not necessary to resolve any disputed issue of federal law" because New Mexico's claims could be resolved based on state "statutes and regulations governing the standard of care [applicable to the case] that generally parallel federal law." 158 F. Supp. 3d 1226, 1230–31 (D.N.M. 2015). Here, the State's UPA claim is based on the allegation that Meta engaged in practices in "violation of COPPA," which necessarily requires determining whether Meta violated that federal statute. Thus, the State's right to relief—as it has pled the UPA claim—"necessarily depends on resolution of a substantial question of federal law." *Nicodemus*, 440 F.3d at 1232; *see also Rosenman v. Facebook Inc.*, 2021 WL 3829549 (N.D. Cal. Aug. 27, 2021) (California claim for "unfair" practices necessarily raised a federal question where plaintiff did "not allege in her Complaint that Facebook's conduct violated California-specific constitutional, statutory, or regulatory provisions").

The State is also incorrect when it argues that its "claims do not require proof of a federal law violation and instead can be proven through other means." Mot. at 10. While the State notes (Mot. 8–9) that it alleges other "unfair or deceptive" or "unconscionable" practices, in addition to its claim based on "practices in violation of COPPA," and points to the general principle that "[w]here a claim is supported by alternative theories, federal courts do not have jurisdiction unless federal law is essential to each theory," Mot. 9 (quoting *Tichenor v. N.M. Title Loans, Inc.*, No. 15-cv-810, 2016 WL 10538830, at *5 (D.N.M. May 2, 2016)), that is not what the Complaint alleges here and that is not the relief the Complaint seeks. The State's Complaint—on its face— is not seeking to prove a single UPA violation by "alternative theories." To the contrary, the Complaint specifically seeks a declaration that "***each act***, statement and/or omission of Defendants described in this Complaint constitute[s] [a] ***separate*** and willful violation[] of the UPA." Compl.

Prayer for Relief ¶ 2 (emphases added). The Complaint further seeks to impose "civil penalties on each Defendant of up to $5,000 for **each violation** of the UPA." *Id.* Prayer for Relief ¶ 4 (emphasis added); *see also id.* ¶¶ 468, 491, 504. Because the State cannot obtain its requested relief for "each violation" based on "each act" it alleges without proving that Meta's practices were "in violation of COPPA," its Complaint inherently and necessarily presents a federal question. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (federal question jurisdiction exists where "the plaintiff's **right to relief** necessarily depends on resolution of a substantial question of federal law") (quoting *Franchise Tax Bd.*, 463 U.S. at 27–28) (emphasis added).

This conclusion is not altered by the fact that the State organized its Complaint by grouping multiple alleged unfair practices within a single count of the Complaint, as *Broder v. Cablevision Sys. Corp.* demonstrates. 418 F.3d 187 (2d Cir. 2005). There, while the court acknowledged that a federal issue is not "necessarily raised" when it "is present as only one of multiple theories that could support a particular claim," it noted that "what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim,'" and that regardless of how the counts are pled, if "at least one federal aspect of [Plaintiff's] complaint is a logically separate claim," then a federal issue is necessarily raised. *Id.* at 194. In *Broder*, "[w]hat [was] styled as a single breach-of-contract claim actually ha[d] two distinct parts," one of which depended on a violation of federal law that had allegedly been incorporated by reference into the contract. *Id.* Because the state law claim raising only questions of state law was "logically separable from the contract claim that relie[d] on" the federal statute, the court held that the pure state-law claim should be "put . . . aside, as if it had been pleaded as a separate count." *Id.* at 195. The court held that the "logically

7

separable" contract claim based on the federal statute "necessarily raise[d]" a federal issue and established federal jurisdiction. *Id.* at 195.

For the same reason, the State's claim based on "practices in violation of COPPA," Compl. ¶ 480, is a distinct claim for relief that "necessarily raise[s]" a federal issue and establishes federal jurisdiction, regardless of the fact that the State has styled its "Count II" to include alongside that claim other alleged violations of the UPA. The State's COPPA-based UPA claim is "logically separable" from the State's other claims of unfair practices because the State alleges that "each" "separate" UPA violation entitles it to separate monetary relief, *id*. Prayer for Relief ¶¶ 2, 4. *See STC.UNM v. Quest Diagnostics Inc.*, 2020 WL 4734899, at *5 (D.N.M. Aug. 14, 2020) (where a single "Count" for breach of contract "alleges separate breaches, **each with a different request for relief**," those alleged breaches "are separate claims" for purposes of evaluating federal question jurisdiction) (citing *Broder*) (emphasis added).

In other words, the State cannot "obtain the relief [it] seeks" for the alleged practices in violation of COPPA "without prevailing on" the federal question of whether Meta violated COPPA. *See Broder*, 418 F.3d at 195. This is true regardless of whether the State can separately prevail on **other** UPA claims that do not involve any alleged COPPA violations. The alleged "practices in violation of COPPA" are therefore standalone "claims" for purposes of evaluating whether the Complaint necessarily raises a substantial federal question. *See Broder*, 418 F.3d at 195 ("The claims that invoke 47 U.S.C. § 543(d) are thus separate claims for *Grable* purposes, and . . . [t]he first part of the test is clearly met: the claims 'necessarily raise [the] stated federal issue' of whether Cablevision violated 47 U.S.C. § 543(d) as alleged."); *STC.UNM*, 2020 WL 4734899, at *5 (for purposes of federal question jurisdiction, a "distinct claim" is one where a plaintiff cannot "obtain the relief he seeks without prevailing on it") (quoting *Broder*, 418 F.3d at 195).

8

In short, because the State's Complaint alleges that "each" act is a "separate" violation of the UPA that entitles it to separate monetary relief for "each violation," Compl. Prayer for Relief ¶¶ 2, 4, the State has pled claims based on alleged "practices in violation of COPPA" where the federal "disputes . . . are necessary," not "merely possible."  *Gully v. First Nat'l Bank*, 299 U.S. 109, 118 (1936).

**B.     The Federal Issue in the Complaint Is Actually Disputed.**

The federal issue at the heart of the State's claims against Meta is "actually disputed," because the parties disagree whether Meta's practices were "in violation of COPPA," as the State alleges.  Compl. ¶ 480.  The scope of Meta's obligations under COPPA, and whether those obligations were violated, are thus the "central points of dispute"[4] raised by the State's claim that Meta engaged in unfair practices through violations of COPPA.  *See, e.g.*, Compl. ¶ 336 (citing federal FTC regulations governing COPPA—specifically, the FTC's COPPA Rule, 16 C.F.R. §§ 312.1, *et seq.*—in support of its allegation that "Meta's platforms lack sufficient parental controls and notifications").  As the Tenth Circuit reasoned in *Nicodemus*, a "federal question is actually disputed" where it is "the only legal or factual issue contested." 440 F.3d at 1236.  Here, whether Meta in fact violated COPPA is the "only legal or factual issue contested" in the State's claim that Meta engaged in unfair practices under the UPA by acting "in violation of COPPA."[5]

---

[4] *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

[5] The State is wrong to suggest that a federal issue is only "disputed" under *Grable* where there is a dispute "about the meaning or construction" of a federal law. Mot. at 11.  To the contrary, the Supreme Court has explained that a federal issue was "actually disputed" where, for example, it required "application of [federal] patent law to the facts of [the] case." *Gunn*, 568 U.S. at 259.

9

### C. The Federal Issue Is Substantial.

The federal issues raised by the State's Complaint are substantial, not just to "the particular parties in the immediate suit," but also "to the federal system as a whole." *Gunn*, 568 U.S. at 260. In particular, the State's COPPA claims turn on whether Meta met federal obligations imposed by COPPA and accompanying FTC regulations. These questions present critical issues in the ongoing federal multidistrict social media litigation, in which 34 other states have brought essentially identical COPPA-based claims against Meta. *See In re: Social Media Adolescent Addition/Personal Injury Prods. Liability Litig.*, 4:22-md-03047 (N.D. Cal.) ("*Soc. Media Litig.*").[6] As reflected by this wave of COPPA-based claims, the federal issue in this case is substantial.

In particular, COPPA and its implementing regulations govern, *inter alia*, the data collection by online service providers from individuals under the age of 13. *See* 15 U.S.C. §§ 6501, *et seq.*; 16 C.F.R. §§ 312.1, *et seq.* (establishing the duty of online service providers to provide notice and seek consent from parents before collecting or using personal information from children under the age of 13). These laws and associated regulations form an integrated and complex federal scheme that presents a substantial federal question. *See, e.g.*, *Broder*, 418 F.3d at 195 (holding that a federal question was substantial under *Grable* when it "involve[d] aspects of the complex federal regulatory scheme applicable to cable television rates").

Moreover, the Tenth Circuit has held that an issue is "substantial" under the *Grable* analysis when "a decision on that [federal] question would apply to a fair number of disputes." *Gilmore*, 694 F.3d at 1174 (noting the disputed issue had "generated a not insignificant number of

---

[6] *Compare* Compl. ¶¶ 336, 480 *with State of Arizona, et al. v. Meta Platforms, Inc., et al.*, 4:23-cv-5448 (N.D. Cal.), Dkt. No. 1 ¶¶ 851-59.

10

federal court cases"). That observation undoubtedly applies here. The federal questions at the heart of the State's COPPA claims against Meta are a primary common element among the pending lawsuits brought by 34 other state attorneys general that are consolidated in the MDL before Judge Gonzalez Rogers in the Northern District of California. The consistent resolution of these claims is vital to the federal system. Permitting the State to seek separate—and quite possibly divergent—pronouncements on Meta's federal COPPA obligations in state court would significantly undermine the rationale behind federal question jurisdiction, particularly because federal courts have ***exclusive jurisdiction*** over allegations of COPPA violations, 15 U.S.C. § 6504(a)(1). This Court should reject the State's attempt to litigate this substantial federal question in state court.

The Tenth Circuit has made clear that a federal question is "substantial" under the *Grable* standard when "plaintiffs have framed their state-law claim in such a fashion that they succeed only if they are correct that the defendants failed to meet federal requirements." *Gilmore*, 694 F.3d at 1175. That reasoning fully applies here—because the State can prevail on its unfair practices claim based on alleged COPPA violations "only if [it is] correct that [Meta] failed to meet federal requirements" under COPPA. Nor does the presence of other state law allegations disturb this conclusion of substantiality: a federal question is "substantial"—thereby supporting federal jurisdiction—whether or not it outnumbers state law allegations that do not present a federal question. *See Nicodemus*, 440 F.3d at 1235 n.8 ("***If any one claim*** within Plaintiffs' complaint supports federal question jurisdiction, a ***federal court may assert jurisdiction over all the claims***, including any alleged state-law claims.") (emphases added).

### D. Permitting a Federal Court to Decide the Boundaries of Federal Law Maintains the Federal-State Balance.

The final factor of the *Grable* test considers whether this case may be heard in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. That

11

prong of *Grable* is plainly satisfied here because Congress vested the federal courts with ***exclusive jurisdiction*** over claims brought by States seeking to enforce COPPA.  *See* 15 U.S.C. § 6504(a)(1) ("[T]he State, as parens patriae, may bring a civil action on behalf of the residents of the State ***in a district court of the United States*** of appropriate jurisdiction." (emphasis added)).  Permitting the State to litigate its claims of "violation[s] of COPPA" in New Mexico state court would thus directly contravene "the federal-state balance approved by Congress" that *Gunn* sought to protect. *See* 568 U.S. at 258.  Reflecting this point, 34 other States that have sued Meta alleging COPPA violations have brought their claims in federal court.  Only New Mexico has asserted COPPA violations in a complaint filed in state court.

Contrary to the State's argument, there is no "sovereign dignity" requiring remand merely because "the State seeks to protect its own citizens" through "an enforcement suit by a state attorney general."  Mot. at 12 (internal quotations omitted).  At the threshold, that argument is foreclosed by the fact that federal courts have exclusive jurisdiction over claims asserted by states seeking to enforce COPPA.  *See* 15 U.S.C. § 6504(a)(1).  More broadly, where a state asserts state-law claims that require resolution of a federal question, its complaint may be removed like any other.  *See, e.g.*, *In re Pharm. Indus. Ave. Wholesale Price Litig.*, 457 F. Supp. 2d 77 (D. Mass. 2006) (denying remand of complaint brought by State of Arizona); *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 83 (S.D.N.Y. 2022) (denying remand under *Grable* of complaint brought by State of New York); *Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*, 2015 WL 13448017, at *6 (S.D. Miss. Apr. 10, 2015) (similar); *Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 375 F. Supp. 2d 170, 172–73 (E.D.N.Y. 2005) (similar).

The cases cited by the State are not to the contrary.  In *Preferred Care*, the court was specifically concerned that removal would upset the system of "cooperative federalism"

envisioned by the Medicaid program, because there was no federal cause of action to enforce the claims at issue. 158 F. Supp. 3d at 1232. In direct contrast, actions brought by state attorneys general to enforce the provisions of COPPA are subject to exclusive federal jurisdiction. *See* 15 U.S.C. § 6504(a)(1). Likewise, the Supreme Court's observation in *Franchise Tax Board* that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it," 463 U.S. at 22 n.22, has no bearing here where there *is* a "clear rule" providing for exclusive federal jurisdiction over claims seeking relief for practices "in violation of COPPA."

\*    \*    \*

In short, this case was properly removed to federal district court because it presents a substantial federal question. That federal question is necessarily raised, actually disputed, and substantial, and litigating it in federal court will not disrupt the federal-state balance. *See Gilmore*, 694 F.3d at 1175-76; *Nicodemus*, 440 F.3d at 1234-36. Accordingly, the State's Motion should be denied.

**II.     The State's Request for Attorneys' Fees Is Baseless and Should Be Denied.**

The Court should summarily deny the State's request for attorneys' fees, which the State bases on the speculative and inflammatory accusation that Meta's removal "is designed not to succeed, but to delay." *Id.* at 13. Meta's removal of this case is based squarely on the State's own allegations and is directly supported by controlling Tenth Circuit and Supreme Court case law, as discussed above. The State's accusations of delay or improper motivations are unfounded.[7]

---

[7] The State tries to make something of the fact that Meta has asked for six weeks to review the Complaint's proposed redactions, whereas it has asked other states for two to four weeks for a similar review, *see* Mot. 14—while ignoring that Meta's review of the State's complaint coincides with the holidays.

Also unfounded is the State's conspiratorial theory that Meta removed this case, and not those of "a half-dozen state attorneys general," because New Mexico's complaint includes "detailed allegations" regarding "child sexual exploitation and trafficking" over which Meta supposedly wants to delay adjudication. Mot. at 13-14. The State ignores the far more obvious explanation that Meta did not remove those other cases because—unlike the State's Complaint here—they do not allege claims based on purported violations of COPPA. To the extent this case has been "singled out," Mot. at 14, it is because New Mexico is the only State that has asserted violations of COPPA in a complaint filed in state court.[8] The 34 other attorneys general that have alleged violations of COPPA by Meta filed their cases in federal court, consistent with the principles discussed above that claimed violations of COPPA are subject to exclusive federal jurisdiction. Only New Mexico seeks to have it both ways, bringing allegations of COPPA violations that it nominally couches in state-law terms in order to forum-shop a substantial issue of federal law into state court.

## CONCLUSION

For the foregoing reasons, the Court should deny the State's Motion to Remand.

Respectfully submitted,

By: */s/ John C. Anderson*
John C. Anderson
Olga M. Serafimova
HOLLAND & HART LLP
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 988-4421

---

[8] The State notes that Massachusetts included in its complaint an allegation that Meta "'knows its lax registration and age-gating efforts enable' 'hundreds of thousands of Under-13 users' to access Instagram," Mot. 13, but neither Massachusetts nor any of the other states that filed a case in state court alleged that Meta committed a tort *because it violated COPPA*, as the State alleges here.

jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth (*Pro Hac Vice* Forthcoming)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
nshafroth@cov.com

Timothy C. Hester (*Pro Hac Vice* Forthcoming)
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
thester@cov.com

*Attorneys for Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on January 4, 2024, a copy of the foregoing was filed through the court's CM/ECF system, causing it to be served by electronic mail upon the following:

James W. Grayson
Chief Deputy Attorney General
Raul Torrez, Attorney General of New Mexico
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Phone: (505) 218-0850
Email: jgrayson@nmag.gov

Serena R. Wheaton
Assistant Attorney General
New Mexico Attorney General's Office
Consumer & Environmental Protection Division
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Phone: (505) 490-4846
Email: swheaton@nmag.gov

Linda Singer
David I. Ackerman
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Email: lsinger@motleyrice.com
Email: dackerman@motleyrice.com

                                               */s/ John C. Anderson*
                                               John C. Anderson