IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| STATE OF NEW MEXICO, EX REL. RAÚL TORREZ, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>- v. -<br><br>META PLATFORMS, INC.; INSTAGRAM, LLC; META PAYMENTS, INC.; META PLATFORMS TECHNOLOGIES, LLC; and MARK ZUCKERBERG,<br><br>Defendants. | **PLAINTIFF STATE OF NEW MEXICO'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Civil Action No. 1:23-cv-01115-MIS-KK<br><br>*Removed from First Judicial District Court, County of Santa Fe, New Mexico, Case No. D-101-CV-2023-02838* |

**PLAINTIFF STATE OF NEW MEXICO'S
REPLY IN SUPPORT OF MOTION TO REMAND**

Plaintiff State of New Mexico's ("State" or "New Mexico") state-law enforcement action belongs in state court. There is no federal question jurisdiction over the State's claims. Meta's arguments to the contrary mischaracterize both the State's factual allegations and the law—and ultimately fail, for the reasons explained herein.

**I.     There is No Federal Question Jurisdiction Over the State's Action.**

In its Opposition, Meta all but abandons one of its original bases for removal, that the State's claims facially arise under federal law. *See* Notice of Removal, Dkt. 1, at 3–7.[1] Instead, Meta focuses on the *Grable* substantial question jurisdiction—that "exceedingly narrow" and

---

[1] Likewise, Meta's Opposition does not defend its original claim that Complaint Paragraphs 462.j, 43, and 255—two of which do not mention COPPA at all and the third of which merely quotes a Meta employee's own words—could somehow sustain federal question jurisdiction. *See* Notice of Removal, Dkt. 1, at ¶ 4–5; Mot. to Remand, Dkt. 9, at 5–6.

1

"relatively arcane" branch of federal question jurisdiction that applies only to a "special and small category of cases." *Tichenor v. N.M. Title Loans*, No. 15-CV-801, 2016 WL 10538830, at *3 (D.N.M. May 2, 2016) (quoting *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012)). Meta's Opposition—which mostly parrots arguments from its removal notice that the State already fully addressed in the Motion to Remand—does not succeed at shoehorning this action into that "exceedingly narrow" category.

### A. The State's Complaint Does Not "Necessarily Raise" a Federal Issue.

Meta does not dispute that "a federal question is not presented if federal law standards have been incorporated into state law or if state law parallels comparable federal law standards." Oppn. at 5. Meta should have simply stopped there and styled its filing as a withdrawal of its notice of removal. New Mexico law proscribes unfair and deceptive trade practices, NMSA 1978, § 57-12-3 (1971), and the New Mexico Legislature directed that the meaning of this provision be "guided by the interpretations given by the federal trade commission and the federal courts." NMSA 1978, § 57-12-4 (1967). This includes the Federal Trade Commission's regulation of unfair or deceptive practices in enforcing COPPA. *See* 16 C.F.R. § 312.3. New Mexico courts routinely refer to federal interpretations of federal laws analogous to or parallel with state law. *See, e.g., Garcia v. Hatch Valley Pub. Sch.*, 458 P.3d 378, 384 (N.M. 2018) (interpreting the New Mexico Human Rights Act). But New Mexico courts do so on the understanding "that interpretations of federal law are merely persuasive and that [New Mexico courts] analyze [state law claims] based upon the [state] statute and [New Mexico courts'] interpretation of the [New Mexico] Legislature's intent." *Id.* New Mexico courts are not bound in their interpretation of state law by federal interpretations of analogous federal provisions. A New Mexico court could rely on the FTC's interpretation of unfair

2

or deceptive practices under federal law to find that a particular business practice violates state law, or a New Mexico court could determine that federal law is inconsistent with the intent of the New Mexico Legislature. In either event, a New Mexico court would be applying state law, not federal law.

Try as Meta might, it has not succeeded at inventing a federal issue raised by the State's Complaint. Meta's Opposition misleadingly quotes a phrase from the Complaint ("practices in violation of COPPA") *nine times*, each time conveniently omitting the surrounding text, which shows that this phrase falls in the middle of a *disclaimer of federal COPPA claims* and, more broadly, in a paragraph that alleges only that Meta's practices (which also happen to violate COPPA) are contrary to public policy and thus violate the UPA:

> Meta has obtained data from children under 13-years-old *in violation of public policy* . . . . This constitutes an *unfair practice under the UPA* because the protection of children under the age of 13 from online abuse and the collection of their personal information is a *well-established objective underlying public policy nationally and in New Mexico*. To avoid any doubt, the State does not assert a claim pursuant to its authority to enforce the Children's Online Privacy Protection Act ("COPPA"), but asserts instead that Meta's practices in violation of COPPA constitute unfair practices under New Mexico law.

Compl. ¶ 480 (emphasis added).

The State asserted a violation of state law. In determining whether Meta violated state law, a court should defer to the New Mexico Legislature's express directive that the FTC's regulations are a "guide" to interpreting New Mexico law under Section 57-12-4, but federal law is merely a guide. Ultimately, the question presented by the State's Complaint is whether Meta violated Section 57-12-3 of the UPA, that is, whether Meta engaged in unfair or deceptive trade practices as defined by New Mexico law. A court would not need to find a violation of COPPA in order to

find that Meta's alleged conduct in Paragraph 480 of the Complaint violates New Mexico's proscription of unfair or deceptive trade practices.

Meta cites a string of cases in which courts found federal court jurisdiction because plaintiffs alleged duties found in federal law. But each of these cases is inapposite because in each, the duty was found ***only*** in federal law and had not been imported by the state into its own law, thereby imposing a separate state-law obligation. *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 779 F.3d 1010, 1021 (2d Cir. 2014) (duty only found in federal securities law); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317 (2d Cir. 2016) (federal tax law question); *PNC Bank, N.A. v. PPL Elec. Utilities Corp.*, 189 Fed. App'x 101, 104 n.3 (3d Cir. 2006) (federal tax law question). Moreover, one of Meta's cited cases has since been abrogated on the exact doctrinal point for which Meta cites it—a fact Meta failed to disclose to the Court. *Mun. of San Juan v. Corp. Para El Fomento Economico de la Ciudad Capital (COFECC)*, 415 F.3d 145, (1st Cir. 2005), *abrogated by Mun. of Mayaguez v. Corp. Para el Desarollo del Oeste, Inc.*, 726 F.3d 8, 17 (1st Cir. 2013) ("we abrogate the jurisdictional holding in *COFECC*" "in light of the Supreme Court's intervening opinions" in *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006) and *Gunn v. Minton*, 568 U.S. 261 (2013)).

This is where Meta runs into a *Preferred Care* problem: there is "clear precedent" that substantial question jurisdiction cannot be "predicated solely on an imported federal standard of care." *New Mexico, ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1231–33

(D.N.M. 2015). This "clear precedent" is fatal to Meta's argument, and Meta does not point to any cases to the contrary.[2]

Instead, Meta makes the circular argument that "the State does not identify any New Mexico law that sets forth the duty that Meta allegedly breached." Oppn. at 5. Meta seems to think that a UPA violation must be predicated on a violation of another statute. This is false. A UPA violation can be predicated on conduct defined in the UPA as unfair, deceptive, or unconscionable and conduct that contravenes public policy, for which federal law may serve as a "guide." *See State of New Mexico ex rel. King v. B & B Invest. Grp., Inc.*, 329 P.3d 658, 672 (N.M. 2014) ("Courts are not prohibited from deciding whether a contract is grossly unreasonable or against public policy simply because there is not a statute that specifically limits contract terms"); *see also Daye v. Comm'y Fin. Loan Serv. Ctrs., LLC*, 280 F. Supp. 3d 1222, 1246 (D.N.M. 2017) (contract can be substantively unconscionable under UPA "if it is illegal, or if it is grossly unreasonable and against our public policy under the circumstances, even if there is not a statute that specifically limits such contract terms" (cleaned up)). That is exactly what the State alleged when it referenced

---

[2] For this reason, Meta's strained argument that the Complaint necessarily raises a substantial federal question because it "seeks a declaration that 'each act, statement and/or omission of Defendants . . . constitutes a separate and willful violation of the UPA'" also fails. Even the "act" of Meta obtaining data from children without parental notice or consent is independently a violation of New Mexico public policy and is not solely a violation of federal law—which renders *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) and *STC.UNM v. Quest Diagnostics Inc.*, No. 20-197, 2020 WL 4734899 (D.N.M. 2020) inapposite, since both involved claims that relied solely on a federal standard. Further, this argument is inconsistent with *Grable*'s core requirement that the federal question be both necessary and disputed; New Mexico can prevail on its claims without ever reaching a COPPA question. The State seeks a penalty for "each" violation of state law as provided by state statute, NMSA 1978, § 57-12-11 (1970). The State advances no federal claim and requests no penalty for any violation of federal law.

5

COPPA. Compl. ¶ 480 ("Meta has obtained data from children under 13-years-old in violation of public policy . . . . This constitutes an unfair practice under the UPA."). Thus, the State need not prove a violation of COPPA to prove any of its alleged UPA violations, as Meta claims. *See King*, 329 P.3d at 672; *Daye*, 280 F. Supp. 3d at 1246.

### B. The Complaint Raises No "Actually Disputed" Federal Issue.

As Meta itself agrees, a "federal question is actually disputed" where it is "the only legal or factual issue contested" in the State's claim. Oppn. at 9 (quoting *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236 (10th Cir. 2006)). Meta claims that COPPA interpretation is a "central point[] of dispute." *Id.* at 9. But its claim is belied by its own conduct in this litigation. Meta filed a Motion to Dismiss, Dkt. 19, on December 27, 2023. In that motion, Meta spends roughly seven pages arguing that the State's UPA claims fail as a matter of law (along with other arguments relating to public nuisance and other defenses). It argues that the UPA does not apply to Meta's provision of a free service, *id.* at 28–30, that the State alleges no actionable misrepresentations, *id.* at 30–35, and that the State alleges no material omissions, *id.* at 35. But **nowhere in its motion does Meta mention COPPA** or raise any issue of COPPA interpretation that is disputed in this action, let alone a core dispute. Indeed, Meta's state-law UPA arguments in its motion confirm that, even if there were a federal law issue raised by the State's action, it would not be "the only legal or factual issue contested"—thus showing that the purported federal issue of COPPA interpretation is not "actually disputed" within the meaning of *Grable*.

Meta also misstates the holding in *Gunn v. Minton*, 568 U.S. 261 (2013). Meta claims that *Gunn* held a federal issue was "actually disputed" because it required "application of [federal] patent law to the facts of [the] case." Oppn. at 9 n.5 (quoting *Gunn*, 568 U.S. at 259). But the fact

6

that the case required the application of federal law to the facts was only sufficient to establish the first *Grable* prong—that a federal issue was necessarily raised at all—not the second (an "actually disputed" issue).[3] *Gunn*, 568 U.S. at 259. Indeed, the Supreme Court only concluded that the federal issue was "actually disputed" because it was "the central point of the dispute"—unlike here, where the State does not rely on interpreting COPPA for any claim, where the State can prevail without reliance on COPPA, and where Meta has failed to identify any actual dispute regarding the interpretation of COPPA.

### C.  The Complaint Raises No "Substantial" Federal Issue.

That an action might touch tangentially on federal law is far from sufficient for the *Grable* standard. Instead, the federal-law issue must be, in Meta's own words, substantial "not just to 'the particular parties in the immediate suit,' but also 'to the federal system as a whole.'" Oppn. at 10 (citing *Gunn*, 568 U.S. at 260.). Meta's Opposition does not demonstrate that any federal issue in the State's action meets that bar.

Meta relies on *Broder*, 418 F. 3d at 198, which asked a court to weigh in on a "complex federal regulatory scheme." But even if it were true that COPPA established a federal regulatory scheme as "complex" as that applicable to cable television rates, the State's action does not touch on that regulatory scheme. It only asks a court to decide whether Meta's conduct in collecting data from children under 13 years old is an unfair practice under New Mexico's Unfair Practices Act. A New Mexico state court can make that determination without any reference to federal law or a

---

[3] In fact, the State cited two cases holding that a run-of-the-mill application of federal law to fact did not rise to the level of federal question jurisdiction. Mot. at 11 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) and *Gonzales v. Ever-Ready Oil, Inc.*, 636 F. Supp. 2d 1187, 1193 (D.N.M. 2008)). Meta did not distinguish those cases or cite any contradicting authority.

7

federal regulatory scheme. Indeed, the practice could be unfair whether or not it violates federal regulations. And for the same reason, "a decision on that question would" ***not*** "apply to a fair number of disputes." Oppn. at 10 (quoting *Gilmore*, 694 F.3d at 1174). It will bear only on the interpretation of New Mexico's UPA, and thus it is not a "substantial" federal-law question.

Nor is it true that the State "seek[s] separate—and possibly divergent—pronouncements on Meta's federal COPPA obligations in state court," Oppn. at 11, because *the State does not seek "pronouncements on Meta's federal COPPA obligations" at all*. Instead, the State has asked a New Mexico state court to adjudicate Meta's liability based on its *obligations under state law*. That these obligations are based on federal law is both belied by the plain language of the Complaint and, in any event, does not confer federal question jurisdiction because New Mexico has multiple non-federal bases of liability and, moreover, has imported the federal-law standard into state law. *See supra*, section I.A.

Finally, it is simply false that the state attorneys general who filed a complaint in the Social Media MDL asserted "essentially identical COPPA-based claims against Meta" to those asserted by New Mexico. Oppn. at 10. The difference between the two complaints is stark: the Complaint filed by state attorneys general in the MDL spends 35 pages alleging Meta's COPPA noncompliance and every requisite element thereof—a far cry from the two ***mentions*** of COPPA in the State's Complaint as a source of violating state law on which Meta relies in its Opposition. Compl., *State of Arizona, et al. v. Meta Platforms, Inc., et al.*, 4:23-cv-5448, at 106–143 (N.D. Cal. Oct. 24, 2023), Dkt. 1. Most crucially, the MDL Attorney General Complaint *asserts a federal cause of action under COPPA*, *id.* ¶ 851–59, while New Mexico's Complaint does not. Meta's reference to the MDL Attorney General Complaint only further demonstrates the clear distinction

between a complaint that alleges a claim arising under federal law and the complaint filed by New Mexico.

### D. A Federal Court Hearing a State Enforcement Action with Exclusively State-Law Claims Would Disrupt the Federal-State Balance.

Meta also fails to show that this case could be heard in federal court "without disrupting the federal-state balance approved by Congress," as *Grable* requires. *See Gunn*, 568 U.S. at 258. Meta repeatedly recites that "federal courts have exclusive jurisdiction over claims asserted by states seeking to enforce COPPA", *see, e.g.*, Oppn. at 12—while ignoring the fact that New Mexico is not "seeking to enforce COPPA." Compl. ¶ 20 ("No federal claims are being asserted, and . . . such claim[s] [are] expressly disavowed and disclaimed"); ¶ 480 ("[T]he State does not assert a claim pursuant to its authority to enforce [COPPA]"). When a New Mexico state court or jury decides whether Meta's conduct violates *New Mexico* public policy or constitutes an unfair or deceptive practice under *New Mexico* law, it will not impact the body of federal COPPA law at all.

That some cases exist where a court held that a state's state-law claims still required resolution of a substantial federal question, *see* Oppn. at 12, misses the point, because in each of Meta's cited cases, there were strong countervailing federal interests. *See In re Pharm Ind'y Avg. Wholesale Price Litig.*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) ("strong national interest" in ensuring integrity of federal Medicare program); *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 83 (S.D.N.Y. 2022) ("acute interest in proper interpretation of" federal firearm laws); *Mississippi ex rel. Hood v. Entergy Miss., Inc.*, 2015 WL 13448017, at \*6 (S.D. Miss. Apr. 10, 2015) ("important national interest" in interpretation of federal energy regulations); *Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 375 F. Supp. 2d 170, 172–73 (E.D.N.Y. 2005) ("substantial federal funding provisions involved" and "allegations about the

violation of federal law through improper off-label use" made the case "federally oriented"). There can be no strong federal interest in this case which, as explained above and in the State's Motion to Remand, asserts only state law claims, does not hinge on federal law, and does not impact the interpretation thereof.

On the contrary, principles of federal-state comity mandate that this action be heard in New Mexico state court. *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169 (4th Cir. 2011)—which the State cited in its opening Motion and to which Meta failed to respond—is instructional. Where the "West Virginia Attorney General initially filed this action in a West Virginia state court to enforce, on behalf of West Virginia and its citizens, state consumer protection laws applicable only in West Virginia," to hear the case in federal court would have "trampl[ed] on the sovereign dignity of the State." *Id.* at 178. Equally true here, the defendants in *McGraw* "rationalized such a transformation on the basis that the Attorney General somehow mispleaded his case, disguising what would otherwise be a [federal] action." *Id.* The Fourth Circuit, however, "accept[ed] the Attorney General's good faith in pleading his claims" and rejected defendants' bid for federal jurisdiction. *Id.* The Court should do the same here.

## II.   Meta's Removal is Frivolous.

Meta's Opposition to New Mexico's Motion to Remand underscores the lack of any legitimate basis for its removal. In fact, Meta's misstatements to this Court (e.g., that the Complaint is "identical" to that filed by other attorneys general in the MDL and Meta's reliance on a case that was abrogated) warrant appropriate sanctions. Meta also has shown, its denials to the contrary notwithstanding, that its true purpose in removing this action was to delay the State's action and deprive it of a forum to raise and resolve disputes. Meta has for more than four weeks, despite

repeated requests by New Mexico, refused to even meet and confer with New Mexico regarding redacted allegations based on Meta's own internal documents. Even though Meta has agreed to disclose similar information in other complaints, Meta has clearly resolved to put off for as long as possible disclosure of its decisions and knowledge regarding child sexual exploitation content and predators operating on its platforms. These dilatory litigation tactics should not be allowed.

## CONCLUSION

For the foregoing reasons, the State requests that this Court remand this action to the First Judicial District Court, Santa Fe, New Mexico, and for such other relief the Court deems warranted.

RESPECTFULLY SUBMITTED this 8th day of January, 2024.

>RAÚL TORREZ
>**ATTORNEY GENERAL OF NEW MEXICO**
>
>By counsel,
>
>*/s/ Linda Singer*
>**LINDA SINGER** *(Pro Hac Vice)*
>**DAVID I. ACKERMAN** *(Pro Hac Vice)*
>**MOTLEY RICE LLC**
>401 9th St. N.W., Suite 630
>Washington, D.C. 20004
>Phone: (202) 232-5504
>Email: lsinger@motleyrice.com
>Email: dackerman@motleyrice.com
>
>**JAMES W. GRAYSON**
>**CHIEF DEPUTY ATTORNEY GENERAL**
>New Mexico Attorney General's Office
>P.O. Drawer 1508
>Santa Fe, NM 87504-1508
>Phone: (505) 218-0850
>Email: jgrayson@nmag.gov

**SERENA R. WHEATON**
**ASSISTANT ATTORNEY GENERAL**
New Mexico Attorney General's Office
Consumer & Environmental Protection Division
201 Third St. N.W., Suite 300
Albuquerque, NM 87102
Phone: (505) 490-4846
Email: swheaton@nmag.gov

**CERTIFICATE OF SERVICE**

I certify that on January 8, 2024, I filed the foregoing electronically with the Clerk of Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John C. Anderson
Olga M. Serafimova
Holland & Hart LLP
110 North Guadalupe, Suite 1
Santa Fe, NM 87501
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth
Covington & Burling LLP
Salesforth Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
nshafroth@cov.com

Timothy C. Hester
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20002-4956
thester@cov.com

             */s/ Linda Singer*
             Linda Singer