**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| STATE OF NEW MEXICO, EX REL., RAÚL TORREZ, ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>- v. -<br><br>META PLATFORMS, INC.; INSTAGRAM, LLC; META PAYMENTS, INC.; META PLATFORMS TECHNOLOGIES, LLC; and MARK ZUCKERBERG,<br><br>Defendants. | Civ. No. 1:23-01115 MIS-KK |

## MARK ZUCKERBERG'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLAIMS AGAINST MR. ZUCKERBERG

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 5

LEGAL STANDARD............................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

I.      The State Fails to Plead Facts Sufficient to Establish Personal Jurisdiction Over
Mr. Zuckerberg ............................................................................................................. 7

        A.      Mr. Zuckerberg Is Not Subject to General Jurisdiction in New Mexico. ..........7

        B.      Mr. Zuckerberg Is Not Subject to Specific Jurisdiction in New Mexico............8

II.     The State Fails to State a UPA Claim against Mr. Zuckerberg. ...................................9

        A.      The State Fails to Allege Facts that Would Support Holding Mr. Zuckerberg
Liable in His Personal Capacity........................................................................10

        B.      The State Cannot State a UPA Claim Based on Mr. Zuckerberg's Business
Decisions Regarding Meta's Services. ..............................................................12

        C.      Mr. Zuckerberg's Alleged Statements Are Non-Actionable Statements of
Opinion. .............................................................................................................13

        D.      Mr. Zuckerberg's Statements to Congress Are Not Actionable. .......................15

        E.      The State Does Not Allege that Mr. Zuckerberg Had a Duty to Disclose a
Material Fact. .....................................................................................................16

CONCLUSION....................................................................................................................... 17

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albuquerque Facility, LLC v. Danielson*,
    181 F. Supp. 3d 924 (D.N.M. 2016) ...................................................................11

*Andrews v. Stallings*,
    1995-NMCA-015, 892 P.2d 611 .........................................................................4

*Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*,
    87 F.3d 413 (10th Cir. 1996) ...............................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................6, 17

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
    861 F.3d 1081 (10th Cir. 2017) ...........................................................................6

*Brophy v. Ament*,
    2008 WL 4821610 (D.N.M. July 9, 2008) ........................................................10

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*,
    208 F.3d 885 (10th Cir. 2000) (*en banc*) ..........................................................15

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
    946 F.3d 1223 (10th Cir. 2020) ...........................................................................8

*Doe v. Sch. Dist. No. 1, Denver, Colo.*,
    970 F.3d 1300 (10th Cir. 2020) ...........................................................................6

*Dollens v. Wells Fargo Bank, N.A.*,
    2015-NMCA-096, 356 P.3d 531 .......................................................................14

*Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*,
    703 F.3d 488 (10th Cir. 2012) .........................................................................6, 8

*In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*,
    76 F. Supp. 3d 321 (D. Mass. 2015) ..................................................................10

*Hicks v. Eller*,
    2012-NMCA-061, 280 P.3d 304 .......................................................................13

*Hood v. Am. Auto Care, Ltd. Liab. Co.*,
    21 F.4th 1216 (10th Cir. 2021) ............................................................................7

*In re IBP Confidential Bus. Documents Litig.*,
   797 F.2d 632 (8th Circ. 1986)...........................................................................................15

*In re Lyft Inc. Sec. Litig.*,
   484 F. Supp. 3d 758 (N.D. Cal. 2020) ..............................................................................14

*Melea, Ltd. v. Jawer SA*,
   511 F.3d 1060 (10th Cir. 2007) ...........................................................................................6

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6354534 (N.D. Cal. Dec. 5, 2013)....................................................................10

*Patino v. Cnty. of Monterey*,
   2023 WL 375349 (N.D. Cal. Jan. 24, 2023) .....................................................................10

*Spak v. Riturani*,
   2022 WL 3715808 (D.N.M. Aug. 29, 2022) ......................................................................9

*Stevens v. Home Depot U.S.A., Inc.*,
   2012 WL 13081229 (D.N.M. Jan. 27, 2012)...............................................................10, 13

*Stinson v. Berry*,
   1997-NMCA-076, 943 P.2d 129....................................................................................9, 11

*Two Old Hippies, LLC v. Catch the Bus, LLC*,
   784 F. Supp. 2d 1200 (D.N.M. 2011) ...............................................................................10

**Statutes**

NMSA 1978, § 57-12-2(D)...............................................................................11, 12, 15

NMSA 1978,  § 57-12-2(D)(14) ...............................................................................15

NMSA 1978,  § 57-12-3 ...........................................................................................14

New Mexico Unfair Practices Act ............................................................................. *passim*

**INTRODUCTION**

New Mexico seeks to hold Mark Zuckerberg, a California resident and the founder and CEO of Meta Platforms, Inc., personally liable for alleged acts by Meta.[1] Asserting three claims under the New Mexico Unfair Practices Act ("UPA") in its First Amended Complaint ("FAC"),[2] the State alleges that Meta, and separately Mr. Zuckerberg in his personal capacity as Meta's CEO, are legally responsible for the alleged publication of sexually exploitative content posted or transmitted by third parties on Meta's services—content the State admits Meta prohibits. The State also seeks to hold Meta, and separately Mr. Zuckerberg, liable for displaying and disseminating other third-party content that the State claims harms the mental health of young New Mexicans.

Mr. Zuckerberg unequivocally condemns all forms of sex trafficking and child exploitation. But the State's attempt to impose liability on Mr. Zuckerberg for content posted by third parties on Meta's services should be dismissed for the reasons addressed in Meta's motion—which Mr. Zuckerberg joins—and for these additional reasons:

*First*, the State fails to allege facts to support personal jurisdiction over Mr. Zuckerberg, either by virtue of his own alleged acts or those of Meta.

*Second*, Mr. Zuckerberg cannot be personally liable for torts allegedly committed by Meta solely by virtue of his status as CEO or a shareholder of the corporation.

---

[1] Pursuant to D.N.M.LR-Civ. 7.1(a), Meta has asked the State for its position on this motion, which the State opposes.

[2] The FAC asserts a public nuisance claim against Meta but not Mr. Zuckerberg. Meta has moved to dismiss this claim in addition to the UPA claims.

*Third*, the business decisions the State attributes to Mr. Zuckerberg are not actionable under the UPA because they do not involve an oral or written statement.

*Fourth*, the statements Mr. Zuckerberg is alleged to have made are not actionable misstatements of fact.

*Fifth*, Mr. Zuckerberg's statements to Congress were not false, and regardless are protected by the First Amendment and are not subject to the UPA because they were not made in connection with a sale of a good or service.

*Sixth*, the FAC does not allege that Mr. Zuckerberg failed to disclose a material fact.

### **LEGAL STANDARD**

Under Rule 12(b)(2), the Court must dismiss a complaint if it fails to allege facts that support the exercise of personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 494 (10th Cir. 2012) (noting that plaintiffs "did not allege any facts to establish that [defendant] has the requisite minimum contacts with New Mexico to confer personal jurisdiction, nor did they allege facts showing that the New Mexico district court had personal jurisdiction over [defendant] under the agency theory"). A plaintiff bears the burden of alleging and ultimately proving facts establishing personal jurisdiction. *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).

Under Rule 12(b)(6), the Court must dismiss a complaint that fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When ruling on such a motion, the Court accepts "all well-pleaded factual allegations in the complaint," *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1304 (10th Cir. 2020), but need not accept "a legal conclusion couched as a factual allegation," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the plaintiff must allege facts stating a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "If, as a matter of law, the complaint . . . is insufficient, a motion

to dismiss is proper." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1100 (10th Cir. 2017) (cleaned up).

**ARGUMENT**

Meta's separately filed motion to dismiss demonstrates that the allegations in the Amended Complaint fail to establish personal jurisdiction as to Meta. That motion further establishes that the State's UPA claims are barred by Section 230 of the Communications Decency Act and the First Amendment, and that the State fails to state a claim under the UPA. *See* Dkt. No. 39. Mr. Zuckerberg joins in that motion and in the grounds asserted therein for dismissal of the State's claims against Meta, which also establish that the claims against Mr. Zuckerberg personally should be dismissed. Here, Mr. Zuckerberg addresses additional reasons—beyond those addressed in Meta's motion to dismiss—why the State fails to establish personal jurisdiction or to state a claim against Mr. Zuckerberg personally.

**I.     THE STATE FAILS TO PLEAD FACTS SUFFICIENT TO ESTABLISH PERSONAL JURISDICTION OVER MR. ZUCKERBERG**

As a threshold matter, the State does not meet its burden to allege sufficient facts to support general or specific personal jurisdiction over Mr. Zuckerberg. The Court should dismiss the State's complaint on this basis alone.

**A.     Mr. Zuckerberg Is Not Subject to General Jurisdiction in New Mexico.**

Mr. Zuckerberg is not subject to general jurisdiction in New Mexico because he is not, and is not alleged to be, "domiciled in the State." *Hood v. Am. Auto Care, Ltd. Liab. Co.*, 21 F.4th 1216, 1221 (10th Cir. 2021) (citing *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021)).

## B. Mr. Zuckerberg Is Not Subject to Specific Jurisdiction in New Mexico.

The State's allegations also do not support the exercise of specific personal jurisdiction over Mr. Zuckerberg. Because New Mexico's long-arm statute is coextensive with the limitations of the Fourteenth Amendment's Due Process Clause, courts in New Mexico cannot exercise specific jurisdiction over an out-of-state defendant unless that defendant maintains "minimum contacts" with the forum state and its claims "'arise out of or relate to'" those contacts. *Fireman's Fund*, 703 F.3d at 492-93 (quoting *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000)). The State cannot make that showing here, and its claims against Mr. Zuckerberg should be dismissed on this basis alone.

The Complaint does not include ***a single allegation*** that Mr. Zuckerberg has ***any*** contacts with New Mexico. While the State makes limited (and legally insufficient) allegations regarding *Meta's* connections with New Mexico, it makes ***none*** concerning Mr. Zuckerberg himself. *See* FAC ¶¶ 29–40, 46; *see* Dkt. 19 at 6-7. Similarly, while the State's allegations that New Mexico residents use *Meta's* services are legally irrelevant to jurisdiction over Meta, *see* Dkt. 39 at 10-11, they do not even purport to link the State's claims to *Mr. Zuckerberg*. *See* FAC ¶¶ 30, 40, 43–46, 246, 410, 491, 495, 506, 511, 523, 529, 533, 534, 539, 546, 548, 554.

***None*** of Mr. Zuckerberg's conduct alleged in the FAC is alleged to have taken place in or been directed toward New Mexico. *See generally id.* ¶¶ 212, 423(h), 456–88. For this reason, Mr. Zuckerberg's public statements that the State identifies as bases for its UPA claims cannot support the exercise of specific jurisdiction over Mr. Zuckerberg in New Mexico. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020) (misrepresentations must be "expressly aimed" at the forum state to establish personal jurisdiction).

To the extent the State asserts that personal jurisdiction over Mr. Zuckerberg can be predicated on purported jurisdiction over Meta, Mr. Zuckerberg joins Meta's arguments in its

motion to dismiss for lack of personal jurisdiction. But even if this Court had personal jurisdiction over Meta (which it does not), that would not give it personal jurisdiction over Mr. Zuckerberg. For personal jurisdiction to exist over a corporate officer, the officer must be a "primary participant[] in the activities forming the basis of jurisdiction over the corporation." *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996); *see also Spak v. Riturani*, 2022 WL 3715808, at *6 (D.N.M. Aug. 29, 2022) (same).

The State does not allege that Mr. Zuckerberg was the "primary participant" in Meta's alleged wrongdoing. As discussed in further detail below, the Complaint's allegations as to Mr. Zuckerberg are vague and sparse. They relate to a handful of public statements, many of them made in Congressional testimony, and to alleged inaction in response to information about certain initiatives, requests for additional staffing, or the alleged prevalence of harmful third-party content on Meta's services. *See* FAC ¶¶ 458, 459, 461, 462, 468–86. Essentially, the State attempts to hold Mr. Zuckerberg *personally* liable for *Meta's* alleged failure to remove allegedly harmful third-party content. The State's allegations do not plausibly demonstrate that Mr. Zuckerberg was a "primary participant" in Meta's conduct alleged in the Complaint.

## II. THE STATE FAILS TO STATE A UPA CLAIM AGAINST MR. ZUCKERBERG.

Despite the sweeping nature of the State's complaint, the allegations of conduct specific to Mr. Zuckerberg are limited and thin, and fall generally into two categories: (1) that Mr. Zuckerberg allegedly did not respond to feedback regarding user safety or make decisions about implementing certain alleged design changes in Meta's services, and (2) that Mr. Zuckerberg allegedly made certain public statements, often in Congressional testimony or to audiences other than users, about subjective matters like "safety." The State fails to state a UPA claim against Mr. Zuckerberg based on either category of alleged conduct.

### A. The State Fails to Allege Facts that Would Support Holding Mr. Zuckerberg Liable in His Personal Capacity.

As an initial matter, Mr. Zuckerberg's role as CEO of Meta does not make him liable for Meta's alleged conduct. "[M]erely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation." *Brophy v. Ament*, 2008 WL 4821610, at *7 (D.N.M. July 9, 2008) (quoting *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 409 (10th Cir. 1958)). To establish a corporate officer's personal liability for a company's alleged tort, a plaintiff must demonstrate that the officer "***direct[ed] or actively participate[d] in*** the commission of the tortious act." *Stinson v. Berry*, 1997-NMCA-076, ¶ 17, 943 P.2d 129 (emphasis added); *see also Two Old Hippies, LLC v. Catch the Bus, LLC*, 784 F. Supp. 2d 1200, 1220 (D.N.M. 2011) (dismissing claims against corporate officers for failure to allege "whether the Individual Defendants ***directed, controlled, approved or ratified the activities***" (cleaned up and emphasis added)); *Stevens v. Home Depot U.S.A., Inc.*, 2012 WL 13081229, at *3 (D.N.M. Jan. 27, 2012) (complaint must "charge in ***specific terms***" the "***specific acts*** on the part of the individual defendants" that constitute "***affirmative direction, sanction, participation, or cooperation***" in the wrongful act (emphases added)). The Complaint includes no such allegations that could establish Mr. Zuckerberg's personal liability for Meta's alleged conduct.

Courts routinely grant motions to dismiss corporate officers from suits where plaintiffs fail to allege specifically how the corporate officer directed or actively participated in the allegedly tortious conduct. *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (dismissing claims against executive officers because plaintiffs failed to allege sufficient specific allegations demonstrating that the executives "personally directed or participated in the tortious conduct"); *Patino v. Cnty. of Monterey*, 2023 WL 375349, at *7 (N.D. Cal. Jan. 24, 2023) (dismissing claims against company executives because plaintiff did not specifically identify

what conduct was attributable to each of the executives, as opposed to the corporation itself); *In re Fresenius Granuflo/Naturalyte Dialysate Prod. Liab. Litig.*, 76 F. Supp. 3d 321, 336 (D. Mass. 2015) (dismissing claims against a corporate officer because plaintiffs failed to make specific allegations that would support holding the officer individually liable).

In particular, courts have dismissed Mr. Zuckerberg from suits naming him as a defendant in his personal capacity where plaintiffs failed to allege that he gave ***specific*** directions or took ***specific*** acts in connection with his company's alleged conduct. For example, the court in *Lloyd v. Facebook, Inc.* dismissed claims against Mr. Zuckerberg where the complaint alleged generally that "he is the CEO of the company and was 'personally involved and/or directed the challenged acts'," but failed to allege specific acts to support the general allegation of involvement or direction. 2022 WL 4913347, at *5 (N.D. Cal. Oct. 3, 2022). Similarly, the court in *Brock v. Zuckerberg* dismissed claims against Mr. Zuckerberg where the complaint alleged that he "permitted, tolerated, and [was] deliberately indifferent" to Facebook's challenged conduct but "fail[ed] to allege any ***facts*** that connect[ed] Zuckerberg" to the challenged conduct. 2021 WL 2650070, at *4 (S.D.N.Y. June 25, 2021) (emphasis added).[3]

In short, the State must make allegations ***specific to Mr. Zuckerberg*** that state a claim under the UPA—it cannot rely on allegations regarding Meta's corporate conduct to establish a claim against Mr. Zuckerberg. For the reasons discussed below, the State fails to do so here.

---

[3] Nor can the State seek to hold Mr. Zuckerberg liable based solely on his status as a shareholder in the company. *See Stinson*, 1997-NMCA-076, ¶ 17 ("shareholders, directors and officers are not personally liable for the acts and obligations of the corporation"). The State does not and could not allege that Meta is the "alter ego" of Mr. Zuckerberg, so this is not the exceptional case where the Court could "pierce the corporate veil" to hold him liable as a shareholder. *See, e.g., Albuquerque Facility, LLC v. Danielson*, 181 F. Supp. 3d 924, 932 (D.N.M. 2016); *see also Lloyd, Inc.*, 2022 WL 4913347 at *5 (granting motion to dismiss where plaintiffs alleged Mr. Zuckerberg was liable under an "alter ego" theory).

**B. The State Cannot State a UPA Claim Based on Mr. Zuckerberg's Business Decisions Regarding Meta's Services.**

An unfair or deceptive trade practice under the UPA consists of either (1) an act "specifically declared unlawful pursuant to the [UPA]"; or (2) "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person." NMSA 1978, § 57-12-2(D). The first category includes acts that are not at issue here, such as "chain referral" sales techniques, *see id.* § 57-12-5, and misrepresentations regarding motor vehicles, *see id.* § 57-12-6. The second category, which includes a non-exhaustive list of examples, explicitly requires an "***oral or written statement, visual description, or other representation of any kind***." *Id.* § 57-12-2(D) (emphasis added).

Much of the conduct attributed to Mr. Zuckerberg in the Complaint amounts to his alleged failure to implement certain measures regarding users' safety or well-being. In particular, the State alleges that Mr. Zuckerberg allegedly:

- declined to respond to a letter from the CEO of Match regarding Match's cutting of advertising spending on Meta's services due to the alleged presence of offensive content, FAC ¶ 448;

- declined to commit additional staff towards building tools for user well-being, *id.* ¶¶ 468–71;

- declined to remove a cosmetic surgery filter feature, *id.* ¶¶ 473–78;

- declined to support demoting certain content that "probably" violated Meta policies, *id.* ¶ 479;

- "failed to ensure that Meta corrected its algorithms for recommending users and content" or otherwise respond when notified about subjective user survey data regarding self-reported harmful content, *id.* ¶¶ 480–84;

- prioritized the number of users on Facebook over changes to policies regarding notifications, *id.* ¶ 485; and

- "personally made decisions on whether posts or content should be removed," *id.* ¶ 486.

None of this alleged conduct comprises an "oral or written statement, visual description, or other representation of any kind." These allegations all concern internal business decisions regarding Meta's services, not any sort of "oral or written statement . . . or other representation" that could state a UPA claim. NMSA 1978, § 57-12-2(D). The State also makes several allegations alluding simply to the fact that Mr. Zuckerberg was informed of something, without an allegation as to how he responded. *See, e.g.*, FAC ¶¶ 468, 471, 480, 482. This absence of any act does not amount to an "affirmative direction, sanction, participation, or cooperation" such that Mr. Zuckerberg can be personally liable. *Stevens v. Home Depot U.S.A., Inc.*, 2012 WL 13081229, at *3 (D.N.M. Jan. 27, 2012).

Moreover, most of this alleged conduct involves purported decisions about how Meta organized, displayed and disseminated third-party user content to its users—*i.e.*, whether that content should be promoted or demoted, how the algorithms that recommend content allegedly should be changed, or what content should be removed—all of which are publishing decisions and editorial functions that are protected by Section 230 of the Communications Decency Act as well as the First Amendment, as addressed in greater detail in Meta's motion to dismiss. *See* Dkt. 39 at § II.

### C. Mr. Zuckerberg's Alleged Statements Are Non-Actionable Statements of Opinion.

The Complaint contains very few allegations of actual public statements or representations made by Mr. Zuckerberg. Of those alleged, virtually all of them are generalized statements about the "safety" of Meta's services, not actionable statements of objective fact.

It is an "essential element[]" of a UPA claim that the defendant made a "statement" that "was either false or misleading." *Hicks v. Eller*, 2012-NMCA-061, ¶ 18, 280 P.3d 304, 308. A statement cannot be "false or misleading" unless it is a statement of fact that the plaintiff could theoretically

13

"prove to be false." *Andrews v. Stallings*, 1995-NMCA-015, ¶ 21, 892 P.2d 611, 619. Thus, statements of opinion or generalized aspirations, which courts often refer to as non-objective "puffery," are not actionable under the UPA. *See, e.g.*, *Dollens v. Wells Fargo Bank, N.A.*, 2015-NMCA-096, ¶ 16, 356 P.3d 531, 537 ("non-actionable puffery" cannot form the basis of a claim under the UPA).

The core of the State's claim for deceptive trade practices against Mr. Zuckerberg is based on allegations that he claimed Meta's services were "safe" for young users. But the statements the State identifies are statements of opinion or generalized, non-quantifiable objectives or aspirations, not actionable statements of fact. For example, the State cites Facebook posts from Mr. Zuckerberg expressing his opinion that "it's very important to me that everything we build is safe and good for kids," FAC ¶ 212, and that "[w]e care deeply about issues like safety, well-being and mental health," *id.* ¶ 461. And the State cites Congressional testimony from Mr. Zuckerberg that "[t]his is something that we study and we care a lot about; designing products that [sic] peoples' well-being is very important to us." *Id.* ¶ 462.

Such statements cannot form the basis for a misrepresentation claim under the UPA because they are not quantifiable and cannot be proven false. For this reason, as addressed in detail in Meta's motion to dismiss, courts across the country routinely dismiss misrepresentation claims based on generalized or non-objective statements about "safety." *See, e.g.*, *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 770 (N.D. Cal. 2020) ("generalized assertions about Lyft's commitment to safety, its safety measures, and the role safety plays in the rideshare market" were "non-actionable puffery"); *see also* Dkt. No. 39 at 40-42 (discussing additional cases rejecting misrepresentation claims based on generalized and non-objective statements about "safety").

The same reasoning applies here. Mr. Zuckerberg's generalized, unmeasurable claims of prioritizing user "safety" or "well-being" are not statements of objective fact and therefore cannot be actionable as misrepresentations, as a matter of law.

### D. Mr. Zuckerberg's Statements to Congress Are Not Actionable.

The Complaint also cites several statements that Mr. Zuckerberg purportedly made in testimony to Congress. *See* FAC ¶¶ 458, 459, 461, 462. For at least two reasons, such statements are not actionable as a matter of law.

*First*, the First Amendment bars claims based on efforts to petition the government. *See, e.g.*, *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889 (10th Cir. 2000) (*en banc*). This right to petition extends to Congressional testimony that is given in an effort to "influence the legislative process," rather than to "abuse[] or corrupt[] the legislative process." *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 640-41 (8th Circ. 1986). In particular, Congressional testimony meets this standard and receives First Amendment protection when it is given in response to questions asked or topics raised by Congress. *Id.* at 641. That is precisely the context in which the State alleges Mr. Zuckerberg gave the testimony it identifies as a basis for its UPA claims, as he was responding to questions from Congress about topics of interest to them. *See* FAC ¶ 458 ("Asked in a November 2020 Congressional hearing, 'do you believe your product can be addictive,' Zuckerberg responded, 'we certainly do not design the product in that way.'"); *see also id.* ¶¶ 459, 461, 462. For this reason, the First Amendment bars the State's claims based on Mr. Zuckerberg's alleged misstatements made to Congress.

*Second*, Mr. Zuckerberg's statements to Congress were not made "in connection with" the sale of any goods or services, as required to state a claim under the UPA. N.M. Stat. Ann. § 57-12-3. An "unfair or deceptive trade practice" is defined to mean an act or practice "made in connection with the ***sale, lease, rental or loan of goods or services*** or in the extension of credit or in the

collection of debts." N.M. Stat. Ann. § 57-12-2(D) (emphasis added). Likewise, the UPA defines the term "unconscionable trade practice" to mean an act or practice "in connection with the ***sale, lease, rental or loan***, or in connection with the offering for sale, lease, rental or loan, ***of any goods or services***." *Id.* § 57-12-2(E) (emphases added).

Statements made by Mr. Zuckerberg in response to questions from members of Congress were not made "in connection with the sale, lease, rental or loan" of any "goods or services." None of those statements was directed at consumers, and none was made in the context of a sale of a good or service. And because Mr. Zuckerberg was responding to questions from members of Congress, not directing business decisions from the Capitol, he was not acting "in the regular course of his trade or commerce" when he made the statements the State identifies in the Amended Complaint. For these additional reasons, Mr. Zuckerberg's Congressional testimony cannot form the basis of a UPA claim.[4]

### E. The State Does Not Allege that Mr. Zuckerberg Had a Duty to Disclose a Material Fact.

The State also alleges that Mr. Zuckerberg engaged in misrepresentations by omission. *See* FAC ¶¶ 463-64. But merely alleging that Mr. Zuckerberg omitted a fact is not sufficient to state a claim; the UPA applies only when a defendant has failed to state a ***material fact***. N.M. Stat. Ann. § 57-12-2(D)(14); *see also* Dkt. No. 39 at 44-45 (discussing cases that require a misstatement of "material" fact).

Here, although the State alleges a handful of purported omissions by Mr. Zuckerberg, *see* FAC ¶¶ 463-64, it fails to allege facts that would establish that any such omissions were material to

---

[4] Additionally, *none* of Mr. Zuckerberg's alleged statements—in Congressional testimony, in Facebook posts, or otherwise—were made "in connection with the sale, lease, rental or loan of goods or services" because Instagram, Facebook, and WhatsApp are *free* services, as explained in Meta's motion to dismiss. *See* Dkt. No. 39 at 34-35.

users of Meta's services. The State's conclusory allegations of the legal standard of a "misrepresentation," without alleging facts showing that any such purported omission was material, are not sufficient to state a claim under the UPA. *See Twombly*, 550 U.S. at 555 (the Court need not accept "a legal conclusion couched as a factual allegation").

## CONCLUSION

For the foregoing reasons, and those addressed in Meta's separately filed motion to dismiss, the State's claims against Mr. Zuckerberg should be dismissed with prejudice.

January 23, 2024

Respectfully submitted,

By: */s/ John C. Anderson*
John C. Anderson
Olga M. Serafimova
HOLLAND & HART LLP
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth (Admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000
nshafroth@cov.com

Timothy C. Hester (Admitted *Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
thester@cov.com

*Attorneys for Defendant Mark Zuckerberg*

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on January 23, 2024, a copy of the foregoing was filed through the court's CM/ECF system, causing it to be served by electronic mail upon the following:

James W. Grayson
Chief Deputy Attorney General
Raul Torrez, Attorney General of New Mexico
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Phone: (505) 218-0850
Email: jgrayson@nmag.gov

Serena R. Wheaton
Assistant Attorney General
New Mexico Attorney General's Office
Consumer & Environmental Protection Division
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Phone: (505) 490-4846
Email: swheaton@nmag.gov

Linda Singer
David I. Ackerman
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Email: lsinger@motleyrice.com
Email: dackerman@motleyrice.com

                                                */s/ John C. Anderson*
                                                John C. Anderson