**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO, EX REL., RAÚL
TORREZ, ATTORNEY GENERAL,

                    Plaintiff,

           - v. -

META PLATFORMS, INC.; INSTAGRAM, LLC;
META PAYMENTS, INC.; META PLATFORMS
TECHNOLOGIES, LLC; and MARK
ZUCKERBERG,

                Defendants.

Civ. No. 1:23-01115 MIS-KK

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO REMAND**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

I.   The Court Has Federal Question Jurisdiction Over the Complaint........................................ 2

    A.   The State's UPA Claim Presents an Embedded Federal Question. ............................ 3

    B.   The Federal Issue Raised by the State's UPA Claim Satisfies the Four-Part *Grable* Test for Federal Jurisdiction. ......................................................................... 6

        1.   The State's Complaint Necessarily Raises a Federal Issue. .................................. 6

        2.   The Federal Issue in the Complaint Is Actually Disputed. .................................. 12

        3.   The Federal Issue Is Substantial. ......................................................... 15

        4.   Permitting a Federal Court to Decide the Boundaries of Federal Law Maintains the Federal-State Balance. ................................................................... 17

II.   The State's Request for Attorneys' Fees Is Baseless and Should Be Denied. ...................... 19

CONCLUSION ...................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Board of Comm's of Southeast La. Flood Protect'n Auth. v. Tennessee Gas
    Pipeline Co., LLC,*
    850 F.3d 714 (5th Cir. 2017) ............................................................................4, 8

*Broder v. Cablevision Systems Corp.,*
    418 F.3d 187 (2d Cir. 2005)..............................................5, 10, 11, 12, 15

*California ex rel. Lockyer v. Dynegy, Inc.,*
    375 F.3d 831 (9th Cir. 2004) ................................................................................8

*Center for Digital Democracy v. FTC,*
    189 F. Supp. 3d 151 (D.D.C. 2016) ................................................................13

*Empire Healthchoice Assur., Inc. v. McVeigh,*
    547 U.S. 677 (2006).............................................................................................10

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S.
    California,*
    463 U.S. 1 (1983)........................................................................................2, 10, 19

*Gilmore v. Weatherford,*
    694 F.3d 1160 (10th Cir. 2012) .............................1, 3, 5, 6, 7, 9, 12, 13, 14, 16, 19

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005)......................................................................................2, 6, 18

*Gunn v. Minton,*
    568 U.S. 251 (2013).......................................................................12, 13, 15, 16, 17

*In re Pharm. Indus. Ave. Wholesale Price Litig.,*
    457 F. Supp. 2d 77 (D. Mass. 2006) ................................................................18

*In re: Social Media Adolescent Addition/Personal Injury Prods. Liability Litig.,*
    4:22-md-03047 (N.D. Cal.)................................................................................15

*Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.),*
    375 F. Supp. 2d 170 (E.D.N.Y. 2005) ..............................................................18

*Mississippi ex rel. Hood v. Entergy Mississippi, Inc.,*
    2015 WL 13448017 (S.D. Miss. Apr. 10, 2015)................................................18

*Morris v. City of Hobart,*
    39 F.3d 1105 (10th Cir. 1994) ............................................................................3

*NASDAQ OMX Group, Inc. v. UBS Securities, LLC*,
  770 F.3d 1010 (2d Cir. 2014) ................................................................4, 6, 14

*Navistar Int'l Corp. v. Deloitte & Touche LLP*,
  837 F. Supp. 2d 926 (N.D. Ill. 2011) ...........................................................7

*Nevada v. Bank of Am. Corp.*,
  672 F.3d 661 (9th Cir. 2012) .........................................................................7

*New Mexico ex rel. Balderas v. Preferred Care, Inc.*,
  158 F. Supp. 3d 1226 (D.N.M. 2015) ...........................................3, 6, 7, 9, 17, 18

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
  323 F. Supp. 3d 1242 (D.N.M. 2018) ...........................................................8

*New Mexico ex rel. Balderas v. Tiny Lab Products*,
  457 F. Supp. 3d 1103 (D.N.M. 2020) ..........................................................14

*New York v. Arm or Ally, LLC*,
  644 F. Supp. 3d 70 (S.D.N.Y. 2022) ...........................................................18

*New York v. Int'l Joint Comm'n*,
  559 F. Supp. 3d 146 (W.D.N.Y. 2021) ..........................................................5

*Nicodemus v. Union Pacific Corp.*,
  440 F.3d 1227 (10th Cir. 2006) ...................................1, 3, 5, 7, 9, 12, 16, 19

*Pennsylvania v. Eli Lilly & Co.*,
  511 F. Supp. 2d 576 (E.D. Pa. 2007) ...........................................................7

*PNC Bank, N.A. v. PPL Elec. Util. Corp.*,
  189 F. App'x 101 (3d Cir. 2006) ..................................................................4

*Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't of Env't Mgmt*,
  585 F.3d 42 (1st Cir. 2009) ....................................................................4, 17

*Rosenman v. Facebook, Inc.*,
  No. 21-CV-02108-LHK, 2021 WL 3829549 (N.D. Cal. Aug. 27, 2021) .....................5, 9, 18

*Sais v. Maldonado*,
  682 F. Supp. 2d 1254 (D.N.M. 2009) ........................................................2, 4, 18

*State ex rel. Jacobson v. Wells Fargo National Bank, N.A.*,
  824 F.3d 308 (2d Cir. 2016) ....................................................................4, 8

*State of Arizona, et al. v. Meta Platforms, Inc., et al.*,
  4:23-cv-5448 (N.D. Cal.) ..........................................................................15

*STC.UNM v. Quest Diagnostics Inc.,*
　　2020 WL 4734899 (D.N.M. Aug. 14, 2020) ..................................................11, 12

*Tichenor v. New Mexico Title Loans, Inc.,*
　　No. 15-cv-810, 2016 WL 10538830 (D.N.M. May 2, 2016).................................9, 10

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.,*
　　646 F.3d 169 (4th Cir. 2011) ...................................................................................18

**Statutes**

15 U.S.C. § 6502(a)(1)...............................................................................................14

15 U.S.C. § 6504(a)(1)..........................................................................2, 15, 16, 17

28 U.S.C. §1331 ......................................................................................................1, 6

47 U.S.C. § 543(d) ...................................................................................................12

NMSA 1978, §§ 30-52-1 (2008)................................................................................8

**Other Authorities**

16 C.F.R. §§ 312.1, *et seq.*...........................................................................13, 14, 15

16 C.F.R. § 312.2 ....................................................................................................14

## INTRODUCTION

This Court has federal jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the State's First Amended Complaint ("FAC"), on its face, presents a federal question that must be resolved in the State's favor for it to secure the relief it seeks.  Paragraph 519 of the FAC specifically alleges that "Meta's practices in violation of COPPA"—the federal Children's Online Privacy Protection Act, 15 U.S.C. §§ 6501, *et seq.*—"constitute unfair practices under New Mexico law."  The State, by its own pleading, is seeking to prove that Meta's[1] practices were "in violation of COPPA," and therefore cannot prevail on this unfair practices claim—and on the monetary relief it seeks for those alleged violations of COPPA—without proving a violation of federal law.  Because the State has "framed [its] state-law claim in such a fashion that [it] succeed[s] only if [it is] correct that [Meta] failed to meet federal requirements," this court has federal question jurisdiction.  *Gilmore v. Weatherford*, 694 F.3d 1160, 1175 (10th Cir. 2012).

The State thus misses the point with its repeated argument that it advances "only state-law claims" or does not "assert a COPPA claim."  Under its own allegations, the State cannot succeed in seeking relief under the New Mexico Unfair Practices Act ("UPA") for Meta's alleged practices "in violation of COPPA" unless it proves a violation of federal law.  Because the State's "well-pleaded complaint raises a disputed issue of federal law, the resolution of which is necessary to grant the relief [the State] seeks," the Court has federal jurisdiction over this state-law claim. *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006).  And the fact that the State alleges *other* UPA claims not premised on violations of federal law does not defeat federal jurisdiction because "[i]f any one claim within Plaintiffs' complaint supports federal question

---

[1] "Meta," as used herein, refers collectively to Defendants Meta Platforms, Inc., Instagram, LLC, Meta Payments, Inc., and Meta Platforms Technologies, LLC, who are the parties filing this Opposition brief.

jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims." *Id*. at 1235 n.8.

Although the State feigns grievance over Meta's removal of this case, claims brought by States alleging violations of COPPA are subject to *exclusive* federal jurisdiction. *See* 15 U.S.C. § 6504(a)(1). Reflecting this point, 34 other State attorneys general that have asserted violations of COPPA by Meta have filed their complaints in federal court. New Mexico is the *only* State that has improperly sought to prove COPPA violations in state court.

For these reasons, addressed in more detail below, the State's Motion to Remand should be denied.

## ARGUMENT

### I.     The Court Has Federal Question Jurisdiction Over the Complaint.

Federal jurisdiction in this case derives from "the common sense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). As the Supreme Court has recognized, even where "state law . . . creates . . . causes of action," a case "might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 13 (1983). Where the plaintiff's "right to recover depends on the resolution of a substantial question of federal law, then this Court has a duty to evoke its jurisdiction when requested to do so." *Sais v. Maldonado*, 682 F. Supp. 2d 1254, 1255 (D.N.M. 2009).

### A.      The State's UPA Claim Presents an Embedded Federal Question.

The State's complaint, on its face, pleads that Meta has engaged in "practices in violation of COPPA"—a federal law—and that this constitutes unfair practices under New Mexico law. FAC ¶ 519.   Accordingly, under the State's own allegations, it cannot prevail on this state law claim unless it proves "practices in violation of COPPA."   Although the State asserts that its Complaint "avers only state-law claims that do not require resolution of a federal question," Mot. 1, and that it is "patently false" that its Complaint "pleads claims based on alleged violations of federal law," *id.* at 5, that is simply not correct:  the State's own allegations specifically assert an unfair practices claim based on alleged "practices in violation of COPPA," which necessarily and inherently requires resolution of the federal question whether Meta in fact violated that federal law.

Courts widely recognize that such a state law claim "arises under federal law" because, as here, the "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Nicodemus*, 440 F.3d at 1232 (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994)).  In *Nicodemus*, the Tenth Circuit held that a state-law claim was subject to federal question jurisdiction because, "[t]o prove that [the defendant] acted unlawfully," the plaintiff—as is true for the State here—had to establish a violation of federal law, and "[t]he federal issue, therefore, arises in Plaintiffs' case-in-chief, not by way of defense."  *Id.* at 1235.  Similarly, in *Gilmore*, the Tenth Circuit held that a state-law claim presented a substantial federal question and was subject to federal jurisdiction because "[a]lthough plaintiffs could lose their [state law] conversion claim without the court reaching the federal question, . . . they cannot win unless the court answers that question."  694 F.3d at 1176. *See also New Mexico ex rel. Balderas v. Preferred Care, Inc.*, 158 F. Supp. 3d 1226, 1230 (D.N.M.

2015) ("An issue is necessarily raised if the plaintiff cannot prevail on its state law claim without reference to federal law or regulations.") (quotations omitted); *Sais*, 682 F. Supp. 2d at 1256 (finding federal jurisdiction where the plaintiff's "purported state claim . . . specifically alleges three violations" of federal law).

Decisions from other Circuits are to the same effect.  For example, in *NASDAQ OMX Group, Inc. v. UBS Securities, LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014), the court held that a state-law claim arose under federal law and established federal jurisdiction because—as the State does here—the plaintiff alleged a violation of a duty "derive[d] directly from federal law" and "resolution of that dispute will require construction of a federal statute."  Thus, although the plaintiffs' "claims for relief may invoke state law of contract and tort, the duty on which these claims turn and their particular scope . . . necessarily raises disputed issues of federal securities law." *Id*. at 1022.

Likewise, in *State ex rel. Jacobson v. Wells Fargo National Bank, N.A.*, 824 F.3d 308, 317 (2d Cir. 2016), the court held that federal jurisdiction was established over a state-law claim alleging a violation of federal tax law, observing that "[a] state-law claim necessarily raises federal questions . . . where the claim is affirmatively premised on a violation of federal law." *See also*, *e.g.*, *Board of Comm's of Southeast La. Flood Protect'n Auth. v. Tennessee Gas Pipeline Co., LLC*, 850 F.3d 714, 722 (5th Cir. 2017) (federal jurisdiction established over state-law claim where the "complaint draws on federal law as the exclusive basis for holding Defendants liable for some of their actions"); *Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't of Env't Mgmt*¸ 585 F.3d 42, 49 (1st Cir. 2009) ("it is not logically possible for the plaintiffs to prevail on this [state-law] cause of action without affirmatively answering the embedded [federal] question"); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (holding that a state-

law declaratory judgment claim "gives rise to federal-question jurisdiction" because it necessarily "raises a substantial federal question—the interpretation" of an Internal Revenue Code provision); *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 195 (2d Cir. 2005) (federal jurisdiction established where plaintiff could not prevail on his state law claim "without prevailing on the issue of whether [the defendant] in fact violated" federal law); *Rosenman v. Facebook, Inc.*, No. 21-CV-02108-LHK, 2021 WL 3829549, at *4 (N.D. Cal. Aug. 27, 2021) (holding that federal jurisdiction was established over a state-law claim that "requires establishing a violation of federal antitrust law").

The State overlooks this well-established case law when it emphasizes the Complaint's disclaimer that "[n]o federal claims are being asserted," Mot. 3, that the Complaint "expressly disclaims any cause of action under federal law," *id.*, and that it does not "plead a claim under COPPA," *id.* at 7-8.  A state law cause of action can give rise to federal question jurisdiction even if a complaint does not plead a separate, freestanding federal cause of action, as the Tenth Circuit has made clear.  *See Gilmore*, 694 F.3d at 1176; *Nicodemus*, 440 F.3d at 1235.  Further, the State's boilerplate allegations "disclaiming" federal jurisdiction are not controlling where, as here, the State is alleging claims that necessarily require resolution of a federal question.  *See New York v. Int'l Joint Comm'n*, 559 F. Supp. 3d 146, 154 (W.D.N.Y. 2021) ("the State cannot now disclaim its express allegations that necessarily raise federal questions").[2]

---

[2] The State says that Meta is arguing that the State "brings federal causes of action."  Mot. 7.  That is incorrect.  Meta's argument is that the Complaint's state-law cause of action under the UPA necessarily raises a federal question as to whether Meta violated COPPA.

**B.**     **The Federal Issue Raised by the State's UPA Claim Satisfies the Four-Part *Grable* Test for Federal Jurisdiction.**

In *Grable*, the Supreme Court established a four-factor test for federal jurisdiction where, as here, a complaint presents a federal question within a state-law claim.  545 U.S. at 314.  These factors are whether:  "[(1)] a state-law claim necessarily raise[s] a stated federal issue" that is "[(2)] actually disputed and [(3)] substantial, [(4)] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id*. *See also Preferred Care*, 158 F. Supp. 3d at 1230 (applying *Grable* test).  Here, all four factors are present and establish federal jurisdiction pursuant to 28 U.S.C. § 1331.

**1.**     **The State's Complaint Necessarily Raises a Federal Issue.**

"To determine whether an issue is 'necessarily' raised, the Supreme Court has focused on whether the issue is an 'essential element' of a plaintiff's claim."  *Gilmore*, 694 F.3d at 1173 (quoting *Grable*, 545 U.S. at 315).  The State is correct that the mere possibility a federal question may arise is insufficient to create federal jurisdiction.  *See* Mot. 12.  But that doctrinal point has no application here, because the State's UPA claims based on purported "practices in violation of COPPA," FAC ¶ 519, are specifically alleged by the State to "constitute separate . . . violations of the UPA" subject to separate and distinct monetary penalties, *id.* at Prayer for Relief ¶¶ 2, 4.  These separate alleged violations necessarily depend on proving that Meta violated a duty created by federal law.  *See NASDAQ OMX Grp.*, 770 F.3d at 1020 ("we begin by considering the duty underlying each claim," because "[i]t is the violation of a duty that would trigger any" state-law liability).

Here, because the State alleges a UPA claim based on a "violation of COPPA," it necessarily and inherently raises a question of federal law as to ***whether in fact COPPA was violated***.  The federal question is thus an essential element of the claim, as the State has pled it,

and federal jurisdiction exists under controlling Tenth Circuit precedent.  *See Gilmore*, 694 F.3d at 1176 (plaintiffs "cannot win unless the court answers that [federal] question"); *Nicodemus*, 440 F.3d at 1232 (the "right to relief necessarily depends on resolution of a substantial question of federal law").

The State points to cases holding that a federal question is not presented if federal law standards have been incorporated into state law.  Mot. 8-9 & n.11.  But the State's allegations are not based on violation of a state law standard; the State specifically alleges a violation of federal law.  *See* FAC ¶ 519 (alleging "practices in violation of COPPA").  The cases cited by the State involve violations of state-law standards that incorporate or borrow from federal standards, and thus did not require determining whether federal law was violated.  *See, e.g.*, *Pennsylvania v. Eli Lilly & Co.*, 511 F. Supp. 2d 576, 581 (E.D. Pa. 2007) ("Even though 'medically accepted indication' is defined by federal law, liability under the state law claims presented here nonetheless does not depend on the violation of any federal standard or statute.").[3]

In contrast, here the State specifically alleges a state-law claim based on alleged "violation[s] of COPPA."  The State is not alleging that federal standards are merely a "guide" or "persuasive" in interpreting state law; rather, the State is alleging that a "violation" of federal law gives rise to its claim.  Thus, as alleged by the State, that claim is not based on any New Mexico

---

[3] The other cases cited by the State (Mot. 8 n.11) are not to the contrary.  In *Preferred Care*, 158 F. Supp. 3d at 1231, the court found that "New Mexico . . . has enacted statutes and regulations governing the standard of care . . . that generally parallel federal law" and that the plaintiff could prove that the defendants "fell short of the standards set by applicable law by referring solely to New Mexico substantive law."  In *Navistar Int'l Corp. v. Deloitte & Touche LLP*, 837 F. Supp. 2d 926, 930 (N.D. Ill. 2011), the court assumed without deciding that the plaintiff's claims "necessarily raise questions regarding . . . compliance with [federal] audit standards" but found no federal jurisdiction because the other *Grable* factors were not satisfied.  And in *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 675-76 (9th Cir. 2012), the court held that the plaintiff's claims did not depend on resolving a claimed violation of federal law, and that in any event the other *Grable* factors were not satisfied.

law or on standards incorporated into New Mexico law—instead, the claim is directly premised on a violation of federal law. *See State ex rel. Jacobson*, 824 F.3d at 317 ("A state-law claim necessarily raises federal questions where the claim is ***affirmatively premised*** on a violation of federal law.") (emphasis added). The State alleges that Meta's breach of a purported duty not to "obtain[] data from children under 13-years old" without first "provid[ing] notice and seek[ing] consent from parents" was "in violation of COPPA." FAC ¶ 519. None of the New Mexico statutes referenced in the Complaint establishes this duty[4]—to the contrary, the State specifically and only pleads that this duty arises out of COPPA and that Meta's alleged breach of this duty violates that federal law. *Id*. This stands in stark contrast to *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1251 (D.N.M. 2018), in which the court found no federal jurisdiction because the defendant "has not shown that Plaintiff's claims are predicated solely on obligations under federal law because the Complaint identifies other duties implicated by state law."

The State argues in conclusory fashion that Meta's alleged violation of COPPA also violates New Mexico's "public policy," but provides no source of law for this policy other than COPPA. *See Board of Comm's of S.E. La.*, 850 F.3d at 723 ("The absence of any state law grounding for the duty . . . for the Defendants to be liable means that that duty would have to be drawn from federal law."); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 841 n.6 (9th Cir. 2004) (holding that "[t]he state lawsuit turns, entirely, upon the defendant's compliance with a federal regulation," notwithstanding the state's attempt to claim conduct was also "unfair" under

---

[4] *See, e.g.*, Compl. ¶ 479 (citing NMSA 1978, §§ 30-52-1 (2008) (prohibiting human trafficking), 30-6A-3(C) (2016) (prohibiting the distribution of CSAM), 30-37-3.2 (2007) (prohibiting "[c]hild solicitation by electronic communication device"), and 30-37-3.2 (2007) (prohibiting "soliciting a child under sixteen years of age, by means of an electronic communication device, to engage in sexual intercourse, sexual contact or in a sexual or obscene performance").

state law (citation omitted)).  The State, by its own allegations, thus bases this UPA claim solely on an alleged violation of federal law.

Therefore, this is not a case like *Preferred Care*, where it was "not necessary to resolve any disputed issue of federal law" because New Mexico's claims could be resolved based on state "statutes and regulations governing the standard of care [applicable to the case] that generally parallel federal law."  158 F. Supp. 3d at 1230–31.  As the court emphasized, "[t]he fact that relief is potentially available to the Attorney General without the construction of, or reference to, federal law is fatal to 'substantial question' jurisdiction under *Grable*."  *Id*.  "[N]o interpretation of the [federal] Medicaid statute [was] necessary."  *Id*.  *See also Tichenor v. New Mexico Title Loans, Inc.*, No. 15-cv-810, 2016 WL 10538830, at *3 (D.N.M. May 2, 2016) (complaint did not raise a federal question because the plaintiff's claims were "not based on alleged violations of federal law").

Here, in direct contrast, the State's UPA claim is based on the specific allegation that Meta engaged in practices in "violation of COPPA," which necessarily requires determining whether Meta violated that federal statute.  Thus, the State's right to relief—as it has pled the UPA claim— "necessarily depends on resolution of a substantial question of federal law."  *Nicodemus*, 440 F.3d at 1232.  The State "succeed[s] only if [it is] correct" that Meta violated COPPA.  *Gilmore*, 694 F.3d at 1175.  *See also Rosenman*, 2021 WL 3829549, at *5 (California claim for "unfair" practices necessarily raised a federal question where plaintiff did "not allege in her Complaint that Facebook's conduct violated California-specific constitutional, statutory, or regulatory provisions").

The State is also incorrect when it argues that its "claims do not require proof of a federal law violation and instead can be proven through other means."  Mot. 11.  While the State notes

(Mot. 9–10) that it alleges other "unfair or deceptive" or "unconscionable" practices, in addition to its claim based on "practices in violation of COPPA," and points to the general principle that "[w]here a claim is supported by alternative theories, federal courts do not have jurisdiction unless federal law is essential to each theory," Mot. 10 (quoting *Tichenor*, 2016 WL 10538830, at *5), that is not what the Complaint alleges here and that is not the relief the Complaint seeks.

The State's Complaint—on its face—is not seeking to prove a single UPA violation by "alternative theories." To the contrary, the Complaint specifically seeks a declaration that "***each act***, statement and/or omission of Defendants described in this Complaint constitute[s] [a] ***separate*** and willful violation[] of the UPA." Compl. Prayer for Relief ¶ 2 (emphases added). The Complaint further seeks to impose "civil penalties on each Defendant of up to $5,000 for ***each violation*** of the UPA." *Id.* Prayer for Relief ¶ 4 (emphasis added); *see also id.* ¶¶ 468, 491, 504. Because the State cannot obtain its requested relief for "each violation" based on "each act" it alleges without proving that Meta's practices were "in violation of COPPA," its Complaint inherently and necessarily presents a federal question. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (federal question jurisdiction exists where "the plaintiff's ***right to relief*** necessarily depends on resolution of a substantial question of federal law") (quoting *Franchise Tax Bd.*, 463 U.S. at 27–28) (emphasis added).

This conclusion is not altered by the fact that the State organized its Complaint by grouping multiple alleged unfair practices within a single count of the Complaint—as is demonstrated by *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005). There, while the court acknowledged that a federal issue is not "necessarily raised" when it "is present as only one of multiple theories that could support a particular claim," it noted that "what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim,'" and that regardless of how

the counts are pled, if "at least one federal aspect of [Plaintiff's] complaint is a logically separate claim," then a federal issue is necessarily raised. *Id.* at 194. In *Broder*, "[w]hat [was] styled as a single breach-of-contract claim actually ha[d] two distinct parts," one of which depended on a violation of federal law that had allegedly been incorporated by reference into the contract. *Id.* Because the state law claim raising only questions of state law was "logically separable from the contract claim that relie[d] on" the federal statute, the court held that the pure state-law claim should be "put . . . aside, as if it had been pleaded as a separate count." *Id.* The court held that the "logically separable" contract claim based on the federal statute "necessarily raise[d]" a federal issue and established federal jurisdiction. *Id.* at 195

For the same reason, the State's claim based on "practices in violation of COPPA," FAC ¶ 519, is a distinct claim for relief that "necessarily raise[s]" a federal issue and establishes federal jurisdiction, regardless of the fact that the State has styled its "Count II" to include alongside that claim other alleged violations of the UPA. The State's COPPA-based UPA claim is "logically separable" from the State's other claims of unfair practices because the State alleges that "each" "separate" UPA violation entitles it to separate monetary relief, *id.* Prayer for Relief ¶¶ 2, 4. *See STC.UNM v. Quest Diagnostics Inc.*, 2020 WL 4734899, at *5 (D.N.M. Aug. 14, 2020) (where a single "Count" for breach of contract "alleges separate breaches, ***each with a different request for relief***," those alleged breaches "are separate claims" for purposes of evaluating federal question jurisdiction) (citing *Broder*) (emphasis added).

In other words, the State cannot "obtain the relief [it] seeks" for the alleged practices in violation of COPPA "without prevailing on" the federal question of whether Meta violated COPPA. *See Broder*, 418 F.3d at 195. This is true regardless of whether the State can separately prevail on ***other*** UPA claims that do not involve any alleged COPPA violations. The alleged

11

"practices in violation of COPPA" are therefore standalone "claims" for purposes of evaluating whether the Complaint necessarily raises a substantial federal question. *See Broder*, 418 F.3d at 195 ("The claims that invoke 47 U.S.C. § 543(d) are thus separate claims for *Grable* purposes, and . . . [t]he first part of the test is clearly met:  the claims 'necessarily raise [the] stated federal issue' of whether Cablevision violated 47 U.S.C. § 543(d) as alleged."); *STC.UNM*, 2020 WL 4734899, at *5 (for purposes of federal question jurisdiction, a "distinct claim" is one where a plaintiff cannot "obtain the relief he seeks without prevailing on it") (quoting *Broder*, 418 F.3d at 195).

In short, because the State's Complaint alleges that "each" act is a "separate" violation of the UPA that entitles it to separate monetary relief for "each violation," FAC Prayer for Relief ¶¶ 2, 4, the State has pled claims based on alleged "practices in violation of COPPA," "the resolution of which is necessary to grant the relief [the State] seeks," *Nicodemus*, 440 F.3d at 1234. The State has "framed [its] state-law claims in such a fashion that [it] succeed[s] only if [it is] correct that [Meta] failed to meet these federal requirements."  *Gilmore*, 694 F.3d at 1175.

### 2.    The Federal Issue in the Complaint Is Actually Disputed.

The federal issue at the heart of the State's claims against Meta is "actually disputed," because the parties disagree whether Meta's practices were "in violation of COPPA," as the State alleges.   FAC ¶ 519.   The scope of Meta's obligations under COPPA, and whether those obligations were violated, is "just the sort of dispute respecting the effect of federal law that *Grable* envisioned." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotations omitted).  As the Tenth Circuit reasoned in *Nicodemus*, a "federal question is actually disputed" where it is "the only legal or factual issue contested."  440 F.3d at 1236.  Here, whether Meta in fact violated COPPA is the

"only legal or factual issue contested" in the State's UPA claim seeking separate monetary relief for alleged unfair practices "in violation of COPPA."[5]

The State is wrong in suggesting (Mot. 12) that a federal issue is only "disputed" under *Grable* if it involves the "meaning or construction" of a federal law. *See Gunn*, 568 U.S. at 259 (federal issue was "actually disputed" where it required "application of [federal] patent law to the facts of [the] case"). But in any event, the meaning and construction of COPPA will be very much in dispute based on the State's allegations of a COPPA violation. Contrary to the State's argument, Mot. 12, this is not a case where the alleged COPPA violation simply involves an application of established law to a particular set of facts. COPPA is a "unique regulatory scheme" involving a "complex formulation" of requirements. *Center for Digital Democracy v. FTC*, 189 F. Supp. 3d 151, 154, 162 (D.D.C. 2016). Where the State alleges "practices in violation of COPPA" that it asserts give rise to UPA claims, the determination whether Meta's practices are in fact a "violation" of COPPA raises significant legal issues involving a construction of the federal statute and application of federal regulations. *See, e.g.*, FAC ¶ 355 (citing federal FTC regulations governing COPPA, 16 C.F.R. §§ 312.1, *et seq.*, in support of allegation that "Meta's platforms lack sufficient parental controls and notifications").

---

[5] The fact that Meta has moved to dismiss these COPPA-based UPA claims on other grounds does not mean there is no dispute over the application of COPPA; it only reflects that the State's allegations of COPPA violations are not suited to resolution on a Rule 12 motion. *See Gilmore*, 694 F.3d at 1176 (state-law claim subject to federal jurisdiction because "[a]lthough plaintiffs could lose their [state law] conversion claim without the court reaching the federal question, . . . they cannot win unless the court answers that question").

For example, COPPA's requirements apply only when (1) a website or online service is "directed to children," as defined by the statute and implementing regulations,[6] or (2) the operator of a website or service directed to a general audience has "actual knowledge" that it is collecting personal information from a child.  15 U.S.C. § 6502(a)(1).  Thus, whether Meta's services are "directed to children," or whether Meta had "actual knowledge" it was collecting information from children, will be highly significant and disputed issues vis-à-vis the State's allegations that Meta's practices "violated COPPA."  Relatively little case law exists interpreting these factors, which will be hotly contested in this litigation.  *See*, *e.g.*, *New Mexico ex rel. Balderas v. Tiny Lab Products*, 457 F. Supp. 3d 1103, 1112 (D.N.M. 2020) ("Neither COPPA (the statute) nor the [FTC's] COPPA Rule defines 'actual knowledge.'").  Moreover, whether Meta's alleged lack of "sufficient parental controls and notifications" and "effective age verification," FAC ¶¶ 355, 519, can amount to "actual knowledge" of collecting information from a child, or means that Meta's services are "directed to children," are very much disputed and unsettled questions of law—as reflected in this Court's detailed analysis of these questions in *Tiny Lab Products*, *see* 457 F. Supp. 3d at 1112-20 (analyzing COPPA claims asserted by the State of New Mexico).

In short, the *Grable* requirement that the federal issue must be "actually disputed" is clearly satisfied here.  *See NASDAQ OMX Grp.*, 770 F.3d at 1021 (federal issue was "actually disputed" where "[r]esolution of that dispute will require construction of a federal statute, rules promulgated pursuant to the statute's mandates, and the statute's implementation by the [governing agency]"); *Gilmore*, 694 F.3d at 1173 (federal issue was "actually disputed" where there was no "definitive decision" on the issue and the parties "plainly disagree").

---

[6] The Federal Trade Commission has adopted a rule setting out a nine-factor test for determining whether a website is "directed to children."  *See* 16 C.F.R. § 312.2; *Children's Online Privacy Protection Rule*, 64 Fed. Reg. 59,888 (Nov. 3, 1999).

### 3.     The Federal Issue Is Substantial.

The federal issues raised by the State's Complaint are substantial, not just to "the particular parties in the immediate suit" but also "to the federal system as a whole." *Gunn*, 568 U.S. at 260. In particular, the State's UPA claims premised on "practices in violation of COPPA" turn on whether Meta met federal obligations imposed by COPPA and accompanying FTC regulations. Those questions present critical issues in the ongoing federal multidistrict social media litigation, in which 34 other states have also brought claims against Meta alleging violations of COPPA. *See In re: Social Media Adolescent Addition/Personal Injury Prods. Liability Litig.*, 4:22-md-03047 (N.D. Cal.) ("*Soc. Media Litig.*").[7] As reflected by this wave of COPPA-based claims, the federal issue in this case is substantial.

In particular, COPPA and its implementing regulations govern, *inter alia*, the data collection by online service providers from individuals under the age of 13. *See* 15 U.S.C. §§ 6501, *et seq.*; 16 C.F.R. §§ 312.1, *et seq.* (establishing the duty of online service providers to provide notice and seek consent from parents before collecting or using personal information from children under the age of 13). These laws and associated regulations form an integrated and complex federal scheme that presents a substantial federal question. *See, e.g.*, *Broder*, 418 F.3d at 195 (holding that a federal question was substantial under *Grable* when it "involve[d] aspects of the complex federal regulatory scheme applicable to cable television rates"). Further, because federal courts have **exclusive jurisdiction** over allegations of COPPA violations, 15 U.S.C. § 6504(a)(1),

---

[7] *Compare* FAC ¶¶ 355, 519 *with State of Arizona, et al. v. Meta Platforms, Inc., et al.*, 4:23-cv-5448 (N.D. Cal.), Dkt. No. 1 ¶¶ 851-59.

Congress has made it explicit that "the federal system as a whole"[8] has a substantial interest in litigating such allegations in federal court.

Moreover, the Tenth Circuit has held that an issue is "substantial" under the *Grable* analysis when "a decision on that [federal] question would apply to a fair number of disputes." *Gilmore*, 694 F.3d at 1174 (noting the disputed issue had "generated a not insignificant number of federal court cases"). That observation undoubtedly applies here. The federal questions at the heart of the State's COPPA claims against Meta are a common element among the pending lawsuits brought by 34 other state attorneys general that are consolidated in the MDL before Judge Gonzalez Rogers in the Northern District of California. The consistent resolution of these claims is vital to the federal system. Permitting the State to seek separate—and quite possibly divergent— pronouncements on Meta's federal COPPA obligations in state court would significantly undermine the rationale behind federal court's exclusive jurisdiction over alleged COPPA violations, 15 U.S.C. § 6504(a)(1).

The Tenth Circuit has made clear that a federal question is "substantial" under the *Grable* standard when "plaintiffs have framed their state-law claim in such a fashion that they succeed only if they are correct that the defendants failed to meet federal requirements." *Gilmore*, 694 F.3d at 1175. That reasoning fully applies here, because the State can prevail on its unfair practices claim based on alleged COPPA violations "only if [it is] correct that [Meta] failed to meet federal requirements" under COPPA. Nor does the presence of other state law allegations disturb this conclusion of substantiality: a federal question is "substantial"—thereby supporting federal jurisdiction—whether or not it outnumbers state law allegations that do not present a federal question. *See Nicodemus*, 440 F.3d at 1235 n.8 ("***If any one claim*** within Plaintiffs' complaint

---

[8] *Gunn*, 568 U.S. at 260.

supports federal question jurisdiction, a ***federal court may assert jurisdiction over all the claims***, including any alleged state-law claims.") (emphases added); *accord Rhode Island Fishermen's Alliance,* 585 F.3d at 49.

### 4. Permitting a Federal Court to Decide the Boundaries of Federal Law Maintains the Federal-State Balance.

The final factor of the *Grable* test considers whether this case may be heard in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. That prong of *Grable* is plainly satisfied here because Congress vested the federal courts with exclusive jurisdiction over claims brought by States seeking to enforce COPPA. *See* 15 U.S.C. § 6504(a)(1) ("[T]he State, as parens patriae, may bring a civil action on behalf of the residents of the State in a district court of the United States of appropriate jurisdiction."). Permitting the State to litigate its claims of "violation[s] of COPPA" in New Mexico state court would thus directly contravene "the federal-state balance approved by Congress" that *Gunn* sought to protect. *See* 568 U.S. at 258. Reflecting this point, 34 other States that have sued Meta alleging COPPA violations have brought their claims in federal court. Only New Mexico has asserted COPPA violations in a complaint filed in state court.[9]

Contrary to the State's argument, there is no "sovereign dignity" requiring remand merely because "the State seeks to protect its own citizens" through "an enforcement suit by a state attorney general." Mot. 13 (quoting *Preferred Care*, 158 F. Supp. 3d at 1232). At the threshold, that argument is foreclosed by the fact that federal courts have exclusive jurisdiction over claims

---

[9] The State's argument that it is not directly asserting a federal cause of action under COPPA is beside the point—the *Grable* test by its terms applies only to state-law causes of action, and recognizes that removal of such state-law claims in appropriate circumstances will not disrupt the federal-state balance approved by Congress. That point applies particularly where Congress has provided for exclusive federal jurisdiction over COPPA claims.

asserted by states seeking to enforce COPPA.  More broadly, where a state asserts state-law claims that require resolution of a federal question, its complaint may be removed like any other.  *See, e.g.*, *In re Pharm. Indus. Ave. Wholesale Price Litig.*, 457 F. Supp. 2d 77 (D. Mass. 2006) (denying remand of complaint brought by State of Arizona); *New York v. Arm or Ally, LLC*, 644 F. Supp. 3d 70, 83 (S.D.N.Y. 2022) (denying remand under *Grable* of complaint brought by State of New York); *Mississippi ex rel. Hood v. Entergy Mississippi, Inc.*, 2015 WL 13448017, at *6 (S.D. Miss. Apr. 10, 2015) (similar); *Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 375 F. Supp. 2d 170, 172–73 (E.D.N.Y. 2005) (similar).

The cases cited by the State are not to the contrary.  In *Preferred Care*, the court was specifically concerned that removal would upset the system of "cooperative federalism" envisioned by the Medicaid program, because there was no federal cause of action to enforce the claims at issue.  158 F. Supp. 3d at 1232.  In direct contrast, because actions brought by state attorneys general to enforce the provisions of COPPA are subject to exclusive federal jurisdiction, litigating the State's allegations of COPPA violations in federal court will promote rather than "disrupt the federal-state balance approved by Congress," *Grable*, 568 U.S. at 258.[10]

As this Court has recognized, a "congressional decision that such claims belong in federal court" means that the "final element of the *Grable* test is satisfied" because "federal jurisdiction is consistent with congressional intent."  *Sais*, 682 F. Supp. 2d at 1260.  *See also Rosenman*, 2021 WL 3829549, at *5 (federal jurisdiction over a state-law claim premised on a violation of federal antitrust law would not "disturb[] the congressionally approved balance of federal and state judicial

---

[10] The State (Mot. 13) quotes language from *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169 (4th Cir. 2011), but that case involved the entirely different question of CAFA jurisdiction over state-law claims where "West Virginia has raised no federal question."  *Id.* at 178.

responsibilities" because "antitrust claims are within the exclusive jurisdiction of the federal courts") (quotation omitted).  Likewise, the Supreme Court's observation in *Franchise Tax Board* that "considerations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it," 463 U.S. at 22 n.22, has no bearing here where there **is** a "clear rule" providing for exclusive federal jurisdiction over claims seeking relief for practices "in violation of COPPA."

*       *       *

In short, this case was properly removed to federal district court because it presents a substantial federal question.  That federal question is necessarily raised, actually disputed, and substantial, and litigating it in federal court will not disrupt the federal-state balance.  *See Gilmore*, 694 F.3d at 1175-76; *Nicodemus*, 440 F.3d at 1234-36.  Accordingly, the State's Motion should be denied.

## II.     The State's Request for Attorneys' Fees Is Baseless and Should Be Denied.

The Court should summarily deny the State's request for attorneys' fees, which the State bases on the speculative and inflammatory accusation that Meta's removal "is designed not to succeed, but to delay."  Mot. 13.  Meta's removal of this case is based squarely on the State's own allegations and is directly supported by controlling Tenth Circuit and Supreme Court case law, as discussed above.  The State's accusations of delay or improper motivations are unfounded—particularly after the State itself has significantly delayed the litigation by filing an amended complaint.

Also unfounded is the State's conspiratorial theory that Meta removed this case, and not those of "a half-dozen state attorneys general," because New Mexico's complaint includes "detailed allegations" regarding "child sexual exploitation and trafficking" over which Meta supposedly wants to delay adjudication.  *Id*. at 13-14.  The State ignores the far more obvious

explanation that Meta did not remove those other cases because—unlike the State's Complaint here—they do not allege claims based on purported violations of COPPA. To the extent this case has been "singl[ed] out," *id*. at 14, it is because New Mexico is the only State that has asserted violations of COPPA in a complaint filed in state court.[11] The 34 other attorneys general that have alleged violations of COPPA by Meta filed their cases in federal court, consistent with the principles discussed above that claimed violations of COPPA are subject to exclusive federal jurisdiction. Only New Mexico seeks to have it both ways, bringing allegations of COPPA violations that it nominally couches in state-law terms in an attempt to litigate a substantial issue of federal law in state court.

## CONCLUSION

For the foregoing reasons, the Court should deny the State's Motion to Remand.

Dated: January 31, 2024

Respectfully submitted,

By: */s/ John C. Anderson*
John C. Anderson
Olga M. Serafimova
HOLLAND & HART LLP
110 N. Guadalupe Street, Suite 1
Santa Fe, NM 87501
Telephone: (505) 988-4421
jcanderson@hollandhart.com
omserafimova@hollandhart.com

Nathan E. Shafroth (*Pro Hac Vice*)
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Telephone: + 1 (415) 591-6000

---

[11] The State notes that Massachusetts included in its complaint an allegation that Meta "'knows its lax registration and age-gating efforts enable' 'hundreds of thousands of Under-13 users' to access Instagram," Mot. 13, but neither Massachusetts nor any of the other States that have filed cases in state court allege that Meta committed a tort *because it violated COPPA*, as the State alleges here.

nshafroth@cov.com

Timothy C. Hester (*Pro Hac Vice*)
COVINGTON & BURLING LLP
One CityCenter 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: (202) 662-6000
thester@cov.com

*Attorneys for Defendants Meta Platforms,*
*Inc., Instagram, LLC, Meta Payments, Inc.,*
*and Meta Platforms Technologies, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 31, 2024, a copy of the foregoing was filed through the court's CM/ECF system, causing it to be served by electronic mail upon the following:

James W. Grayson
Chief Deputy Attorney General
Raul Torrez, Attorney General of New Mexico
New Mexico Attorney General's Office
P.O. Drawer 1508
Santa Fe, NM 87504-1508
Phone: (505) 218-0850
Email: jgrayson@nmag.gov

Serena R. Wheaton
Assistant Attorney General
New Mexico Attorney General's Office
Consumer & Environmental Protection Division
201 Third Street NW, Suite 300
Albuquerque, NM 87102
Phone: (505) 490-4846
Email: swheaton@nmag.gov

Linda Singer
David I. Ackerman
Motley Rice LLC
401 9th Street NW, Suite 630
Washington, DC 20004
Email: lsinger@motleyrice.com
Email: dackerman@motleyrice.com

*/s/ John C. Anderson*
John C. Anderson

31351050_v1

22